**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| MICHELE METCALF and HANNAH LAWSON, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>    - v -<br><br>TRANSPERFECT GLOBAL, INC., TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC., TRANSPERFECT DOCUMENT MANAGEMENT, INC., TRANSPERFECT, INC., and TRANSPERFECT REMOTE INTERPRETING, INC.,<br><br>         Defendants. | Case No.  1:19-cv-10104 (AJN) (KHP) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

**DLA PIPER LLP (US)**
Daniel Turinsky, Esq.
(daniel.turinsky@dlapiper.com)
Garrett David Kennedy, Esq.
(garrett.kennedy@dlapiper.com)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ....................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND...................................................................3

ARGUMENT...............................................................................................................................5

   I.     Subject-Matter Jurisdiction under CAFA is Improper ...................................................5

     1.     The SAC Should Be Dismissed Pursuant
           to the Local Controversy Exception ........................................................................6

           i.     The First Prong of the Local Controversy
                  Exception is Satisfied Because More Than
                  Two-Thirds of the Putative Class Are Citizens of New York .........................7

           ii.    The Second Prong of the Local Controversy Exception
                  Is Satisfied Because All Defendants Are Citizens of New York....................8

           iii.   The Third Prong of the Local Controversy Exception Is Satisfied
                  Because the Principal Injuries Were Incurred in New York ...........................9

           iv.   The Fourth Prong of the Local Controversy Exception Is Satisfied
                    Because No Similar Class Actions Have Been Filed Against Defendants .......9

           v.     The Place of "Original" Filing Is New York ..................................................9

     2.     The Home State Exception Requires Dismissal ....................................................12

     3.     Alternatively, the Court Should Exercise Its Discretion
           to Dismiss This Action..........................................................................................13

   II.    Defendants are not Joint Employers ..........................................................................15

CONCLUSION...........................................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anirudh v. CitiMortgage, Inc.*,
   598 F. Supp. 2d 448 (S.D.N.Y. 2009) .......................................................................... 10, 13

*Ansoumana v. Gristede's Operating Corp.*,
   255 F. Supp. 2d 184 (S.D.N.Y. 2003) ................................................................................ 15

*Barry v. Curtin*,
   993 F. Supp. 2d 347 (E.D.N.Y. 2014)................................................................................... 5

*Brook v. UnitedHealth Group, Inc.*,
   No. 06 Civ. 12954 (GBD), 2007 WL 2827808 (S.D.N.Y. Sept. 27, 2007)........................... 10

*Commisso v. PricewaterhouseCoopers LLP*,
   No. 11 Civ. 5713 (NRB), 2012 WL 3070217 (S.D.N.Y. July 27, 2012) .............................. 10

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*,
   790 F.3d 411 (2d Cir. 2015) ................................................................................................... 5

*In re Domino's Pizza Inc.*,
   No. 16 Civ. 2492 (AJN) (KNF), 2018 WL 4757944 (S.D.N.Y. Sept. 30, 2018) ................. 15

*Fields v. Sony Corp. of Am.*,
   No. 13 Civ. 6520 (GBD), 2014 WL 3877431 (S.D.N.Y. Aug. 4, 2014)........................... 7, 14

*Gisomme v. HealthEx Corp.*,
   No. 13 Civ. 2541 (LDW) (WDW),
   2014 WL 2041824 (E.D.N.Y. May 15, 2014) ..................................................................... 17

*Glatt v. Fox Searchlight Pictures Inc.*,
   No. 11 Civ. 6784 (WHP), 2013 WL 4834428 (S.D.N.Y. Aug. 26, 2013) ........................... 15

*Herman v. RSR Sec. Servs. Ltd.*,
   172 F.3d 132 (2d Cir. 1999) ................................................................................................. 15

*Hugee v. SJC Grp., Inc.*,
   No. 13 Civ. 0423 (GBD), 2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013)............................. 17

*Irizarry v. Catsimatidis*,
   722 F.3d 99 (2d Cir. 2013) ................................................................................................... 16

*Kanowitz v. Broadridge Fin. Sols., Inc.*,
   No. 13 Civ. 0649 (DRH) (AKT), 2014 WL 1338370 (E.D.N.Y. Mar. 31, 2014).................... 8

*Lopez v. Acme Am. Envtl. Co.*,
    No. 12 Civ. 511 (WHP), 2012 WL 6062501 (S.D.N.Y. Dec. 6, 2012)............................ 16, 17

*Lucker v. Bayside Cemetery*,
    262 F.R.D. 185 (E.D.N.Y. 2009) ....................................................................................7, 14

*Mattera v. Clear Channel Commc'ns, Inc.*,
    239 F.R.D. 70 (S.D.N.Y. 2006) ...................................................................................*passim*

*MG Bldg Materials, Ltd. v. Paychex, Inc.*,
    841 F. Supp. 2d 740 (W.D.N.Y. 2012)................................................................................10

