UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE METCALF and HANNAH LAWSON, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>     - v -<br><br>TRANSPERFECT GLOBAL, INC., TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC., TRANSPERFECT DOCUMENT MANAGEMENT, INC., TRANSPERFECT, INC., and TRANSPERFECT REMOTE INTERPRETING, INC.,<br><br>     Defendants. | Case No.  1:19-cv-10104 (AJN) (KHP) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

              **DLA PIPER LLP (US)**
              Daniel Turinsky, Esq.
              (daniel.turinsky@dlapiper.com)
              Garrett David Kennedy, Esq.
              (garrett.kennedy@dlapiper.com)
              1251 Avenue of the Americas, 27th Floor
              New York, New York 10020
              Tel.: (212) 335-4500
              Fax: (212) 335-4501

              *Attorneys for Defendants*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...................................................................................................................................3

    I.   PLAINTIFFS HAVE FAILED TO DEMONSTRATE
        THAT THIS COURT HAS SUBJECT MATTER JURISDICTION...........................3

        A.  This Action Was Originally Filed in
            New York Within the Meaning of CAFA ........................................................3

        B.  More Than Two-Thirds of the Putative
            Class Are Citizens of New York.......................................................................5

    II.  PLAINTIFFS HAVE FAILED TO PLEAD AN
        ACTIONABLE CLAIM AGAINST THE GROUP DEFENDANTS..........................6

CONCLUSION..............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**            **Page(s)**

*Acharya v. 7-Eleven, Inc.*,
  2019 WL 6830203 (S.D.N.Y. Dec. 13, 2019) ................................................................. 7

*Auburn Housing Auth. v. Martinez*,
  277 F.3d 138 (2d Cir. 2002) .......................................................................................... 4

*CSX Transp., Inc. v. Island Rail Terminal, Inc.*,
  879 F.3d 462 (2d Cir. 2018) .......................................................................................... 5

*D. Klein & Son, Inc. v. Good Decision, Inc.*,
  147 F. App'x 195 (2d Cir. 2005) ............................................................................... 8, 9

*Detroit Carpenters Fringe Benefit Funds v. Andrus Acoustical, Inc.*,
  2012 WL 601425 (E.D. Mich. Feb. 23, 2012) ............................................................. 9

*Diaz v. Consortium for Worker Educ., Inc.*,
  2010 WL 3910280 (S.D.N.Y. Sept. 28, 2010) .............................................................. 7

*In re Domino's Pizza Inc.*,
  2018 WL 4757944 (S.D.N.Y. Sept. 30, 2018) .............................................................. 8

*Fenner v. News Corp.*,
  2013 WL 6244156 (S.D.N.Y. Dec. 2, 2013) ................................................................ 8

*Flynn v. R.D. Masonry, Inc.*,
  736 F. Supp. 2d 54 (D.D.C. 2010) ............................................................................... 9

*Guzman v. News Corp.*,
  2013 WL 5807058 (S.D.N.Y. Oct. 28, 2013) .......................................................... 8, 10

*Hsieh Liang Yeh v. Han Dynasty, Inc.*,
  2019 WL 633355 (S.D.N.Y. Feb. 14, 2019) ................................................................. 7

*Hugee v. SJC Grp., Inc.*,
  2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013) .............................................................. 7

*In re Jimmy John's Overtime Litig.*,
  2018 WL 3231273 (N.D. Ill. June 14, 2018) ................................................................ 8

*Kurovskaya v. Project O.H.R., Inc.*,
  251 F. Supp. 3d 699 (S.D.N.Y. 2017) ........................................................................... 6

*Moore v. IOD Inc.*,
  2016 WL 8941200 (S.D.N.Y. Mar. 24, 2016) .............................................................. 4

*Operating Eng'rs Local 101 Pension Fund v. Al Muehlberger*
  *Concrete Const., Inc.*,
  2013 WL 5409116 (D. Kan. Sept. 26, 2013) ..................................................................9, 10

*Robinson v. Shell Oil Co.*,
  519 U.S. 337 (1997) .............................................................................................................4

