USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Michele Metcalf, *et al.*,

                Plaintiffs,

       –v–

TransPerfect Global, Inc., *et al.*,

                Defendants.

---

19-cv-10104 (AJN)

OPINION & ORDER

---

ALISON J. NATHAN, District Judge:

Plaintiffs, who are not entirely diverse from Defendants, bring claims for violations of New York state labor laws against Defendants on behalf of themselves and others similarly situated. The operative complaint asserts subject matter jurisdiction under the Class Action Fairness Act of 2005. Defendants move to dismiss Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction and, in the alternative, Defendants move to dismiss all claims against all Defendants except TransPerfect Translations International, Inc. for failure to state a claim. For the reasons described below, Defendants' motion to dismiss for lack of subject matter jurisdiction is DENIED and their motion to dismiss for failure to state a claim is GRANTED.

## I.  Background

### A.  Factual Background

The following facts are drawn from Plaintiffs' Second Amended Complaint. Dkt. No. 62. They are assumed true for purposes of resolution of the motion to dismiss. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

Plaintiffs Michele Metcalf and Hannah Lawson bring claims against Defendants TransPerfect Global, Inc., TransPerfect Translations International Inc., TransPerfect Document Management, Inc., TransPerfect, Inc., and TransPerfect Remote Interpreting, Inc., (collectively "Defendants" or "TransPerfect corporations"), on behalf of themselves and "all of Defendants' salaried employees being compensated at less than $1,125.00 per week . . . who worked in Defendants' New York, New York offices from December 31, 2018 to present (the "Class Period") who worked more than 40 hours in a workweek (the "Class Members.")," for violations of New York labor laws. *Id.* at ¶ ¶ 1-4.

Defendants, the TransPerfect corporations, are corporations organized under the laws of the state of Delaware with their principal place of business in New York, New York. *Id.* at ¶¶ 9-13.  Defendants employ over 4,000 individuals, more than 100 of which are salaried employees making less than $1,250.00 per week in New York, New York. *Id.* at ¶ 14.  Defendants hold themselves out to employees, including the Plaintiffs and proposed class members, as joint employers because they have represented to at least some employees in mandatory employee agreements that their "TransPerfect employer" "includes but may not be limited to TransPerfect Translations International Inc., TransPerfect Document Management, Inc., TransPerfect, Inc., or TransPerfect Remote Interpreting, Inc. (collectively 'TransPerfect'), headquartered in New York, New York with facilities located throughout the world." *Id.* at ¶ 18.

Plaintiff Metcalf is a citizen of Newport Beach, California who worked for Defendants from approximately November 2015 to September 2019. *Id.* at ¶ 5.  During this time period, Plaintiff was promoted to various positions.  Plaintiff Metcalf initially started working for Defendants as a Client Services Associate in their District of Columbia office in November 2016 and earned an annual salary of $35,000. *Id.* In August 2017, Defendants promoted Plaintiff

Metcalf to the position of Client Service Executive and paid her an annual salary of $45,000. *Id.* In January 2018, Plaintiff Metcalf transferred to Defendants' New York, New York office where she worked as a Client Services Associate and earned an annual salary of $51,000. *Id.* In November 2018, she was promoted to Senior Client Services Executive with an annual salary of $56,000, which was $1,076.92 per week, a position she held until June 2019. *Id.* During this time period, she generally worked over 50 to 55 hours per week. *Id.*

Plaintiff Lawson is a citizen of Brooklyn, New York. *Id.* at ¶ 7. Plaintiff worked in Defendants' New York office from approximately June 18, 2018 to October 9, 2019. *Id.* While she initially started as a Project Coordinator for Defendants earning $43,000 per year, in December 2018, she was promoted to Project Manager, where she earned $980.77 per week, based on a projected annual salary of $51,000. *Id.* Plaintiff's position ended April 7, 2019. During this time period, Plaintiff Lawson worked an average of 45 hours for Defendant each week. *Id.*

In addition to Plaintiffs, Defendants have, upon information and belief, employed at least hundreds of other salaried employees who have worked over 40 hours a week and earned less than $1,125.00 per week in New York, New York from December 31, 2018 to the present. *Id.* at ¶ 21.

