# Exhibit B

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE METCALF and HANNAH LAWSON, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>     - v -<br><br>TRANSPERFECT GLOBAL, INC., TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC., TRANSPERFECT DOCUMENT MANAGEMENT, INC., TRANSPERFECT, INC., and TRANSPERFECT REMOTE INTERPRETING, INC.,<br><br>               Defendants. | Case No.  1:19-cv-10104 (AJN) (KHP)<br><br>**DEFENDANT TRANSPERFECT TRANSLATIONS INTERNATIONAL INC.'S OBJECTIONS AND RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR PRODUCTION** |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendant TransPerfect Translations International Inc. ("Defendant" or "TransPerfect"), by and through its attorneys, DLA Piper LLP (US), hereby responds and objects to the Second Set of Requests for Production (the "Requests") of Plaintiffs Michele Metcalf and Hanna Lawson (each a "Plaintiff" and collectively, "Plaintiffs") as follows:

### GENERAL RESPONSES

1.    Defendant's responses and objections are based on information and documents presently known to Defendant and/or its attorneys.  Defendant reserves the right to supplement, amend or modify these responses and objections in the event and to the extent future discovery so justifies.  Should Defendant at any time supplement or amend its response and/or objection(s) to any Request, Defendant reserves the right to assert any available privilege or other protection as

to any response that might otherwise be discoverable in connection with Defendant's supplementation or amendment.

2.       These responses are made without waiver of:  (i) any objections as to competency, relevancy, materiality, privilege and/or admissibility, or any other proper grounds, including with respect to documents produced and the subject matter thereof in any further proceeding in this action; (ii) the right to object to the use of any particular response or documents produced pursuant to such response, or the subject matter thereof, on any ground in any further proceeding in this action; and (iii) the right, at any time, to revise, correct, supplement or clarify any of these responses.

3.       Defendant expressly reserves its right to rely at any time, including in any further proceedings in this action, on documents that are subsequently discovered or were omitted from these responses as a result of mistake, error, oversight or inadvertence.

4.       These responses and any further responses or documents produced herein are made without acknowledgement or concession that documents requested are relevant to the subject matter of this action.

## <u>GENERAL OBJECTIONS</u>

1.       Defendant objects to the Requests, including the Definitions and Instructions contained therein, to the extent they seek to impose upon Defendant requirements that extend beyond the Federal Rules of Civil Procedure or the Local Rules of this Court.

2.       Defendant objects to the Requests on the grounds they are excessive in number and detail required.

3.       Defendant objects to each Request to the extent it seeks documents that are not in Defendant's possession, custody or control.

4.      Defendant objects to each Request to the extent it seeks documents that are protected from disclosure by the attorney-client privilege, the attorney work product doctrine and/or any other recognized privilege against disclosure.

5.      Defendant objects to each Request to the extent it seeks documents that are neither relevant nor reasonably calculated to lead to the discovery of relevant, admissible evidence. Nothing contained in any response herein shall be deemed to be an admission, concession or waiver by Defendant as to the relevance, materiality or admissibility of any information or document, and Defendant reserves all rights with respect thereto.

6.      Defendant objects to each Request to the extent it seeks documents which are unduly burdensome to obtain and/or to the extent that such request is not reasonably calculated to lead to the discovery of admissible evidence, including requests for the production of "all" documents, "any" documents or "each" document when all relevant facts can be obtained from fewer than "all" documents, "any" documents, or "each" document.

7.      Defendant objects to the Requests because they are not proportional to the needs of the case, considering the importance of the issues at stake, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and the burden and expense of the proposed discovery, which outweighs its likely benefit.

8.      Defendant objects to each Request to the extent it is overly broad.

9.      Defendant objects to each Request to the extent it is ambiguous, vague, lacking in specificity, unintelligible or otherwise incomprehensible or incapable of response, and/or contains erroneous assumptions and/or characterizations.

10.     Defendant objects to each Request to the extent it relies upon, incorporates, makes and/or requires Defendant to reach a conclusion of law.

11.     Defendant objects to each Request to the extent it seeks documents which are duplicative of responses to one or more of the other Requests.

