# Exhibit D



DLA Piper LLP (US)
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Daniel Turinsky
Daniel.Turinsky@dlapiper.com
T   212.335.4566
F   917.778.8631

June 9, 2021
*VIA EMAIL*

Jeremiah Frei-Pearson, Esq.
Andrew White, Esq.
Finkelstein, Blankinship, Frei-Pearson & Garber LLP
One North Broadway, Suite 900
White Plains, NY 10601

Daniel S. Kirschbaum, Esq.
Derek Smith Law Group
1 Penn Plaza #4905
New Yok, NY 10119

      Re:    *Metcalf and Lawson v. TransPerfect Global, Inc., et al.*, No. 19-10104

Dear Counsel:

      We write in response to your letter dated June 4, 2021 concerning purported deficiencies in TransPerfect's Objections and Responses to Plaintiff's Second Set of Requests for Production (the "Objections").

      First, the Objections are plainly not lacking in specificity as you allege. On the contrary, the Objections provide numerous specific bases for TransPerfect's position that the Requests are overly broad, unduly burdensome and not proportional to the needs of the case.

      Second, as noted in the Objections, the Requests improperly seek voluminous quantities of documents and information concerning the entire putative class, which in our view is improper. Indeed, "the very purpose of a Rule 23 class action is to avoid the need to engage in discovery of the entirety of the potential class." *Gordon v. Kaleida Health*, 2012 WL 432885, at *4 (W.D.N.Y. Feb. 9, 2012).

      Specifically, Request No. 17 seeks documents sufficient to identify the date and time of all emails sent by all putative class members before 9:30 am and after 5:30 pm. As explained in the Objections, there is no means by which to filter for emails sent before or after a certain time. This request would therefore require TransPerfect to extract nearly 180 million emails and attachments from all putative class members, and then manually review those documents for responsiveness, which would be an enormously burdensome and prohibitively expensive process. It is also unreasonable since there is no basis to seek this data for all putative class members before a class has even been certified. Individual discovery regarding each putative class member defeats the entire purpose of a Rule 23 class action. As noted in the Objections, a class action requires Plaintiffs to prove their claims by reliance on common evidence, and the documents sought through this Request are the antithesis of common evidence. Rather, the Request seeks individualized evidence with respect to every putative class member, which



June 9, 2021
Page Two

would further require testimony from each putative class member to ascertain whether they started and stopped working at the time in question on each day at issue.

While we are willing to discuss in good faith any potential compromise you may wish to offer, your proposal to seek a "randomly selected sample of class members" is unworkable given the numerous different departments and managers covered by the putative class.  For example, the fact that a client services associate may have arrived at work before 9:30 am or after 5:30 pm on certain days says nothing about the hours worked by a project manager, quality assurance analyst, account executive, website engineer, helpdesk technician, recruiter or operations manager (among many other different jobs at issue).  Indeed, the hours worked by a particular client services associate has little to no probative value when evaluating the hours worked of a client services associate under a different manager, who is responsible for different clients with different jobs and different expectations.  If anything, this Request further reinforces why a class is not appropriate here and should not be certified.

Request No. 18 seeks production of all "end of day" emails sent by all putative class members on any date throughout the class period.  As with Request No. 17, producing all documents in response to this Request would be enormously burdensome and extraordinarily expensive because it would entail extracting data from all putative class members before any searches could be conducted, which we estimate would require collecting approximately 180 million emails and attachments, and then locating responsive end of day reports for each individual.  We disagree with your suggestion that finding responsive documents would be a simple matter of searching for the terms "EOD" or "end of day" because putative class members routinely used those phrases when communicating regarding the completion of client projects.  Moreover, not all departments or managers utilized end of day reports, nor did they utilize them in a consistent manner, so this evidence would have limited utility on a class-wide basis, and it would preclude the use of sampling as a viable strategy due to the different practices of different managers.  Lastly, it is unclear how this information is even probative of working hours, as both Plaintiffs have testified that the EODs would not be a viable means to calculate work hours, and further were not even accurate.

Request No. 19 seeks all documents reflecting the dates and times any putative class member was logged in to Project A software at any date during the class period.  As with the prior requests, it is overly broad and unduly burdensome because it seeks substantial individualized evidence regarding every putative class member, which should not be necessary for a class action lawsuit.  Additionally, as noted in the Objections, any such data will not reliably or accurately reflect the hours worked in a given day, and the wide variation in jobs among class members means that this data would have little to no relevance with respect to the class action claims.

Request No. 20 seeks documents sufficient to identify the date and time any putative class member's building access card was used to access any office maintained by TransPerfect in New York



June 9, 2021
Page Three

City or a building containing such an office, before 9:30 am or after 5:30 pm during the class period. While we continue to believe that this Request is overly broad and unduly burdensome when applied to the entire putative class, as a compromise we are willing to produce any responsive data in our possession for the period between December 31, 2018 and September 30, 2019, which should encompass the entire period in which any putative class member was allegedly improperly classified as exempt from overtime.  Please note, however, that the building access card system did not reliably or consistently record the data you have requested, and we understand that there is only a limited amount of data available responsive to this Request.

      We look forward to discussing these matters in more detail on Thursday.

Very truly yours,

DocuSigned by:

*Daniel Turinsky*

7C9F60869D0C4C1...

Daniel Turinsky