*In re Michael Stapleton Assocs., Ltd.*,
    No. 17 Civ. 5468 (AJN), 2018 WL 3962931 (S.D.N.Y. Aug. 17, 2018)..............................16

*Moore v. IOD Inc.*,
    No. 14 Civ. 8406 (VSB), 2016 WL 8941200 (S.D.N.Y. Mar. 24, 2016) .........................8, 11

*N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*,
    25 F. Supp. 3d 459 (S.D.N.Y. 2014) ...................................................................................16

*Simmons v. Ambit Energy Holdings, LLC*,
    No. 13 Civ. 6240 (JMF), 2014 WL 5026252 (S.D.N.Y. Sept. 30, 2014)..............................11

*Smith v. Manhattan Club Timeshare Ass'n, Inc.*,
    944 F. Supp. 2d 244 (S.D.N.Y. 2013) ..................................................................... 5, 12, 13

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
    752 F.3d 239 (2d Cir. 2014) .................................................................................................3

*Weider v. Verizon New York Inc.*,
    No. 14 Civ. 7378 (FB) (JO), 2015 WL 3474102 (E.D.N.Y. June 2, 2015)........................7, 14

*Zheng v. Liberty Apparel Co.*,
    355 F.3d 61 (2d Cir. 2003) .................................................................................................16

**Statutes & Other Authorities**

28 U.S.C. § 1332(d) ...............................................................................................*passim*

Fed. R. Civ. P. 12(b)(1).............................................................................................. 1, 5, 17

Fed. R. Civ. P. 12(b)(6)............................................................................................... 1, 18

Defendants TransPerfect Translations International, Inc. ("TP Translations"), TransPerfect Global, Inc. ("TPGI"), TransPerfect Document Management, Inc. ("TPDM"), TransPerfect, Inc. ("TPI"), and TransPerfect Remote Interpreting, Inc. ("TPRI") (TPGI, TPDM, TPI and TPRI collectively referred to herein as, "Group Defendants") submit this memorandum of law in support of their motion to dismiss the Second Amended Class Action Complaint (the "SAC") of Plaintiffs Michele Metcalf ("Metcalf") and Hannah Lawson ("Lawson") (collectively, "Plaintiffs"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs purport to assert claims for alleged violations of the New York Labor Law ("NYLL"), both on their behalf and on behalf of a putative class of allegedly similarly situated persons. Specifically, Plaintiffs, who are former employees of TP Translations, contend that they and the putative class were misclassified as exempt from the NYLL's overtime requirements, and further contend that they did not receive accurate wage notices and wage statements under the NYLL.

As set forth herein, Defendants respectfully submit that Plaintiffs' claims should be dismissed in their entirety, as this Court lacks subject matter jurisdiction over this action. Plaintiffs contend that jurisdiction exists solely under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), *et seq.*, but this is not the case, as two mandatory exceptions to CAFA jurisdiction bar Plaintiffs' claims.

Specifically, jurisdiction is inappropriate because the claims at issue are subject to both CAFA's "local controversy" and "home state" exceptions. The local controversy exception applies where, *inter alia*, more than two-thirds of the putative class and at least one defendant are citizens of the state in which the action was filed, and the harm at issue arose in that state. Here, more than two-thirds of the putative class – ***70%*** – are citizens of New York, as are all of the

Defendants, and the claims at issue and the purported injuries arising therefrom all allegedly occurred in New York and arise under New York law.  Precedent is clear that in such circumstances, a court must decline to exercise CAFA jurisdiction.

Likewise, the "home state" exception also applies.  The "home state" exception provides that a federal court may not exercise jurisdiction under CAFA where more than two-thirds of the class and all defendants are citizens of the state in which the action was filed.  Again, 70% of the putative class and all Defendants are citizens of New York, so this exception is equally satisfied. Accordingly, Plaintiffs' SAC should be dismissed.

Moreover, even if the mandatory exceptions to CAFA jurisdiction do not apply (and they do), the Court should exercise its discretion to dismiss this action for lack of subject matter jurisdiction.  This is because there is no serious dispute that more than one-third of the putative class are citizens of New York and the other factors supporting application of the discretionary exception to CAFA jurisdiction – such as that the claims do not involve matters of national or interstate interest and are asserted exclusively under New York law – strongly support dismissal here.

Finally, Defendants submit that if this matter is not dismissed in its entirely for lack of subject matter jurisdiction, the Group Defendants should nonetheless be dismissed as they were not Plaintiffs' "employers" – only TP Translations was – and Plaintiffs fail to allege any facts which could possibly support a "joint employer" relationship.  Specifically, joint employment may be found where a nominal joint employer exercises formal or functional control over the direct employer's employees.  Here, however, Plaintiffs have not pled any facts to support this – they do not allege, for instance, that the Group Defendants paid Plaintiffs' wages, made hiring or firing decisions, exercised supervisory authority over Plaintiffs or the putative class, or anything else of

the sort. This is insufficient to satisfy basic pleading requirements and these "joint employer" claims must be dismissed.