*Salazar v. McDonald's Corp.*,
  2016 WL 4394165 (N.D. Cal. Aug. 16, 2016),
  *aff'd*, 939 F.3d 1051 (9th Cir. 2019) ...................................................................................8

*Trs. of Hollow Metal Trust Fund v. FHA Firedoor Corp.*,
  2013 WL 1809673 (S.D.N.Y. Apr. 30, 2013) ......................................................................9

*Trs. of Mosaic & Terrazzo Welfare Pension, Annuity, &*
  *Vacation Funds v. Cont'l Floors, Inc.*,
  2013 WL 5637492 (E.D.N.Y. Oct. 15, 2013) .....................................................................10

*Zheng v. Liberty Apparel Co.*,
  355 F.3d 61 (2d Cir. 2003) ...................................................................................................7

**Statutes & Other Authorities**

Fed. R. Civ. P. 12 .......................................................................................................... 1, 3, 10

Defendants TransPerfect Translations International, Inc. ("TP Translations"), TransPerfect Global, Inc. ("TPGI"), TransPerfect Document Management, Inc. ("TPDM"), TransPerfect, Inc. ("TPI"), and TransPerfect Remote Interpreting, Inc. ("TPRI") (TPGI, TPDM, TPI and TPRI collectively referred to herein as, "Group Defendants") respectfully submit this reply memorandum of law in further support of their motion to dismiss the Second Amended Class Action Complaint (the "SAC") of plaintiffs Michele Metcalf ("Metcalf") and Hannah Lawson ("Lawson") (collectively, "Plaintiffs"), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Nothing in Plaintiffs' opposition memorandum changes the fact that both the mandatory and discretionary exceptions to federal jurisdiction under the Class Action Fairness Act ("CAFA") are fully satisfied here.

First, Plaintiffs argue that because Metcalf improperly filed her original complaint in federal district court in California, the exceptions to CAFA jurisdiction do not apply. Plaintiffs are wrong. California has no connection whatsoever to this dispute, and the complaint was filed in that jurisdiction in direct violation of Metcalf's express contractual obligation to file any action arising out of or relating to her employment in New York, which has exclusive jurisdiction in any such proceeding. Upon being confronted with this binding forum selection clause, Metcalf promptly stipulated to transfer her complaint to New York and TPGI (the only defendant at the time) expressly reserved all arguments with respect to subject matter jurisdiction in connection with that transfer. Thus, by any reasonable measure this action was originally filed in New York. The exceptions to CAFA jurisdiction do not somehow become inapplicable merely because of Metcalf's wrongful conduct, improper forum shopping and breach of her contractual obligations. That would be an absurd result inconsistent with any reasonable statutory interpretation of CAFA

1

and entirely contrary to the purpose of the statute, which was enacted to extend federal jurisdiction over interstate class actions of national importance while keeping purely local matters of state concern in the state courts.

Second, Defendants have submitted evidence which plainly establishes that more than two-thirds of the putative class (and all Defendants) are citizens of New York, such that the requirements for the mandatory exceptions to CAFA are satisfied. Plaintiffs' speculation and conjecture that some individuals possibly may have moved out of state, and baseless accusations regarding purportedly improperly restrictive interpretations of the class definition in the SAC, do not change that fundamental fact. It is also completely beside the point: even if Defendants had not submitted a declaration, the case law makes clear that the Court properly may presume that more than two-thirds of the class are New York citizens where, as here, the allegations relate exclusively to individuals who worked in New York. Moreover, even if the mandatory exceptions to CAFA jurisdiction do not apply (and they do), there is no serious question that more than one-third of the putative class are citizens of New York, such that the discretionary exception to CAFA jurisdiction is plainly applicable.

Third, it is undisputed that Lawson originally filed her complaint (the First Amended Complaint) in New York and four out of five defendants were only added as parties and named as defendants after the case was transferred to New York. Thus, the original filing with respect to those parties is clearly New York.

Finally, if this case is not dismissed for lack of subject matter jurisdiction (which it should be), the pleadings in the SAC are woefully deficient to establish that the Group Defendants are joint employers. Thus, the claims against the Group Defendants should be dismissed.