### B. Procedural Background

On August 18, 2019, Plaintiff Metcalf initiated this action by filing the Complaint in the District Court for the Central District of California. Dkt. No. 1. Plaintiff Metcalf asserted claims against Defendant TransPerfect Global Inc., for violating New York State labor laws by failing to pay overtime wages due and for failing to provide wage notices and required wage statements. *Id.* at ¶¶ 1-4 (citing 12 N.Y.C.R.R. § 142-2, NYLL § 195(1)(a), and NYLL § 195(3)). Plaintiff

Metcalf brought her claims on behalf of herself and "all of Defendant's Client Services Associates and Senior Client Services Executives who worked in Defendant's New York, New York offices from December 31, 2018 to the present (the "Class Period") (the "Class Members")," all of whom "regularly worked in excess of 40 hours per week." *Id.* at ¶ 1. Plaintiff asserted that the basis for jurisdiction was 28 U.S.C. § 1332(a), as Plaintiff is "a citizen of California, Defendant is a citizen of New York and Delaware, and the amount in controversy in this matter exceeds $75,000." *Id.* at ¶ 8.

On October 23, 2019, the parties submitted a joint proposed stipulation to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Dkt. No. 22. The federal court in California granted that and the case was transferred to this District. Dkt. Nos. 24, 25. On November 15, 2019, Defendant filed a motion to dismiss the Complaint on the grounds that there was no subject matter jurisdiction because Plaintiff had not sufficiently alleged the amount in controversy exceeded $75,000. Dkt. No. 38. Plaintiff then amended her Complaint. Dkt. No. 45. The First Amended Complaint added an additional Plaintiff, Plaintiff Lawson, and added the remainder of the TransPerfect corporations as Defendants, but otherwise asserted substantially the same claims and again asserted diversity jurisdiction. *Id.*

On December 10, 2019, Defendants filed a letter to the Court arguing that the addition of Plaintiff Lawson to Plaintiff's First Amended Complaint divested the Court of diversity jurisdiction, because both Plaintiff Lawson and Defendants are citizens of New York. Dkt. No. 50. The Court issued an order requiring Plaintiffs to show cause why their claims should not be dismissed for lack of subject matter jurisdiction. Dkt. No. 55. Plaintiffs filed a letter requesting permission to file a Second Amended Complaint asserting jurisdiction on the basis of the Class Action Fairness Act of 2005 ("CAFA"). Dkt. No. 59. The Court granted Plaintiffs' request and

on January 13, 2020 Plaintiffs filed a Second Amended Complaint. Dkt. Nos. 61, 63.  The

Defendants have moved to dismiss.  Dkt No. 65.

## II.     Discussion

Before the Court is Defendants' motion to dismiss the Second Amended Complaint for

lack of subject matter jurisdiction under Federal Rule of Civil Procedure Rule 12(b)(1), or in the

alternative to dismiss claims against all Defendants except Defendant TransPerfect Translations,

Inc., for failure to state a claim under Rule 12(b)(6).  Dkt. No. 65.  For the reasons stated below,

the Court determines it has subject matter jurisdiction under the Class Action Fairness Act and

that none of the statutory exceptions that either mandate or permit district courts to decline to

exercise jurisdiction apply. The Court also determines that Plaintiffs have failed to plausibly

allege that the TransPerfect corporations other than TransPerfect Translations International, Inc.,

were "joint employers," and therefore the claims against those Defendants must be dismissed.

### A.  Defendants motion to dismiss for lack of subject matter jurisdiction

The Class Action Fairness Act of 2005 grants district courts subject matter jurisdiction

over large class actions involving plaintiffs and defendants from different states.  28 U.S.C.

§ 1332(d)(2).  For jurisdiction to lie, the Act requires that (1) the proposed class is composed of

at least 100 members, (2) there is "minimal diversity," i.e., any member of the proposed class is a

citizen of a state and any defendant is a citizen of a different state, and (3) the amount in

controversy exceeds the sum of $5,000,000.00.  *Id.*   The Act's purpose was to expand the

availability of federal jurisdiction over class actions with nationwide import even in the absence

of complete diversity.  *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006).

Consistent with this purpose, the Act contains mandatory exceptions that direct the Court

to "decline jurisdiction" over class actions that primarily concern only the state where the action

was first filed.  *See Gold v. New York Life Ins. Co.*, 730 F.3d 137, 142 (2d Cir. 2013).  The "local

controversy" exception requires that the district court decline to exercise jurisdiction if the case

"consist[s] primarily of local, *intrastate* matters." S*immons v. Ambit Energy Holdings, LLC*, No.