12.     Defendant objects to each Request to the extent it seeks disclosure of information of a confidential and/or proprietary nature, or which contains confidential and sensitive personal information relating to Defendant's employees and/or customers.  All documents shall be produced subject to the terms of the applicable Stipulation and Order for Production and Exchange of Confidential Information.

13.     Defendant objects to the Requests to the extent Plaintiffs seek documents or information that is outside the relevant statute of limitations period.

14.     Defendant objects to each Request to the extent that it seeks documents regarding TransPerfect employees who are not members of the putative class, either because they fall outside of the scope of the defined class, or because such persons have entered into arbitration agreements precluding them from being class members.

15.     Pursuant to the Opinion and Order of the Honorable Alison J. Nathan, dated November 30, 2020, Defendant objects to each Request to the extent it seeks documents which do not relate to Defendant's employees.

In addition to the General Objections set forth above, which are incorporated by reference into each specific response below, Defendant also will state specific objections where appropriate. By setting forth such specific objections, Defendant does not intend to limit, restrict or waive any of the General Objections set forth above.  To the extent that Defendant responds to a Request, the General Objections and/or specific objections are not waived by such response.  In addition, the

inadvertent disclosure of privileged information or release of privileged documents shall not constitute a waiver of any applicable privilege.

**SPECIFIC RESPONSES AND OBJECTIONS**

**REQUEST NO. 17:** Documents sufficient to identify the date and time of all emails sent by Putative Class Members from their work email addresses before 9:30 am or after 5:30 pm, local time, on any date during the Class Period, including the identity of the Putative Class Member sending each email.

**RESPONSE:** Defendant objects to Request No. 17 on the grounds that it is overly broad, unduly burdensome and not reasonably limited in scope. Defendant further objects to this Request on the grounds that it seeks documents which are not relevant to the instant proceedings with respect to the Putative Class.

Specifically, the Request seeks the production of all e-mails sent during specified time periods by all members of the Putative Class over the period from December 31, 2018 through the present. There are currently 249 members of the Putative Class (although a significant portion of those persons have executed arbitration agreements and cannot possibly be members of any class in this action). Based on a review of Plaintiff Metcalf and Lawson's e-mail accounts, each account contained approximately 16,500 e-mails per month, and a total of approximately 24,750 documents per month including emails and attachments. Plaintiffs' Request would require the review of the e-mail accounts for all 249 Putative Class members over a period of approximately 29 months (December 31, 2018 through May 2021), amounting to an estimated total of nearly **180 million** emails and attachments. This review would be enormously burdensome and prohibitively expensive. It would require an extraction of the 249 e-mail accounts and uploading same to a server for review, which itself would take many months, given the excessive number of accounts at issue. Beyond that, there is no means by which to filter for e-mails sent before or after a certain

time in a given day; as a result, a manual review of the documents would need to be conducted. In short, this review would be extraordinarily burdensome, costly and time consuming.

Additionally, Defendant objects to this Request on the grounds that the documents sought are not relevant to the instant proceedings with respect to the Putative Class, or appropriate as evidence in a class action.  This is for a number of reasons.  ***First***, the e-mails would not, in and of themselves, demonstrate when Putative Class Members began or ceased working, or establish their working hours; at most they reflect when e-mails were sent, but (i) certain Putative Class members had access to their e-mail remotely and, as Ms. Metcalf herself testified, e-mails could be sent outside of work hours (Metcalf Depo. Tr., 146:4-10), and (ii) as Ms. Lawson testified, the time that an e-mail was sent does not equate to the start or end of a class member's work day, nor could one tell when an employee started or stopped working based on same.  ***Second***, because members of the Putative Class had significantly different duties, their reliance on e-mail would vary between roles and, as a result, the probative value of the e-mails would vary greatly by class member.  Thus, individual testimony would be required to determine when such employees sent e-mail correspondence in the ordinary course.  ***Third***, the sought documents would be of limited value in that even if one assumes that such e-mails could establish the start and stop times of the employees (and they cannot), they would still fail to demonstrate the duration of any lunch breaks taken by Putative Class members, which would not be compensable time (nor could Plaintiffs simply presume to assume some average lunch break).  ***Finally***, this instant action is styled as a class action, requiring, *inter alia*, that Plaintiffs prove their claims by reliance on common evidence. However, the e-mails sought are the antithesis of such common evidence:  rather, this Request seeks individualized evidence with respect to every single working day of every single Putative

6

Class member, and would further require testimony from each and every single class member to verify if they started or stopped working at the time in question on each day at issue.