In short, for the reasons above and those set forth below, Defendants respectfully request that this Court dismiss Plaintiffs' SAC in its entirety.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

Metcalf began working for TP Translations as a Client Services Associate in its District of Columbia office in November 2016, and was promoted to the position of Client Services Executive in August 2017. Dkt. No. 62, ¶ 5; *see* Ex. A. Metcalf transferred to the New York City office of TP Translations as a Client Services Associate in January 2018, earning an annual salary of $51,000, until she was promoted to the position of Senior Client Services Executive in November 2018, in which position she earned an annual salary of $56,000. Dkt. No. 62, ¶ 5. In June 2019, Metcalf transferred to TP Translations' Newport Beach, California office. Dkt. No. 1, ¶ 5.

Lawson worked for TP Translations in its New York office from June 18, 2018 until October 9, 2019. *See* Dkt. No. 62, ¶ 7; Ex. B. She began as a project coordinator, earning $43,000 per year until December 2018, when she was promoted to Project Manager. As a Project Manager, TP Translations paid Lawson $980.77 per week. *See* Dkt. No. 62, ¶ 7. Lawson worked part-time from April 7, 2019 through October 9, 2019, averaging 32 to 35 hours each week. *Id.* at ¶ 7, fn. 2.

On August 28, 2019, Metcalf commenced this action against TPGI in the United States District Court for the Central District of California, seeking to represent a purported class of all

---

[1] The allegations in the SAC are taken as true solely for purposes of this motion to dismiss. *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (citations and internal quotation marks omitted).

Client Services Associates and Senior Client Services Executives who worked in TPGI's New York, New York offices from December 31, 2018, to the present.  *See* Dkt. No. 1, ¶ 21.

On October 23, 2019, the parties stipulated to transfer the action to the Southern District of New York because, *inter alia*, Metcalf asserted claims exclusively under New York law, and TPGI's principal place of business is in New York.  *See* Dkt. No. 22.  The case was transferred on October 31, 2019.  *See* Dkt. No. 25.

On December 6, 2019, Plaintiffs filed their First Amended Complaint (the "FAC") in response to Defendants' motion to dismiss.  Dkt. No. 45.  The FAC added Lawson as a plaintiff and TP Translations, TPDM, TPI and TPRI as defendants.  *See generally*, *id.*  It also expanded the definition of a putative "Class Member" to "Defendants' salaried employees being compensated at less than $1,125 per week – including Client Services Associates, Client Services Executives, Senior Client Services Executives, Project Coordinators, Project Managers, and Senior Project Managers – who worked in Defendants' New York, New York offices from December 31, 2018 to the present . . . who worked more than 40 hours in a workweek."  *Id.*, ¶ 30.

Following correspondence from Defendants indicating that they would move to dismiss the FAC for lack of subject matter jurisdiction because the newly added plaintiff (Lawson) and all Defendants are citizens of New York, this Court entered an Order on December 12, 2019, directing Plaintiffs to show cause why the FAC should not be dismissed, given the obvious absence of complete diversity of citizenship.  *See* Dkt. Nos. 50, 55.  In response, Plaintiffs asserted, for the first time, that jurisdiction existed under CAFA – i.e., because, purportedly, (1) minimal diversity existed; (2) there are more than 100 putative class members; and (3) the amount in controversy exceeds $5,000,000 – and sought leave to again amend their pleadings to assert same.  *See* Dkt.

No. 59 at 1.  By Order dated January 10, 2020, the Court permitted Plaintiffs to further amend their pleadings.  *See* Dkt. No. 61.

Plaintiffs filed the SAC on January 13, 2020, alleging CAFA jurisdiction.  *See* Dkt. No. 62.  The SAC contains the same definition of a putative class member as the FAC, namely "all of Defendants' salaried employees being compensated at less than $1,125.00 per week . . . who worked in Defendants' New York, New York offices from December 31, 2018 to the present . . . who worked more than 40 hours in a workweek."  *See id.*, ¶ 1.

## ARGUMENT

## I.   SUBJECT-MATTER JURISDICTION UNDER CAFA IS IMPROPER

Plaintiffs contend that subject matter jurisdiction exists here pursuant to CAFA.  Plaintiffs are wrong and, respectfully, the Court should enter an order dismissing this action in its entirety.

A district court properly dismisses an action for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when it lacks the statutory or constitutional power to adjudicate it.  *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015).  A plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence.  *Barry v. Curtin*, 993 F. Supp. 2d 347, 351 (E.D.N.Y. 2014) (citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 171 (2d Cir. 2005)).

CAFA confers original federal jurisdiction over class actions where: (1) the proposed class contains at least 100 members; (2) minimal diversity exists between the parties (i.e., where "any member of a class of plaintiffs is a citizen of a State different from any defendant"); and (3) the aggregate amount in controversy exceeds $5,000,000.  *Smith v. Manhattan Club Timeshare Ass'n, Inc.*, 944 F. Supp. 2d 244, 249 (S.D.N.Y. 2013) (citing *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013); 28 U.S.C. § 1332(d)(2)-(6)).