Accordingly, as set forth herein and in our opening memorandum, Defendants respectfully request the Court dismiss the SAC for lack of subject matter jurisdiction, or, in the alternative, dismiss the claims asserted against the Group Defendants pursuant to Fed. R. Civ. P. 12(b)(6).

## **ARGUMENT**

### I. **PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THIS COURT HAS SUBJECT MATTER JURISDICTION**

#### A. **This Action Was Originally Filed in New York Within the Meaning of CAFA**

In arguing that this case should be deemed "originally filed" in California, Plaintiffs assert that Metcalf properly filed her claims in California and merely consented to transfer this case to New York at TPGI's request. That assertion is untrue.

Upon the commencement of her employment with TP Translations, Metcalf entered into an Employee Confidentiality, Non-Competition and Non-Solicitation Agreement which states, in pertinent part:

> Employee and TransPerfect irrevocably and unconditionally (i) agree that any suit, action or other legal proceeding arising out of or relating to this Agreement or Employee's employment by TransPerfect . . . must be brought exclusively in any state or federal court of competent jurisdiction in New York County, New York; (ii) consent to the jurisdiction of any such New York court, which shall have exclusive jurisdiction in any such suit, action or proceeding; . . . and (v) agree that if there is any breach by Employee relating in any way to this Agreement (including noncompliance with, or breach or threatened breach of this Agreement), TransPerfect shall be entitled to recover its expenses, including reasonable attorney's fees and costs, incurred in enforcing its rights under this Agreement . . . .

(Declaration of Daniel Turinsky, dated March 9, 2020 ["Turinsky Decl."], Exhibit ["Ex."] A.)

Following Metcalf's improper filing in California, counsel for Defendants informed Metcalf's counsel, via emails dated September 23, 2019 and October 8, 2019, that "all of plaintiff's claims are asserted under NY law, all of the events at issue and witnesses are located in NY and, most importantly, . . . that plaintiff signed an agreement expressly establishing NY as the venue for any claims related to plaintiff's employment with TransPerfect." (Turinsky Decl., Ex. B).

3

Defendants' counsel also made clear that "TransPerfect intends to seek all available relief, including attorneys' fees (as provided for in plaintiff's forum selection agreement) if it is required to file a motion enforcing the forum selection clause." (*Id.*) In response, Plaintiffs' counsel stated simply, "Plaintiff will stipulate to transfer to the SDNY." (*Id.*)

Against this background, it is clear that the SAC should be deemed originally filed in New York, which is the only jurisdiction in which Metcalf was contractually permitted to file her claim – and the jurisdiction where Lawson filed her original pleading. Indeed, the exceptions to CAFA jurisdiction were specifically designed to address purely local disputes such as this involving alleged violations of a New York statute that affects individuals who worked exclusively in New York. *See Moore v. IOD Inc.*, 2016 WL 8941200, at *5 (S.D.N.Y. Mar. 24, 2016) (holding that mandatory exceptions to CAFA jurisdiction "are intended 'to keep purely local matters and issues of particular state concern in the state courts'" and granting motion to dismiss for lack of subject matter jurisdiction pursuant to local controversy exception) (citations omitted).[1]

This is because the United States Supreme Court has made clear that the "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning *with regard to the particular dispute in the case*," and that "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which the language is used, *and the broader context of the statute as a whole*." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340-41 (1997) (emphasis added); *see also Auburn Housing Auth. v. Martinez*, 277 F.3d 138, 144 (2d Cir. 2002) (explaining that "the preferred meaning of a statutory provision is one that is consonant with the rest of the statute"). In this regard, it is well-settled that "[a]

---

[1] Notably, in granting the motion to dismiss in *Moore*, Judge Broderick also explained that "if Plaintiffs opt to re-file this action in the New York State courts, it will be a New York State court interpreting a New York State statute that affects, almost exclusively, New York State residents. In short, the goals underlying CAFA are not served by retaining federal jurisdiction over this controversy." *Moore*, 2016 WL 8941200, at *7 n.13.