13-CV-6240 JMF, 2014 WL 5026252, at *3 (S.D.N.Y. Sept. 30, 2014).  The exception applies if

(1) more than two third of the members of the proposed class are citizens of the state in which

the action was originally filed; (2) at least one defendant is a defendant from whom significant

relief is sought, whose alleged conduct forms a significant basis for the claims, and who is a

citizen of the State in which the action was originally filed; (3) the principal injuries were

incurred in the state in which the action was originally filed, and (4) no other class action

asserting the same or similar claim against any defendants has been filed in the past three years.

*See* 28 U.S.C. § 1332(d)(4)(A).  Additionally, the "home state" exception requires the court to

decline jurisdiction if two thirds or more of the proposed class and the primary defendants are

citizens of the state in which the action was originally filed.  28 U.S.C. § 1332(d)(4)(B)).

Beyond that, the Court may in its discretion decline to exercise jurisdiction if "greater

than one-third but less than two-thirds of the members of all proposed plaintiff classes in the

aggregate and the primary defendants are citizens of the State in which the action was originally

filed," "in the interests of justice and looking at the totality of the circumstances," based on the

consideration of a number of enumerated factors, including whether "the claims asserted involve

matters of national or interstate interest."  28 U.S.C. § 1332(d)(3).

To start, the three requirements for establishing CAFA jurisdiction are met here:  the

number of putative class members is at least 100, there is minimal diversity of the parties, and

the amount in controversy exceeds $5,000,000.  *See* 28 U.S.C. § 1332(d)(2); Dkt. No. 65 at ¶ 15.

But Defendants argue that the Court must decline to exercise jurisdiction based on the mandatory

and discretionary exceptions.  They claim that the mandatory exceptions apply because seventy percent of Plaintiffs' proposed class and all defendants are citizens of New York and the relevant injuries and conduct occurred in New York.  And, even if the Court finds that less than two thirds of the plaintiffs are New York citizens, Defendants argue the Court should decline to exercise jurisdiction under the discretionary exception.

Neither the mandatory nor discretionary exceptions to the Act apply to this case. CAFA's exceptions only apply if the relevant proportion of plaintiffs and defendants are citizens of "the State in which the action was originally filed."  28 U.S.C. § 1332(d)(3)-(4).  This "action" was not "originally filed" in New York, but in the Central District of California.  The district court then transferred the civil action under 28 U.S.C. § 1404(a) pursuant to a stipulation of the parties.

Defendants make various arguments for why the Court should ignore that this action originated in California and decline jurisdiction over the case.   But the Court rejects these arguments because they require adopting an interpretation of the phrase "the State in which the action was originally filed" that is incompatible with the plain language of the statute.

First, Defendants' contend that the phrase "originally filed" in 28 U.S.C. § 1332(d) does not mean where the plaintiffs *actually* filed the action, but instead where it believes the plaintiffs *should have* done so.  They point to a forum selection clause purportedly contained in an employment agreement between the parties, which designated New York the exclusive forum for any suit against Defendants.  *See* Dkt. No. 73 at 3.  In Defendants' view, Plaintiff Metcalf never should have filed suit in California, because the forum selection clause required her to sue in this District.  *Id.*

The Court is not prepared to adopt an interpretation so clearly contrary to the plain language of the statute.  When a statute's "language is unambiguous, no further inquiry is necessary."  *See Cohen v. JP Morgan Chase & Co*., 498 F.3d 111, 116 (2d Cir. 2007).  Indeed, the Second Circuit has emphasized the importance of adhering to this principle in situations where the Court's must determine whether or not to exercise jurisdiction.  *See, e.g., Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 706 (2d Cir. 2019).  In interpreting CAFA, the Court can come to no other conclusion other than "originally filed" means "originally filed." Defendants provide no authority, let alone binding authority, suggesting to the contrary.  That is unsurprising, as the Second Circuit has routinely used the phrase "originally filed" to refer to the court in which an action is first filed, not the court to which it is subsequently transferred or removed.  *See, e.g.*, *Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC v. Countrywide Fin. Corp.*, 603 F.3d 23, 26 (2d Cir. 2010); *Liberty Synergistics Inc. v. Microflo Ltd.*, 718 F.3d 138, 142 (2d Cir. 2013); *Gary Friedrich Enterprises, LLC v. Marvel Characters, Inc.*, 716 F.3d 302, 313 n.10 (2d Cir. 2013); *In re Zyprexa Prod. Liab. Litig.*, 594 F.3d 113, 115 (2d Cir. 2010) (per curiam); *Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 89 n.2 (2d Cir. 2006); *Schaeffer v. Vill. of Ossining*, 58 F.3d 48, 50 (2d Cir. 1995); *Pfizer, Inc. v. Lord*, 447 F.2d 122, 123 (2d Cir. 1971) (per curiam).