In sum, the evidence sought is not relevant with respect to Plaintiffs' class action claims, and any nominal purported relevance that could be ascertained from the documents sought through this Request is vastly outweighed by the substantial burden, time and expense that would be associated with such discovery.

**REQUEST NO. 18:**  All "End of Day" or "EOD" emails sent by Putative Class Members on any date during the Class Period.

**RESPONSE:**  Defendant objects to Request No. 18 on the grounds that it is overly broad, unduly burdensome, and not reasonably limited in scope.  Specifically, the Request seeks production of all end-of-day reports sent by members of the Putative Class over the period from December 31, 2018 through the present.  There are currently 249 members of the Putative Class (although a significant portion of those have executed arbitration agreements and cannot possibly be members of any class in this action).  Based on a review of Plaintiff Metcalf and Lawson's e-mail accounts, each account contained approximately 16,500 e-mails per month, and a total of approximately 24,750 documents per month including emails and attachments.  Plaintiffs' Request would require the review of the e-mail accounts for all 249 Putative Class members over a period of approximately 29 months (December 31, 2018 through May 2021), amounting to an estimated total of nearly **180 million** emails and attachments.  This review would be enormously burdensome and prohibitively expensive.  It would require an extraction of the 249 e-mail accounts and uploading same to a server for review, which itself would take many months, given the excessive number of accounts at issue.  Beyond that, while search parameters could limit the number of total e-mails to be searched somewhat – such as by searching the subject line for "end of day" or "EOD" – an initial review of e-mails in select .psts reflects a significant number of false positive hits as,

7

*inter alia*, terms such as "end of day" or "EOD" are often used in communications regarding client deadlines or similar circumstances; as a result, a manual review of the documents would need to be conducted.  Simply put, this review would be extraordinarily burdensome, costly and time consuming.

Additionally, Defendant objects to this Request on the grounds that the documents sought are not relevant to the instant proceedings with respect to the Putative Class, or appropriate as evidence in a class action.  This is for a number of reasons.  ***First***, not all managers required end-of-day reports, but rather only a subset of managers did so; as a result, this would fail to adduce evidence on a classwide basis.  ***Second***, the e-mails would not, in and of themselves, demonstrate working hours in a given day; as demonstrated in Ms. Metcalf's deposition, these e-mails generally do not reflect work start times, nor do they reflect when (or if) employees took non-compensable lunch breaks.  Moreover, as Ms. Lawson testified, these e-mails do not accurately reflect the end of an employee's workday, as she alleged that she was required to work after sending an end-of-day report on numerous instances (allegedly multiple times a week).  As a result, the end-of-day reports would not be capable of demonstrating employee working hours, much less on a classwide basis.  ***Third***, the end-of-day reports are not reliable for determining when employees ceased working; as Ms. Metcalf testified, she occasionally sent them from home (Metcalf Depo. Tr., 146:4-10), and would not send them for any weekend days on which she worked (*id.*, 140:14-18), while – as noted above – Ms. Lawson testified that she frequently continued working after sending such reports.  ***Finally***, this instant action is styled as a class action, requiring, *inter alia*, that Plaintiffs prove their claims by reliance on common evidence.  However, the e-mails sought here are the antithesis of such common evidence:  rather, this Request seeks individualized evidence with respect to every single working day of every single Putative Class member, and would further

require testimony from each and every single class member to verify if they stopped working when the end-of-day report was sent (and even Ms. Lawson could not testify as to whether she did or did not work past her end-of-day report on any given day).

In sum, the evidence sought is not relevant with respect to Plaintiffs' class action claims, and any nominal purported relevance that could be ascertained from the documents sought through this Request is vastly outweighed by the substantial burden, time and expense that would be associated with such discovery.

**REQUEST NO. 19:** All documents reflecting the dates and times any Putative Class Member was logged in to Project A software at any date during the Class Period.