Additionally, there are two relevant and mandatory statutory exceptions which require a district court to decline to exercise jurisdiction under CAFA. Those exceptions include, (a) the "local controversy" exception – where, among other things, more than two-thirds of the putative class and at least one defendant from whom significant relief is sought are citizens of the state in which the action was originally filed, and the harm at issue arose in that state (*see* § 1332(d)(4)(A)(i)-(ii), *infra*) – and (b) the "home state" exception – where two-thirds of the putative class and the primary defendants are citizens of the state in which the action was originally filed (*see* § 1332(d)(4)(B), *infra*). *See* 28 U.S.C. §§ 1332(d)(4)(A), (B).

Here, the local controversy exception and home state exception to CAFA jurisdiction both require this Court to decline to exercise jurisdiction over this action. Accordingly, the SAC should be dismissed.

### 1. The SAC Should Be Dismissed Pursuant to the Local Controversy Exception

Plaintiffs' claims should be dismissed pursuant to the "local controversy" exception to CAFA jurisdiction. This is because, as set forth below, more than two-thirds of the putative class are citizens of the state in which the SAC was originally filed (New York); Defendants all are citizens of New York; the alleged injuries all arose in New York, under New York law; and no similar class action previously has been filed against Defendants. Defendants thus respectfully submit that Plaintiffs' SAC must be dismissed in full.

Under the local controversy exception, a district court must decline jurisdiction if: (1) more than two-thirds of the putative class members are citizens of the state in which the action was originally filed; (2) at least one defendant from whom significant relief is sought, whose alleged conduct forms a significant basis for the asserted claims, is a citizen of the state in which the action was originally filed; (3) the principal injuries suffered by the class were incurred in the state in

which the action was originally filed; and (4) no other class action asserting the same or similar factual allegations has been filed against any of the defendants within the past three years.  *See Mattera v. Clear Channel Commc'ns, Inc.*, 239 F.R.D. 70, 77 (S.D.N.Y. 2006) (citing 28 U.S.C. § 1332(d)(4)(A)).  All of these requirements for the exception are met here.

### i.     *The First Prong of the Local Controversy Exception is Satisfied Because More Than Two-Thirds of the Putative Class Are Citizens of New York*

Initially, the first factor is satisfied because more than two-thirds of the putative class members are citizens of New York, where the SAC was originally filed.  Chuang Decl., ¶ 7.

Where, as here, the complaint alleges that all members of the putative class worked in New York, courts will presume, even in the absence of an affidavit, that more than two-thirds of the putative class members of the proposed class are citizens of New York.  *See Mattera*, 239 F.R.D. at 80; *see also Weider v. Verizon New York Inc.*, No. 14 Civ. 7378 (FB) (JO), 2015 WL 3474102, at *2 (E.D.N.Y. June 2, 2015) ("A court may make reasonable assumptions about the makeup of the putative class") (internal quotation marks omitted); *Fields v. Sony Corp. of Am.*, No. 13 Civ. 6520 (GBD), 2014 WL 3877431, at *3 (S.D.N.Y. Aug. 4, 2014) (party seeking to invoke the local controversy exception may "make reasonable assumptions about the makeup of the putative class to demonstrate that two-thirds or more of the class is domiciled in New York") (internal quotation marks omitted); *Lucker v. Bayside Cemetery*, 262 F.R.D. 185, 189 (E.D.N.Y. 2009) (finding that plaintiffs "failed to provide any credible evidence to overcome the eminently reasonable assumption that the majority—-and certainly one-third-of those buried, or desiring to be buried, in a Queens cemetery are New York residents").

In this case, however, Defendants have submitted a Declaration from a Senior Director of Human Resources establishing that 190 out of 270, or 70%, of the putative class members are residents of New York, which is not surprising given that the claims at issue relate exclusively to

employees who worked in New York.  Chuang Decl., ¶ 7.  Courts have recognized that, in the employment context, evidence of residence culled from an employer's human resources files – such as that here – is more than sufficient to satisfy a showing of citizenship under this prong of the analysis.  *See Kanowitz v. Broadridge Fin. Sols., Inc.*, No. 13 Civ. 0649 (DRH) (AKT), 2014 WL 1338370, at *7 (E.D.N.Y. Mar. 31, 2014) (relying on information from employer's human resources files in connection with local controversy analysis in wage and hour dispute).  Simply put, there can be no dispute here that two-thirds of the putative class members are citizens of the same state – New York.