4

statute should be interpreted in a way that avoids absurd results." *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 471 (2d Cir. 2018) (quotation marks and citations omitted).

Here, as noted above, this is a purely local dispute for which the exceptions to CAFA jurisdiction were specifically designed to address. An "original filing" in the wrong jurisdiction, in violation of an express contractual obligation, which was promptly transferred to New York under threat of a motion to dismiss cannot, under any reasonable interpretation of the statute, serve to defeat those exceptions. Plaintiffs do not cite a *single* case to the contrary, which is unsurprising since such a result would be inconsistent with the goals underlying CAFA and lead to an absurd result where a local matter involving issues of particular state concern is litigated in a federal forum solely because the plaintiff breached her contractual obligations and filed suit in an improper jurisdiction. Accordingly, the SAC should be dismissed.

**B.     More Than Two-Thirds of the Putative Class Are Citizens of New York**

Plaintiffs also claim that they need discovery to evaluate whether more than two-thirds of the putative class are citizens of New York. No such discovery is warranted.

First, Defendants have submitted two declarations from a human resources director which establish that more than two-thirds of the putative class are citizens of New York. (*See* ECF No. 67; Reply Declaration of Carol Chuang, dated March 6, 2020 ["Chuang Reply Decl."].) Nothing further is needed or appropriate at this stage, and Plaintiffs' counsel's baseless speculation about the accuracy of the declarations is not grounds to embark on needless discovery. (*See* Chuang Reply Decl., ¶¶ 2-7.)

Second, even in the absence of a declaration, courts routinely hold that citizenship status may be inferred for purposes of CAFA jurisdiction where the allegations relate exclusively to individuals who worked in New York. In this regard, Judge Marrero's decision in *Kurovskaya v.*

5

*Project O.H.R., Inc.*, 251 F. Supp. 3d 699 (S.D.N.Y. 2017), is instructive. In *Kurovskaya*, a class action involving alleged violations of the New York Labor Law, Judge Marrero explained that a "Court may infer citizenship for the purposes of evaluating whether the citizenship requirement of a CAFA exception has been met by the moving party" and remanded the action to state court because the local controversy and home state exceptions to CAFA jurisdiction were satisfied. *Id.* at 703. In so holding, the Court found that no jurisdictional discovery was warranted, explaining that "[w]hile it is certainly possible that some . . . putative class members employed by Defendant may commute to New York from neighboring states, . . . it is reasonable to infer . . . that two-thirds or more of the putative class members . . . are citizens of New York State" because they worked in New York for a defendant with a principal place of business in New York. *Id.* The Court further explained that "even if the Court were unwilling to infer that two-thirds of the Plaintiff class members are citizens of New York . . . it is eminently reasonable to infer that greater than one-third but less than two-thirds of the members of all proposed plaintiff classes in the aggregate and the primary defendants are citizens" of New York, such that the discretionary exception to CAFA jurisdiction would be applicable. *Id.* at 704 (internal quotation marks omitted).

Here, as in the above-cited cases and the authority in Defendants' moving papers, the Court should conclude that more than two-thirds of the putative class are citizens of New York and dismiss this action pursuant to the local controversy and home state exceptions to CAFA.

## II. PLAINTIFFS HAVE FAILED TO PLEAD AN ACTIONABLE CLAIM AGAINST THE GROUP DEFENDANTS

Plaintiffs' claims against the Group Defendants should be dismissed because they are not joint employers of Plaintiffs. The "joint employer analysis considers whether two entities shared sufficient control over employees so that each is deemed an employer," but neither the SAC nor the Opposition alleges any "control" whatsoever over the Plaintiffs (or the putative class) by the

6

Group Defendants – rather, Plaintiffs cite entirely inapposite authority while relying on two "factual" allegations that, even if true, are insufficient as a matter of law. *Acharya v. 7-Eleven, Inc.*, 2019 WL 6830203, at *3 (S.D.N.Y. Dec. 13, 2019) (citations omitted).