Next, Defendants contend that a case is not "originally filed" in a court if it is "improperly filed," meaning that not only *should* the case have been brought elsewhere, but that it *could not* have been brought in the forum where it was filed in the first instance. The Court need not decide that issue, because Defendants have not demonstrated that this action was "improperly filed" in the Central District of California.  The existence of a forum selection clause does not render venue improper in another forum.  *Atl. Marine Const. Co. v. U.S. Dist.*

*Court*, 571 U.S. 49, 55-57 (2013).  Moreover, the district court did not transfer for improper

venue under 28 U.S.C. § 1406, which requires showing that the "venue chosen by the plaintiff is

improper," but instead it transferred pursuant to section 1404, the provision allowing for transfer

of cases "[i]f the original forum *is* a proper venue" but transfer is nonetheless appropriate.  *See*

*Corbishley v. Napolitano*, No. 20-CV-7445 (VSB), 2020 WL 6157103, at *2 n.2 (S.D.N.Y. Oct.

21, 2020) (quoting 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure

§ 3827 (4th ed. 2020)) (emphasis added).  Thus, the Defendants agreement to transfer via section

1404 was premised on venue having been proper in the Central District of California.  And

Defendants provide no other reason why the case was "improperly filed" in that district.

Lastly, Defendants point to the fact that Plaintiffs did not assert CAFA jurisdiction until

their Second Amended Complaint, which was filed after the case had been transferred to the

Southern District of New York.  Defendants argue that "originally filed" should refer to the state

where the complaint first asserting CAFA jurisdiction was filed.  But Defendants again cite no

authority in this Circuit, or anywhere else, for that interpretation.  That interpretation is also

contrary to the clear language of the statute, which says the exemptions apply to the "State where

the *action* was originally filed."  28 U.S.C. § 1332(d) (emphasis added).  The word "action"

refers to the case itself, not the operative complaint in that case.  *See* ACTION, Black's Law

Dictionary (11th ed. 2019) ("A civil or criminal judicial proceeding.").  *See also* Fed. R. Civ. P.

Rule 3(4) ("[T]he first step in an action is the filing of the complaint.").  This is demonstrably

true because, in the context of CAFA, the Second Circuit refers to actions as "originally filed" in

state court, despite the fact that CAFA jurisdiction was not asserted until after the defendant

removed the case to federal court. *See Greenwich Fin. Servs. Distressed Mortg. Fund 3 LLC,* 603

F.3d at 26 (CAFA allows "actions originally filed in state court that conform to particular

requirements to be removed to federal district court") (citing 28 U.S.C. § 1332(d)); *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 56 (2d Cir. 2006) (CAFA "enhances the ability of defendants to remove class actions originally filed in state court to federal court.").

The Court recognizes that the reality of its holding is that Plaintiffs can litigate their claims in the Southern District of New York despite the fact that they probably could not have brought the case here in the first instance. The Court also recognizes that in enacting CAFA, Congress intended not only to provide a federal forum for "interstate cases of national importance," but also ensure that state courts would continue to "adjudicate truly local controversies." *Commisso v. PricewaterhouseCoopers LLP*, No. 11 Civ. 5713 (NRB), 2012 WL 3070217, at *5 (S.D.N.Y. July 27, 2012)). If the language of a statute is ambiguous, an interpretation that permitted this sort of "jurisdictional gamesmanship" around the purposes of the statute would generally not be favored. *See Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 218 (2d Cir. 2013) (explaining that the term "class action" in CAFA should be defined broadly to prevent removal attempts from being thwarted). But if the language of a statute is clear, the Court is not at liberty to supplant it with a preferable interpretation. Adhering to the plain language of the statute—particularly in this context—serves the important interest of ensuring a "bright-line" and "more easily administered" rule, even if it fails to shield parties from all possible gamesmanship. *See Gibbons*, 919 F.3d at 706.

The Court therefore denies Defendants motion to dismiss for lack of subject matter jurisdiction. As explained above, Plaintiff has established that subject matter jurisdiction exists pursuant to CAFA. None of the statutory exceptions requiring or permitting the Court to decline jurisdiction are applicable to this case, because, by Defendants' own account, fewer than one-

third are citizens of California, Dkt. No. 66 at 1-2, the state where the action was "originally

filed." 28 U.S.C. § 1332(d).