**RESPONSE:** Defendant objects to Request No. 19 on the grounds that it is overly broad, unduly burdensome, and not reasonably limited in scope. Defendant further objects to this Request in that it seeks information that is not relevant to the instant action. ***First***, only a subset of Putative Class members had duties which involved the use of Project A; as a result, this Request would fail to adduce evidence on a classwide basis. ***Second***, when (or if) a Putative Class member logged into Project A would not, in and of itself, demonstrate working hours in a given day; rather, such would reflect solely the time periods during which the subset of employees who used Project A were logged into that software, but given the variance between duties in different groups and departments, individualized inquiries would be required with respect to each group and/or employee to determine whether time spent logged into Project A equated to working time. Indeed, as Ms. Lawson testified, Project A would not be a reliable basis for determining worktime even for persons who used it with regularity, as there would be extensive periods of inactivity or periods in which employees would be working but not logged into Project A. ***Finally***, this instant action is styled as a class action, requiring, *inter alia*, that Plaintiffs prove their claims by reliance on common evidence. However, the Project A data is the antithesis of such common evidence: rather,

9

this Request seeks individualized evidence with respect to every single working day of a subset of

Putative Class members, and would further require testimony from each and every single such

class member to verify if they started or stopped working at the time that they logged into or out

of Project A, or otherwise became inactive in Project A, in a given day.

In sum, the evidence sought is not relevant with respect to Plaintiffs' class action claims,

and any nominal purported relevance that could be ascertained from the documents sought through

this Request is vastly outweighed by the substantial burden, time and expense that would be

associated with such discovery.

**REQUEST NO. 20:**  Documents sufficient to identify the date and time any Putative Class
Member's building access card was used to access any office maintained by TransPerfect in New
York City or a building containing such an office, before 9:30 am or after 5:30 pm, local time, on
any date during the Class Period, including the identity of the Putative Class Member whose card
was so used.

**RESPONSE:**  Defendant objects to Request No. 20 on the grounds that it is overly broad, unduly

burdensome, and not reasonably limited in scope.   Defendant further objects to this Request on

the grounds that it seeks documents that are not relevant to the instant action.  ***First***, the information

sought is incapable of demonstrating the work hours of the Putative Class Members.  Specifically,

such records would not reflect the times that employees left the workplace, as employees were not

required to swipe out upon their exit.  Moreover, as Ms. Metcalf testified, employees often did not

need to swipe in when entering the building (Metcalf Depo. Tr., 259:14-260:19), nor did they

necessarily do so for any lunch breaks, so any such information would be both unreliable and

require individualized verification.  ***Second***, such information would not be a proxy for working

time, as it would not show when employees started working on a given day, but – as Ms. Lawson

testified – only when they arrived at their building; this would not reflect time spent traveling from

the swipe location to their work location, or if they arrived early to get a cup of coffee or to conduct

personal business or other matters, nor would it reflect any time spent working remotely prior to

or following their shifts.  As a result, this information would be inherently unreliable.  **Third,** employees could enter the building multiple times in a given day for any reason, but could be doing so while "on-the-clock," e.g., if an employee was working elsewhere to start the day.  This is not a reliable way to determine working time, and would require extensive individualized inquiries to parse out which entries reflected the start of purported "work" time and which did not. ***Finally***, this instant action is styled as a class action, requiring, *inter alia*, that Plaintiffs prove their claims by reliance on common evidence.  However, the swipe data is the antithesis of such common evidence:  rather, this Request seeks individualized evidence with respect to every single working day of a subset of Putative Class members, and would further require testimony from each and every single such class member to verify when they started or stopped working before or after they swiped into TransPerfect's building in a given day.

Simply put, the evidence sought is not relevant with respect to Plaintiffs' class action claims, and any nominal purported relevance that could be ascertained from the documents sought through this Request is vastly outweighed by the substantial burden, time and expense that would be associated with such discovery.

Dated: New York, New York
       May 27, 2021

**DLA PIPER LLP (US)**

By: /s/ Daniel Turinsky

Daniel Turinsky, Esq.
Garrett D. Kennedy, Esq.
Janeen R. Hall, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501
daniel.turinsky@us.dlapiper.com
garrett.kennedy@us.dlapiper.com
janeen.hall@us.dlapiper.com

*Attorneys for Defendant TransPerfect*
*Translations International Inc.*