### ii. The Second Prong of the Local Controversy Exception Is Satisfied Because All Defendants Are Citizens of New York

The second prong of the local controversy exception also is easily satisfied.  This requires that at least one defendant, whose conduct constitutes a significant portion of the claims at issue, be a citizen of the state in which the action was originally filed.  *Mattera*, 239 F.R.D. at 80 (in claim for wages, defendant employer was a "significant" defendant for purposes of local controversy exception to CAFA jurisdiction).

Here, it is indisputable – and even conceded in the SAC, *see* Dkt. No. 62, ¶¶ 9-13, 16 – that the SAC was originally filed in New York, and all of the Defendants are citizens of New York.  Chuang Decl., ¶ 4.  *See Moore v. IOD Inc.*, No. 14 Civ. 8406 (VSB), 2016 WL 8941200, at *6 (S.D.N.Y. Mar. 24, 2016) (finding this factor satisfied, noting that "[n]umerous courts have held that a local defendant subject to joint and several liability qualifies under the local controversy exception as a defendant "'from whom significant relief is sought by members of the plaintiff class'").

### iii. The Third Prong of the Local Controversy Exception Is Satisfied Because the Principal Injuries Were Incurred in New York

Third, the injuries alleged by Plaintiffs all were purportedly incurred in New York. *See Mattera*, 239 F.R.D. at 80 (finding that where employer committed alleged wage violations in New York, this was sufficient to demonstrate that injuries occurred in New York). Specifically, Plaintiffs allege injuries arising solely from work performed by them while working in the State of New York, and they further seek to represent a putative class of Defendants' employees that is expressly limited to workers located within Defendants' New York City offices. Dkt. No. 62, ¶¶ 1, 30. Moreover, Plaintiffs' causes of action are asserted solely under the NYLL, and not federal law or the law of any other state. *Id.*, ¶¶ 19-29, 30-48. Simply put, Plaintiffs cannot possibly contend that their injuries arose other than within the State of New York, and this factor is satisfied.

### iv. The Fourth Prong of the Local Controversy Exception Is Satisfied Because No Similar Class Actions Have Been Filed Against Defendants

As to the fourth factor – whether another class action asserting similar factual allegations has been filed within the past three years – there have been no such actions. Chuang Decl., ¶ 8. Thus, this factor also is unequivocally satisfied.

### v. The Place of "Original" Filing Is New York

Plaintiffs have asserted in prior correspondence to the Court that the "local controversy" exception does not apply because the initial Complaint was filed in California, not New York, and thus requirements of the first, second and third prongs – that the parties be citizens of, and that the alleged injures arise in, the state in which the action was "originally filed" – are not satisfied. 28 U.S.C. § 1332(d)(4)(A). Plaintiffs are wrong.

From the outset, the very purpose of CAFA disproves this argument. "Congress's aims in enacting CAFA [was] to 'provid[e] for Federal court consideration of interstate cases of national importance under diversity jurisdiction,'" and enable federal courts to "have control over

'nationwide' class actions'" involving "the laws of a number of states," while "ensur[ing] that state courts can continue to adjudicate truly local controversies." *Commisso v. PricewaterhouseCoopers LLP*, No. 11 Civ. 5713 (NRB), 2012 WL 3070217, at *5 (S.D.N.Y. July 27, 2012) (quoting Pub. L. No. 109-2 § 2, 119 Stat. 4 & S. Rep. No. 109-14, at 24, 28). CAFA thus was designed "to curtail the abuses existing in class action practice by extending federal jurisdiction over interstate class actions of national importance." *Anirudh v. CitiMortgage, Inc.*, 598 F. Supp. 2d 448, 450 (S.D.N.Y. 2009) (quoting *Brook v. UnitedHealth Group, Inc.*, No. 06 Civ. 12954 (GBD), 2007 WL 2827808, at *2 (S.D.N.Y. Sept. 27, 2007)). In particular, Congress evinced a concern that local courts often "demonstrat[ed] bias against out-of-state defendants and '[made] judgments that impose their view of the law on other States and bind the rights of the residents of those States.'" *Mattera*, 239 F.R.D. at 77 (quoting Pub. L. No. 109-2, § 2(a)(4), 119 Stat 4). *See also MG Bldg Materials, Ltd. v. Paychex, Inc.*, 841 F. Supp. 2d 740, 743 (W.D.N.Y. 2012) (citing *Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 952 (9th Cir.), *cert. denied*, 558 U.S. 934 (2009)) (explaining that purpose of CAFA was, *inter alia*, to avoid litigating class actions of national interest in state court); *see also Brook*, 2007 WL 2827808, at *3 (noting home state exception is "intended to keep purely local matters and issues of particular state concern in the state courts") (internal quotation marks omitted).

Accordingly, federal courts have routinely declined to exercise CAFA jurisdiction where the claims at issue involved state law claims, brought by parties within the same state, with all alleged injuries within the same state; as succinctly stated by one court in granting a motion to dismiss based on the local controversy exception:

> [T]his suit involves *New York* citizens suing a *New York* company for injuries caused in *New York* by alleged wrongdoing under *New York* law in *New York*. In enacting the local controversy exception, Congress made clear that such a suit should not be litigated in

> federal court.  It is not for this Court to second guess Congress's
> judgment.