First, Plaintiffs put forward no allegations of formal control under the "economic reality" test. Plaintiffs do not contend the Group Defendants had any role in – much less exercised control over – hiring, firing, or any other employment decision; supervising them; setting work schedules; paying them; or maintaining their employment records. Courts routinely dismiss such deficient joint employer claims. *See Diaz v. Consortium for Worker Educ., Inc.*, 2010 WL 3910280, at *4 (S.D.N.Y. Sept. 28, 2010) (dismissing FLSA claims where complaint "contain[ed] no facts that indicate that [defendant] had any direct role in managing the plaintiffs, hiring or firing the plaintiffs, determining their working hours, or maintaining employment records"); *Hsieh Liang Yeh v. Han Dynasty, Inc.*, 2019 WL 633355, at *8-9 (S.D.N.Y. Feb. 14, 2019) (dismissing claims where complaint did "not plead any facts . . . that any of these [joint employers] . . . are accountable for [plaintiff's] employment or pay or had any control (formal or functional) over him").

Second, Plaintiffs do not put forward any support for six-factor functional control under *Zheng v. Liberty Apparel Co.*, 355 F.3d 61 (2d Cir. 2003). They do not contend that they, *inter alia*, used the Group Defendants' offices or equipment, were supervised by the Group Defendants, performed any "discrete line job" that was integral to the Group Defendants' "process of production," could be shifted between the Group Defendants, or anything germane to this analysis. *See*, *e.g.*, *Acharya*, 2019 WL 6830203, at *3 (dismissing alleged joint employer where plaintiff failed to allege any elements of functional control); *Hugee v. SJC Grp., Inc.*, 2013 WL 4399226, at *8-10 (S.D.N.Y. Aug. 14, 2013) (no functional control).

7

Third, Plaintiffs' argument hinges on two alleged "facts" which are deficient as a matter of law. Specifically, Plaintiffs claim that the Defendants: (i) utilized a common Confidentiality, Non-Solicitation and Non-Competition Agreement (the "NDA"), and (ii) operated from the same address. (Opp., pp. 8-9; *see also* Turinsky Decl., Ex. A.) Even if true, such "facts" are legally insufficient.

With respect to the NDA, it is well-settled that use of form documents between companies does not support "joint employment." *See In re Domino's Pizza Inc.*, 2018 WL 4757944, at *5 (S.D.N.Y. Sept. 30, 2018) (Nathan, J.) (fact that franchisee used forms prepared by franchisor and utilizing franchisor's logo did not support joint employment); *see also In re Jimmy John's Overtime Litig.*, 2018 WL 3231273, at *15 (N.D. Ill. June 14, 2018) (common interview forms did not evidence joint employment). Likewise, a common address is equally unavailing: Plaintiffs' allege no "control" over them by the Group Defendants – they do not claim, for instance, that they shared workspace or equipment, as required under the functional control test – and courts have rejected joint employer claims notwithstanding that two entities share a common address. *See*, *e.g.*, *Guzman v. News Corp.*, 2013 WL 5807058, at *1 (S.D.N.Y. Oct. 28, 2013) (granting summary judgment on joint and single employer claims where two entities operated from the same building and allegedly shared certain facilities); *Fenner v. News Corp.*, 2013 WL 6244156, at *1 (S.D.N.Y. Dec. 2, 2013) (same); *see also Salazar v. McDonald's Corp.*, 2016 WL 4394165 (N.D. Cal. Aug. 16, 2016), *aff'd*, 939 F.3d 1051 (9th Cir. 2019) (no joint employment, despite direct employer leasing premises from nominal employer).

Fourth, Plaintiffs do not cite a single case that even *mentions* joint employment, much less that supports their claims. Initially, they rely on *D. Klein & Son, Inc. v. Good Decision, Inc.*, 147 F. App'x 195 (2d Cir. 2005), but this case is completely off-base: it considered a commercial

8

breach of contract claim relating to the purchase of luggage, where the plaintiff sought to hold the manufacturer liable as an "alter ego" of the luggage's distributor. *Id.* at 198. It is totally irrelevant.