**B.   Defendants motion to dismiss for failure to state a claim all claims against each Defendant except TransPerfect**

In the alternative, Defendants move to dismiss Plaintiffs claims against all Defendants

except for TransPerfect Translations, Inc., because Plaintiffs have failed to plausibly allege that

they were employers of Plaintiffs and the proposed class.

The NYLL establishes liability for "employers."  *Herman v. RSR Sec. Servs. Ltd.,* 172

F.3d 132, 139 (2d Cir. 1999).   In determining whether a defendant is an employer, the Second

Circuit has instructed courts to look at whether the defendant exercises "formal control" and

"functional control" over the plaintiff.  *See In re Domino's Pizza Inc.*, No. 16CV2492AJNKNF,

2018 WL 4757944, at *4 (S.D.N.Y. Sept. 30, 2018).

To assess "formal control," the Court analyzes factors such as whether "the alleged

employer (1) had the power to hire and fire the employees, (2) supervised and controlled

employee work schedules or conditions of employment, (3) determined the rate and method of

payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8,

12 (2d Cir. 1984).  Even if an alleged employer does not have "formal control" over the plaintiff,

the Court will analyze whether the Defendant has "functional control" by looking at factors such

as "whether the alleged employers' premises and equipment were used for the plaintiffs' work . .

. whether responsibility under the contracts could pass from one subcontractor to another without

material changes . . . the degree to which the alleged employers or their agents supervised [the]

plaintiffs' work; and . . . whether [the] plaintiffs worked exclusively or predominantly for the

alleged employers." *Olvera v. Bareburger Group LLC*, 73 F. Supp. 3d 201, 205-06 (S.D.N.Y.

2014) (alterations and internal quotation marks omitted) (quoting *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 72 (2d Cir. 2003)).

To bring a claim against all Defendants under NYLL, Plaintiffs must plausibly allege that each of them were "joint employers" of Plaintiffs and the proposed class. *See In re Domino's Pizza Inc.*, 2018 WL 4757944, at *4.

Plaintiffs have not made this showing.  Plaintiffs claim that Defendants are "joint employers" because they "hold themselves out to employees" as a joint employer in at least some employee agreements, Dkt. No. 62 at ¶ 18, and all Defendants "share principle offices in New York City." Dkt. No. 72 at 9.  But even assuming these factual allegations to be true, they do not plausibly demonstrate that all TransPerfect corporations exercised "formal control" or "functional control" over Plaintiffs and the proposed class.  Plaintiffs do not allege facts showing that more than one of the TransPerfect corporations had a role in hiring, firing, supervising, paying, or setting work conditions for plaintiffs. *See Carter*, 735 F.2d at 12.  Moreover, while Plaintiffs claim that Defendants shared a primary office in New York City, that fact alone does not establish that all Defendants exercised "functional control" over Plaintiffs.  There are no allegations in the Second Amended Complaint that would give rise to the inference that, for example, the other TransPerfect corporations each provided equipment or workspace for Plaintiffs' and proposed class members, or that Plaintiffs or proposed class members performed work for more than one of them.  *Zheng,* 355 F.3d at 72.

The Court determines that Plaintiffs have failed to plausibly allege that they were jointly employed by all TransPerfect corporations and therefore the claims against the TransPerfect corporations other than TransPerfect Translations International, Inc. are dismissed.  Defendants did not move to dismiss claims against TransPerfect Translations International, Inc., and admit

that it was Plaintiffs' employer.  *See* Dkt. No. 66 at 17; *Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 38 (S.D.N.Y. 2015) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact.") (brackets omitted) (quoting *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir.1994)).  Therefore, those claims survive.

### III.    Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiffs' claims for lack of subject matter jurisdiction is DENIED and Defendants' motion to dismiss all claims against all Defendants except Defendant TransPerfect Translations International, Inc. is GRANTED. Defendants' Motion to Dismiss the First Amended Complaint is administratively denied.  This resolves Dkt. Nos. 37 and 65.

The Court ordered a stay of discovery in this case pending resolution of the instant motion.  Dkt. No. 77. So that discovery may proceed, the parties are ordered to submit a joint letter and Proposed Case Management Plan, in accordance with the instructions set out in the Notice of Initial Pretrial Conference, Dkt. No. 31, by December 18, 2020.


SO ORDERED.


Dated: November 30, 2020
       New York, New York          _____
                                            ALISON J. NATHAN
                                         United States District Judge