*Simmons v. Ambit Energy Holdings, LLC*, No. 13 Civ. 6240 (JMF), 2014 WL 5026252, at *6 (S.D.N.Y. Sept. 30, 2014) (emphasis in original).  *See also Moore*, 2016 WL 8941200, at *7 (explaining that CAFA jurisdiction would be improper where, *inter alia*, the class consisted entirely of people who received the services leading to alleged injuries in New York, and claims were premised in purported violations of New York law).

Given this background, it is unsurprising that there is no authority for the proposition that a plaintiff can avoid the local controversy exception by misfiling an "original" complaint in an improper jurisdiction, like Metcalf did here.  Specifically, Metcalf filed her initial Complaint in the Central District of California, notwithstanding that (i) all claims at issue arose from her and the putative class members' work in New York; (ii) the claims alleged arose entirely under New York law; (iii) the class at issue expressly was limited to New York residents; and (iv) TPGI – the sole defendant in the initial Complaint – is a citizen of New York.  *See* Dkt. No. 1.  Indeed, the filing of this action in California was so inappropriate that Metcalf readily stipulated to transferring her lawsuit to the Southern District of New York, rather than face a motion to transfer venue.  Dkt. No. 22.  To accept that a plaintiff could obviate statutory exceptions to CAFA by improperly filing an initial complaint in an incorrect jurisdiction, having no connection to the claims at issue, would be an absurd result, would undermine Congress's purposes in enacting CAFA, and would encourage bad faith forum shopping.

Of course, beyond this, the "original" pleading here is the SAC, not the initial Complaint or the FAC, and thus New York is the state of "original" filing.  This is because CAFA jurisdiction was not claimed prior to the SAC, nor did any prior pleading even facially allege facts sufficient to support federal jurisdiction.  *See* Dkt. No. 1, ¶¶ 5, 8; Dkt. No. 45, ¶¶ 7, 15; Dkt. No. 55.  Indeed,

while the initial Complaint and FAC were filed in federal court, neither alleged a plausible basis for federal jurisdiction:  both the initial Complaint and the FAC each only alleged jurisdiction based on individual diversity (i.e., between the Plaintiffs and the Defendants), but in both instances, the applicable pleading failed, on its face, to allege facts sufficient to confer diversity jurisdiction.  Dkt. No. 1, ¶ 5 (alleging damages for Metcalf which, when computed, fail to plausibly meet the $75,000 threshold, but rather approximate to, in a best case scenario, $50,356.00[2]); Dkt. No. 45, ¶ 7 (no diversity jurisdiction as Lawson and Defendants were all citizens of New York). Rather, the SAC – filed in *New York* – was the very first of Plaintiffs' numerous pleading to allege CAFA jurisdiction.  Dkt. No. 62, ¶ 15.  Simply put, the SAC is the "original" pleading alleging CAFA jurisdiction.

In short, the local controversy exception applies and the SAC should be dismissed on this basis.

### 2.   The Home State Exception Requires Dismissal

Plaintiffs' claims are equally deficient because they are subject to the "home state" exception to CAFA jurisdiction.  Under the home state exception, "a district court must decline to exercise jurisdiction over a class action in which two-thirds or more of the putative class members, and the primary defendants, are citizens of the state in which the action was originally filed." *Smith*, 944 Supp. 2d at 249-50 (citing 28 U.S.C. § 1332(d)(4)(B)).

---

[2]       In her initial Complaint, Metcalf alleged that from December 31, 2018 through June 10, 2019, TransPerfect failed to pay her overtime despite having generally worked in excess of 40 hours each week. Dkt. No. 1, ¶ 11.  For those 23 weeks, Metcalf claims to have often worked 50 to 55 hours each week.  *Id.*  Metcalf stated that she earned $1,076.92 per week, making her regular rate of pay $26.92 per hour.  Her applicable overtime rate thus would be $40.38 per hour.  Assuming Metcalf worked 15 overtime hours per week for 23 weeks as alleged in the Complaint (which we believe to be a wildly inflated estimate), she would have worked a total of 345 overtime hours and her purported total unpaid wages would equal $13,931 (345 hours times an overtime rate of $40.38 per hour).  By adding an additional amount for 100% liquidated damages ($13,931) and the maximum wage statement penalties of $10,000, Metcalf's total potential damages would increase to $37,862.  And even assuming a 33% attorneys' fee award of $12,494, the total amount potentially recoverable by Metcalf would only equal $50,356.