The balance of Plaintiffs' "precedent" is equally off-base: each case involves ERISA claims by a union (or one of its members) seeking to hold a third party liable on an "alter ego" theory for unpaid pension contributions, in accordance with the governing collective bargaining agreement ("CBA"). *See Trs. of Hollow Metal Trust Fund v. FHA Firedoor Corp.*, 2013 WL 1809673 (S.D.N.Y. Apr. 30, 2013) ("alter ego" theory; seeking to hold nominal employer liable for obligations under a CBA between the direct employer and the employee); *Detroit Carpenters Fringe Benefit Funds v. Andrus Acoustical, Inc.*, 2012 WL 601425, at *3 (E.D. Mich. Feb. 23, 2012) ("alter ego" claims); *Flynn v. R.D. Masonry, Inc.*, 736 F. Supp. 2d 54, 56 (D.D.C. 2010) (same); *Operating Eng'rs Local 101 Pension Fund v. Al Muehlberger Concrete Const., Inc.*, 2013 WL 5409116, at *6 (D. Kan. Sept. 26, 2013) (same). As explained in *Flynn*, the considerations for "alter ego" liability in the ERISA context are uniquely tailored to the specifics of such claims: "In the ERISA context, alter ego liability enables benefit plan trustees to 'recover delinquent contributions from a sham entity used to circumvent the participating employer's pension obligations.'" *Flynn*, 736 F. Supp. 2d at 62 (quoting *Flynn v. R.C. Tile*, 353 F.3d 953, 958 (D.C. Cir. 2004)). These considerations are not at issue here.

Moreover, even if these cases were relevant – and they are not – each one alleged substantially more "facts" to support their "alter ego" claims than Plaintiffs do in the SAC. *See*, *e.g.*, *Hollow Metal*, 2013 WL 1809673 (allegations of shared employees performing work under a common CBA, with employees changing between companies, and that nominal employer directly paid employees); *Flynn*, 736 F. Supp. 2d at 56 (direct agreement between union and nominal employer); *Detroit Carpenters*, 2012 WL 601425, at *3 (alleging "share[d] management,

9

equipment, facilities, employees, customers," a common business, common ownership, common control, and nominal employer had rights and obligations under CBA between direct employer and union); *Operating Eng'rs Local 101 Pension Fund*, 2013 WL 5409116, at *6 (allegations regarding shared control, management, supervision, finances, and other germane considerations).

The closest Plaintiffs come to citing germane authority is *Trs. of Mosaic & Terrazzo Welfare Pension, Annuity, & Vacation Funds v. Cont'l Floors, Inc.*, 2013 WL 5637492 (E.D.N.Y. Oct. 15, 2013), but even this case – another ERISA case – considers a "single employer" theory, not a "joint employer" theory, and thus is unavailing. A "single employer" claim alleges domination over a subsidiary's employment functions by a parent corporation – not formal or functional control over employees. *See Guzman*, 2013 WL 5807058 at *8 (explaining a "single employer" exists where "a parent and subsidiary are so integrated that in effect they are acting as one with respect to the plaintiff's employment"). Here, Plaintiffs do not allege a "single employer" theory and they certainly do not assert any facts touching on the necessary elements of a single employer claim – there is no allegation of common labor relations or management, interrelated operations, or common ownership. *Id.*

In sum, Plaintiffs fail to put forward any support whatsoever for their "joint employer" claims and Defendants respectfully submit that these claims should be dismissed.

## **CONCLUSION**

Based on the foregoing, and as further set forth in Defendants' opening memorandum of law, Defendants respectfully request that the Court: (i) dismiss the SAC for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1); or, in the alternative, (ii) dismiss Plaintiffs' claims asserted against the Group Defendants pursuant to Fed. R. Civ. P. 12(b)(6); and (ii) award Defendants such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 9, 2020

          **DLA PIPER LLP (US)**

          By: /s/ Daniel Turinsky

          Daniel Turinsky, Esq.
          Garrett D. Kennedy, Esq.
          1251 Avenue of the Americas
          New York, New York 10020
          Tel.:   (212) 335-4500
          Fax:   (212) 335-4501
          daniel.turinsky@dlapiper.com
          garrett.kennedy@dlapiper.com

          *Attorneys for Defendants*