Here, as indicated above, *see* § I.1.i, *supra*, 70% of the proposed class members are citizens of New York and all of the Defendants are citizens of New York, the forum in which the SAC was filed.  Thus, dismissal is mandatory and consistent with the purpose of the home state exception, which is to "allow[] the state courts to retain cases when the controversy is strongly linked to that state." *Anirudh*, 598 F. Supp. 2d at 450 (citing *Brook*, 2007 WL 2827808, at *3).  There can be no question that the purported controversy at issue in this case is "strongly linked" to New York, and not any other state.  *See*, *e.g.*, *id.* (dismissing action under home state controversy exception where party submitted affidavit affirming class members residence in New York, and where it was undisputed that the defendants were New York citizens).

### 3. Alternatively, the Court Should Exercise Its Discretion to Dismiss This Action

Alternatively, even if the Court finds the foregoing mandatory exceptions do not apply, Defendants respectfully submit that the Court should exercise its discretion to dismiss the instant action for lack of subject matter jurisdiction.

CAFA provides for a discretionary exception pursuant to which a court "may, in the interests of justice and looking at the totality of the circumstances, decline to exercise jurisdiction over a class action in which greater than one-third but less than two-thirds of the putative class members, and the primary defendants, are citizens of the state in which the action was originally filed, based upon consideration of the enumerated factors." *Smith*, 944 F. Supp. 2d at 250 (citing 28 U.S.C. § 1332(d)(3)) (internal quotation marks omitted).  The discretionary factors include:

> (A) whether the claims asserted involve matters of national or interstate interest; (B) whether the claims asserted will be governed by laws of the State in which the action was originally filed or by the laws of other States; (C) whether the class action has been pleaded in a manner that seeks to avoid Federal jurisdiction; (D) whether the action was brought in a forum with a distinct nexus with the class members, the alleged harm, or the defendants; (E) whether the number of citizens of the State in which the action

was originally filed in all proposed plaintiff classes in the aggregate is substantially larger than the number of citizens from any other State, and the citizenship of the other members of the proposed class is dispersed among a substantial number of States; and (F) whether, during the 3–year period preceding the filing of the class action, 1 or more other class actions asserting the same or similar claims on behalf of the same or other persons have been filed.

*Lucker*, 262 F.R.D. at 189-90 (citing 28 U.S.C. § 1332 (d)(3)).

As set forth above, here it is undisputable that more than one-third of the putative class are citizens of New York (and, indeed, 70% of the class are New York citizens). *See* Chuang Decl., ¶ 7; *see also Weider*, 2015 WL 3474102, at *2; *Mattera*, 239 F.R.D. at 80-81 ("It is difficult to conceive how the citizenship requirement under this exception, that more than one-third but less than two-thirds of the putative class members be New York citizens, would not be met here, given that all of the putative class members work in New York."). Moreover, the remaining discretionary factors are each satisfied:

- Plaintiffs seek damages only on behalf of Defendants' employees in the New York offices, and therefore their claims do not involve matters of national or interstate interest. *See* Dkt. No. 62, ¶ 30.

- Plaintiffs' claims are all asserted under the NYLL, and the SAC was filed in New York, after the case was transferred from California. *See* Dkt. Nos. 25 and 62. *See Fields*, 2014 WL 3877431, at *4 (finding there was a "distinct nexus" between New York and the plaintiff's claims because the plaintiff brought her claims under the NYLL on behalf of a class of individuals who worked in New York for a company domiciled in New York); *see also Lucker*, 262 F.R.D. at 189-90 (invoking the discretionary exception because "[t]his is not the type of class action with national implications contemplated by CAFA, and is precisely the kind of local lawsuit over which Congress explicitly instructed district courts to decline jurisdiction").

- The number of New York citizens in the aggregate is substantially larger than the number of citizens from any other state. *See* Chuang Decl., ¶ 7; *see also Weider*, 2015 WL 3474102, at *2; *Mattera*, 239 F.R.D. at 80-81 ("It is difficult to conceive how the citizenship requirement under this exception, that more than one-third but less than two-thirds of the putative class members be New York citizens, would not be met here, given that all of the putative class members work in New York").

- Finally, there have been no class actions of the same or similar nature asserted within the last three years against Defendants. Chuang Decl., ¶ 8.

14

Therefore, if this Court finds that the mandatory exceptions to CAFA jurisdiction do not apply (and respectfully, it should), there can be no doubt that the discretionary exception applies such that this Court should decline to exercise jurisdiction over this case.

## II.   DEFENDANTS ARE NOT JOINT EMPLOYERS

Plaintiffs purport, in conclusory fashion, that Defendants are joint employers and, accordingly, contend that they can be held jointly liable for the alleged misdeeds of Plaintiffs' employer.  However, Plaintiffs allege no facts whatsoever to support their contention, and the nominal and threadbare allegations that they do make are woefully deficient and incapable of surviving a motion to dismiss.  *See* Dkt. No. 62, ¶ 14 ("[c]ollectively, TransPerfect employs over 4,000 individuals"); ¶ 18 ("The TransPerfect entities hold themselves out to employees . . . as joint employers").

It is well-settled that to be held liable under the NYLL, each Defendant must be an "employer."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999).  Whether Defendants are joint employers depends on the level of control exercised by the nominal joint employer(s) over the employees of the direct employer.[3]  *Glatt v. Fox Searchlight Pictures Inc.*, No. 11 Civ. 6784 (WHP), 2013 WL 4834428, at *1 (S.D.N.Y. Aug. 26, 2013).

The Second Circuit has developed two tests for determining one's status as an employer: the formal "economic reality" test and the "functional control" test.  *In re Domino's Pizza Inc.*, No. 16 Civ. 2492 (AJN) (KNF), 2018 WL 4757944, at *4 (S.D.N.Y. Sept. 30, 2018).  Under the formal "economic reality" test, courts consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained

---

[3] The NYLL has been interpreted consistently with the FLSA for purposes of determining joint employment. *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d 184, 188-89 (S.D.N.Y. 2003).

employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 105 (2d Cir. 2013) (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984)).  Critically, to survive a motion to dismiss, plaintiffs "are required to plead sufficient facts to support a finding that the defendant is an 'employer' based on the economic reality test." *N.Y. State Court Clerks Ass'n v. Unified Court Sys. of the State of N.Y.*, 25 F. Supp. 3d 459, 471 (S.D.N.Y. 2014).

Under the "functional control" test, courts consider:

> (1) whether the alleged employers' premises and equipment were used for the plaintiffs' work; (2) whether the subcontractors had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to the alleged employers' process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the alleged employers or their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the alleged employers.

*Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003).

Plaintiffs' boilerplate and conclusory allegations fall well short of satisfying either test. Evidence makes clear that Plaintiffs, along with the putative class members, were employed directly by TP Translations, *see* Chuang Decl., ¶¶ 2-3, 5, while the SAC fails to allege any facts to support that the Group Defendants – the alleged joint employers – exercised any control whatsoever over the proposed class members, such as, *inter alia*, power over hiring or firing; discipline or other supervisory authority; payment or setting of wages; or maintenance of employment records.  *See In re Michael Stapleton Assocs., Ltd.*, No. 17 Civ. 5468 (AJN), 2018 WL 3962931, at *3 (S.D.N.Y. Aug. 17, 2018) (granting Rule 12(b)(6) dismissal where "Plaintiffs provide no factual assertions that address any of the four factors of the economic reality test" and "only allege, in a conclusory fashion, that the PWP Defendants assert a degree of supervisory control"); *Lopez v. Acme Am. Envtl. Co.*, No. 12 Civ. 0511 (WHP), 2012 WL 6062501, at *5

(S.D.N.Y. Dec. 6, 2012) (granting Rule 12(b)(6) dismissal where plaintiffs "do not allege that any of the Corporate Moving Defendants supervised or controlled their work schedules or payments").

Nor do Plaintiffs allege any facts purporting that the Group Defendants' exercised "functional control" over the putative class, as set forth in the six-part test from *Zheng*. Plaintiffs do not allege, for instance, that the Group Defendants owned or in any way controlled the New York offices; that their work was supervised by the Group Defendants; that they passed from one Defendant to another; that any one entity is dependent upon the other(s); or any other "facts" that would support functional control. *See, e.g.*, *Hugee v. SJC Grp., Inc.*, No. 13 Civ. 0423 (GBD), 2013 WL 4399226, at *8-10 (S.D.N.Y. Aug. 14, 2013) (no functional control where plaintiff [1] did not allege that immediate employer "could not shift its business to another purported joint employer," [2] performed a service job and not "a discrete line job," and [3] alleged no facts "indicating that he could have maintained any relationship with [purported joint employer] even if he were not employed"); *Lopez*, 2012 WL 6062501, at *5 (no functional control where "responsibility for and supervision of Acme Environmental's employees never passed to the Corporate Moving Defendants").

In short, Plaintiffs were employed by TP Translations, not any other Defendant, and in the absence of any allegations supporting their "joint employer" claims, the Group Defendants should be dismissed from this action. *See Gisomme v. HealthEx Corp.*, No. 13 Civ. 2541 (LDW) (WDW), 2014 WL 2041824, at *4 (E.D.N.Y. May 15, 2014) (rejecting "conclusory allegations of Kearney's operational involvement and control" as "not sufficient to establish Kearney's status as plaintiffs' employer").

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Second Amended Class Action Complaint for lack of subject matter jurisdiction pursuant to Fed.

R. Civ. P. 12(b)(1) and award such other and further relief as the Court deems just and proper. Alternatively, if the SAC is not dismissed in its entirety (which it should be), Defendants submit that the claims asserted against the Group Defendants should be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: New York, New York
       January 27, 2020

**DLA PIPER LLP (US)**

By: /s/ Daniel Turinsky

Daniel Turinsky, Esq.
Garrett D. Kennedy, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel.:   (212) 335-4500
Fax:    (212) 335-4501
daniel.turinsky@dlapiper.com
garrett.kennedy@dlapiper.com

*Attorneys for Defendants*