UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELE METCALF and HANNAH LAWSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>- v -<br><br>TRANSPERFECT GLOBAL, INC., TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC., TRANSPERFECT DOCUMENT MANAGEMENT, INC., TRANSPERFECT, INC., and TRANSPERFECT REMOTE INTERPRETING, INC.,<br><br>Defendants. | Case No.  1:19-cv-10104 (AJN) (KHP) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

 

**DLA PIPER LLP (US)**
Daniel Turinsky, Esq.
(daniel.turinsky@dlapiper.com)
Garrett David Kennedy, Esq.
(garrett.kennedy@dlapiper.com)
Janeen Hall, Esq.
(janeen.hall@dlapiper.com)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Tel.: (212) 335-4500
*Attorneys for Defendant*

# **TABLE OF CONTENTS**

                                                                                                                                                                         **Page**

PRELIMINARY STATEMENT ...................................................................................................1

FACTUAL BACKGROUND........................................................................................................1

PROCEDURAL HISTORY...........................................................................................................4

ARGUMENT.................................................................................................................................6

I.        Subject-Matter Jurisdiction under CAFA Is Improper ........................................................6

           A.       Subject Matter Jurisdiction May Be Challenged at Any Time ................................6

           B.       Legal Standards for CAFA Jurisdiction..................................................................7

           C.       Plaintiffs Cannot Recover Any Statutory Penalties for Purported Violations of NYLL § 195(1) ........................................................................................................9

           D.       The Court Lacks Subject Matter Jurisdiction Because the Amount in Controversy Does Not Exceed $5 Million.....................................................................................11

CONCLUSION............................................................................................................................13

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acevado v. Citibank, N.A.*,
 2017 WL 11514789 (S.D.N.Y. Mar. 19, 2017) ........................................................................8

*Acevado v. Citibank, N.A.*,
 2019 WL 1437575 (S.D.N.Y. Mar. 31, 2019) ................................................................8, 9, 12

*Arbaugh v. Y&H Corp.*,
 546 U.S. 500 (2006)..................................................................................................................6

*Barry v. Curtin*,
 993 F. Supp. 2d 347 (E.D.N.Y. 2014) ......................................................................................7

*Blockbuster, Inc. v. Galeno*,
 472 F.3d 53 (2d Cir. 2006)........................................................................................................7

*Bolanos v. Hooten*,
 2021 WL 516580 (S.D.N.Y. Feb. 11, 2021)...........................................................................12

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*,
 790 F.3d 411 (2d Cir. 2015)......................................................................................................7

*Green v. Humana At Home, Inc.*,
 380 F. Supp. 3d 400 (S.D.N.Y. 2019) (Nathan, J.)................................................................11

*Greystone Bank v. Tavarez*,
 2010 WL 3325203 (E.D.N.Y. Aug. 19, 2010)..........................................................................7

*Guan Ming Lin v. Benihana N.Y. Corp.*,
 2012 WL 7620734 (S.D.N.Y. Oct. 23, 2012), *report and recommendation
 adopted*, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013)............................................................10

*In re DDAVP Direct Purchaser Antitrust Litig.*,
 2007 WL 9752977 (S.D.N.Y. Mar. 13, 2007) ........................................................................12

*Judon v. Travelers Prop. Cas. Co. of Am.*,
 773 F.3d 495 (3d Cir. 2014)....................................................................................................11

*Petkevicius v. NBTY, Inc.*,
 2017 WL 1113295 (S.D. Cal. Mar. 24, 2017) ..........................................................................8

*Ryan v. Legends Hosp., LLC*,
   2012 WL 3834088 (S.D.N.Y. Aug. 1, 2012)......................................................................12

*Sierra v. Progressive Direct Ins. Co.*,
   2012 WL 4572923 (D. Mass. Sept. 28, 2012) ....................................................................11

*Smith v. Manhattan Club Timeshare Ass'n, Inc.*,
   944 F. Supp. 2d 244 (S.D.N.Y. 2013)..................................................................................7

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
   752 F.3d 239 (2d Cir. 2014).................................................................................................1

*Tongkook Am., Inc. v. Shipton Sportswear Co.*,
   14 F.3d 781 (2d Cir. 1994)...................................................................................................6

*Valente v. Garrison From Harrison LLC*,
   2016 WL 126375 (E.D.N.Y. Jan. 11, 2016) ........................................................................8

*Weir v. Cenlar FSB*,
   2018 WL 3443173 (S.D.N.Y. July 17, 2018) ......................................................................9

*Wood v. Maguire Auto LLC*,
   2011 WL 4478485 (N.D.N.Y. Sept. 26, 2011), *aff'd*, 508 Fed. App'x 65 (2d
   Cir. 2013) .........................................................................................................................8, 9

**Statutes & Other Authorities**

28 U.S.C. § 1332................................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(1).................................................................................................... 1, 7, 13

Fed. R. Civ. P. 12(h)(3)................................................................................................1, 6, 7, 13

NYLL § 195........................................................................................................................ *passim*

Defendant TransPerfect Translations International Inc. ("TransPerfect" or "Defendant") respectfully submits this memorandum of law in support of its motion to dismiss the Second Amended Class Action Complaint (the "SAC") of Plaintiffs Michele Metcalf ("Metcalf") and Hannah Lawson ("Lawson") (collectively, "Plaintiffs"), for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs, former TransPerfect employees, contend that TransPerfect misclassified them and a putative class of other workers as exempt from the overtime provisions of the New York Labor Law ("NYLL") because, purportedly, they were paid less than the minimum salary of $1,125 per week required for such exemption. Plaintiffs also seek penalties for allegedly inaccurate wage notices and wage statements in violation of NYLL § 195.

The SAC asserts that the sole basis for this Court's subject matter jurisdiction over this action is the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). To establish such jurisdiction, however, the amount in controversy must exceed $5 million. As explained in more detail herein, there is no factual basis to support the contention that the amount in controversy exceeds the minimum $5 million threshold required by CAFA. Accordingly, the SAC should be dismissed in its entirety for lack of subject matter jurisdiction.

## FACTUAL BACKGROUND[1]

Metcalf began working for TransPerfect as a Client Services Associate in its District of Columbia office in November 2016, and she was promoted to the position of Client Services

---

[1] The allegations in the SAC are taken as true solely for purposes of this motion to dismiss. *See Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, "where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits," in which case "the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (citations and internal quotation marks omitted).

1

Executive in August 2017.  Dkt. No. 62, ¶ 5.  Metcalf transferred to the New York City office of TransPerfect as a Client Services Associate in January 2018, earning an annual salary of $51,000, until she was promoted to the position of Senior Client Services Executive in November 2018, in which position she earned an annual salary of $56,000, which was $1,076.92 per week.  Dkt. No. 62, ¶ 5.  In June 2019, Metcalf transferred to TransPerfect's Newport Beach, California office, where she worked until approximately September 2019.  *Id.*, n.1.

Lawson worked for TransPerfect in its New York office from June 18, 2018 until October 9, 2019.  *See* Dkt. No. 62, ¶ 7.  She began as a Project Coordinator, earning $43,000 per year until December 2018, when she was promoted to Project Manager.  As a Project Manager, TransPerfect paid Lawson $980.77 per week.  *See* Dkt. No. 62, ¶ 7.  Lawson worked part-time from April 7, 2019 through October 9, 2019, averaging 32 to 35 hours each week.  *Id.*, ¶ 7, n.2.

In the SAC, Plaintiffs assert that jurisdiction exists under CAFA because, purportedly, (1) minimal diversity exists; (2) there are more than 100 putative class members; and (3) the amount in controversy exceeds $5,000,000.  Dkt. No. 62, ¶ 15.  The SAC defines a putative class member as "all of Defendants' salaried employees being compensated at less than $1,125.00 per week . . . who worked in Defendants' New York, New York offices from December 31, 2018 to the present . . . who worked more than 40 hours in a workweek."  *See id.*, ¶ 1.  The SAC asserts that the putative class members earned approximately $980.77 to $1076.92 per week throughout the class period, which corresponds exactly to the amounts allegedly earned by Metcalf and Lawson.  *See id.*, ¶¶ 5, 7, 21.  The SAC also alleges that the putative class members worked the same number of hours as Plaintiffs.  *See id.*, ¶ 21.

The putative class consists of a total of 235 current and former TransPerfect employees.  Declaration of Carol Chuang dated February 22, 2022 ("Chaung Decl."), ¶ 4.  By September 21,

2

2019, a majority of the putative class, including Metcalf and Lawson and the individuals who reported to the same department head as Plaintiffs, received retroactive salary payments going back to December 31, 2018 to compensate them for the difference between their existing salaries and $58,500 (the then-effective salary threshold for exemption under the NYLL). *Id.*, ¶ 5. When those individuals received retroactive payments, they were reclassified as non-exempt or received salary increases above the minimum threshold for exemption, unless they had already transferred to other offices outside of New York (like Metcalf), transitioned to part-time status (like Lawson), or separated from the Company. *Id.*, ¶ 5. Metcalf received a retroactive salary payment in the amount of $1,153.80 on September 19, 2019, and Lawson received a retroactive salary payment in the amount of $2,019.22 on September 19, 2019. Chuang Decl., Exs. A and B.

In her sworn interrogatory answers, Metcalf stated that her total damages, including unpaid overtime wages, liquidated damages and statutory damages for wage statement violations, equaled $6,153. Declaration of Daniel Turinsky dated February 25, 2022 ("Turinsky Decl."), Ex. A. Specifically, Metcalf's total alleged damages include $1,153.80 for unpaid overtime, $1,153.80 for liquidated damages, and $5,000 in statutory penalties for failure to provide accurate wage statements, minus an offset of $1,153.80 reflecting the retroactive payment she received in September 2019. *Id.* At her deposition, Metcalf confirmed that her interrogatory answers reflected the damages she was seeking in this lawsuit. (Metcalf Dep. at 223-224).[2]

Lawson similarly stated in her interrogatory answers that her total damages were $7,019.22, broken down as follows: (a) $2,019.22 for unpaid overtime, (b) $2,019.22 for liquidated damages, and (c) $5,000 in statutory penalties for failure to provide accurate wage statements,

---

[2] Excerpts from the depositions of Metcalf and Lawson are attached to the accompanying Declaration of Daniel Turinsky as Exhibits C and D, respectively.

3

minus an offset of $2,019.22 reflecting the retroactive payment she received in September 2019. Turinsky Decl. Ex. B.  She also testified that her interrogatory answers reflected the damages she was seeking in this case.  (Lawson Dep. at 314-319).

Notably, both Metcalf and Lawson have conceded that they are not entitled to any damages for alleged wage notice violations pursuant to NYLL § 195(1) and do not purport to seek any such damages in this litigation.  Turinsky Decl. Exs. A, B.

If, as alleged in the SAC (*See* Dkt. No. 62, ¶¶ 8 n.3, 21), all 235 putative class members had a level of damages comparable to what is asserted by Plaintiffs, the total amount in controversy (excluding attorneys' fees) would be between $1,445,955 and $1,649,517.

## PROCEDURAL HISTORY

On August 28, 2019, Metcalf initiated this action by filing a Complaint against TransPerfect Global, Inc. ("TransPerfect Global") in the United States District Court for the Central District of California.  *See* Dkt. No. 1.  The Complaint defined "Class Members" as "all of Defendant's Client Services Associates and Senior Client Services Executives who worked in Defendant's New York, New York offices from December 31, 2018 to the present."  Dkt. No. 1, ¶¶ 1, 12.  No individuals fitting within the class definition were employed by TransPerfect Global. Chuang Decl. ¶ 2.  Accordingly, the putative class did not include any employees at that time.

On or about October 28, 2019, pursuant to a joint stipulation submitted by the parties, the federal court in California transferred the case to this District.  Dkt. Nos. 24, 25.  On November 15, 2019, Defendant filed a motion to dismiss the Complaint on the grounds that there was no subject matter jurisdiction because Plaintiff had not sufficiently alleged the amount in controversy exceeded $75,000.  Dkt. No. 38.

On December 6, 2019, in response to Defendant's motion to dismiss, Metcalf amended her complaint to add Lawson as an additional plaintiff, and to substantially broaden the definition of "Class Members" to include "all of Defendants' salaried employees being compensated at less than $1,125.00 per week -- including Client Services Associates, Client Services Executives, Senior Client Services Executives, Project Coordinators, Project Managers, and Senior Project Managers -- who worked in Defendants' New York, New York offices from December 31, 2018 to the present" who worked more than 40 hours in a workweek.  *See* Dkt. No. 45, ¶ 1.[3]  On December 12, 2019, the Court ordered Plaintiffs to show cause why the Amended Complaint should not be dismissed for lack of subject matter jurisdiction because the Amended Complaint did not assert a federal claim and failed to allege complete diversity of citizenship.  *See* Dkt. No. 55.  On December 19, 2019, Plaintiffs sought leave to file the SAC that alleged, for the first time, subject matter jurisdiction pursuant to CAFA.  *See* Dkt. No. 59.  By Order dated January 10, 2020, the Court permitted Plaintiffs to file the SAC, subject to Defendant's right to contest "subject matter jurisdiction at a later stage in the case, including at the motion to dismiss phase."  *See* Dkt. No. 61, p. 2.

Plaintiffs filed the SAC on January 13, 2020, alleging CAFA jurisdiction.  *See* Dkt. No. 62.  On January 27, 2020, Defendant filed a motion to dismiss the SAC, arguing, among other things, that subject matter jurisdiction was lacking pursuant to the "local controversy" and "home state" exceptions to CAFA jurisdiction.  *See* Dkt. No. 66.  On November 30, 2020, the Court denied, in part, Defendant's motion to dismiss, finding "that none of the statutory exceptions that either mandate or permit district courts to decline to exercise jurisdiction apply."  Dkt. No. 83.

---

[3] Plaintiffs also added TransPerfect, TransPerfect Document Management, Inc., TransPerfect, Inc., and TransPerfect Remote Interpreting, Inc. as defendants in the Amended Complaint.  Dkt. No. 45.  All defendants except TransPerfect were subsequently dismissed from the case.  *See* Dkt. No. 83.

Defendant filed its Answer and Affirmative Defenses to the SAC on December 14, 2020. Dkt. No. 84. Defendant asserted, among other things, lack of subject matter jurisdiction over the SAC as an affirmative defense in its Answer. *See* Dkt. No. 84, p. 13.

## ARGUMENT

### I. Subject-Matter Jurisdiction under CAFA Is Improper

Plaintiffs contend that subject matter jurisdiction exists here pursuant to CAFA. Plaintiffs are wrong and, respectfully, the Court should enter an order dismissing this action in its entirety.

#### A. Subject Matter Jurisdiction May Be Challenged at Any Time

Pursuant to Fed. R. Civ. P. 12(h)(3), a "court must dismiss the action" if it "determines at any time that it lacks subject-matter jurisdiction." An "objection that a federal court lacks subject-matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006).

In *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781 (2d Cir. 1994), for example, it was discovered during the course of discovery that the amount owed to the plaintiff was below the minimum statutory jurisdictional amount. In vacating the judgment of the district court and remanding with instructions to dismiss the complaint for lack of subject matter jurisdiction, the Second Circuit explained that the suit "should have been dismissed for lack of subject-matter jurisdiction" when the amount in controversy "was discovered later through pre-trial discovery" even though the defendant "did not raise the defense of lack of subject-matter jurisdiction in its answer" since "subject-matter jurisdiction cannot be waived and the issue can be raised at any time in the course of litigation." *Tongkook*, 14 F.3d at 786.

In this case, although Defendant has previously filed a motion to dismiss and answered the SAC (at which time it raised lack of subject matter jurisdiction as an affirmative defense), there is no question that this motion to dismiss for lack of subject matter jurisdiction is timely and appropriately before the Court.

### B.  Legal Standards for CAFA Jurisdiction

The standards governing a Rule 12(h)(3) motion are the same as that governing a motion under Fed. R. Civ. P. 12(b)(1). *See Greystone Bank v. Tavarez*, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010) (noting that "the distinction between a Rule 12(b)(1) motion and a Rule 12(h)(3) motion is largely academic, and the same standards are applicable to both types of motions"). A district court properly dismisses an action for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure when it lacks the statutory or constitutional power to adjudicate it. *See Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015). A plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence. *Barry v. Curtin*, 993 F. Supp. 2d 347, 351 (E.D.N.Y. 2014) (citing *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). The traditional rule allocating the burden of proof to the party asserting federal court jurisdiction, namely the Plaintiffs here, applies equally to the assertion of federal jurisdiction under CAFA. *See Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 59 (2d Cir. 2006) ("Under CAFA, as under the traditional rule, the party asserting subject matter jurisdiction has the burden of proving it").

CAFA confers original federal jurisdiction over class actions where: (1) the proposed class contains at least 100 members; (2) minimal diversity exists between the parties (i.e., where "any member of a class of plaintiffs is a citizen of a State different from any defendant"); and (3) the aggregate amount in controversy exceeds $5,000,000. *Smith v. Manhattan Club Timeshare Ass'n*,

*Inc.*, 944 F. Supp. 2d 244, 249 (S.D.N.Y. 2013) (citing *Purdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013); 28 U.S.C. § 1332(d)(2)-(6)). With respect to the amount in controversy, "Plaintiffs 'must show that it appears to a "reasonable probability" that the aggregate claims of the plaintiff class are in excess of $5 million.'" *Acevado v. Citibank, N.A.*, 2017 WL 11514789, at *4 (S.D.N.Y. Mar. 19, 2017) (citing *Blockbuster*, 472 F.3d at 58)).

"On a motion to dismiss challenging the sufficiency of the amount in controversy, the sum claimed by the plaintiff ordinarily controls, so long as it is claimed in good faith." *Acevado v. Citibank, N.A.*, 2019 WL 1437575, at *6 (S.D.N.Y. Mar. 31, 2019) (citations omitted). This presumption of good faith, however, is "available only if the face of the complaint alleges facts plausibly suggesting the existence of claims aggregating over the jurisdictional minimum amount in controversy." *Wood v. Maguire Auto LLC*, 2011 WL 4478485, at *2 (N.D.N.Y. Sept. 26, 2011) (explaining that "in the event the complaint does not allege, on its face, facts plausibly suggesting that the amount in controversy exceeds the jurisdictional minimum, the court need not presume that the general allegation that the amount in controversy exceeds the jurisdictional minimum constitutes a good faith representation of the actual amount in controversy"), *aff'd*, 508 Fed. App'x 65 (2d Cir. 2013); *see also Petkevicius v. NBTY, Inc.*, 2017 WL 1113295, at *4 (S.D. Cal. Mar. 24, 2017) ("[S]imply stating that the amount in controversy exceeds $5,000,000, without any specific factual allegations as to the actual amount sought by the plaintiffs does not constitute a good faith allegation of the amount in controversy . . . ."); *Valente v. Garrison From Harrison LLC*, 2016 WL 126375, at *2 (E.D.N.Y. Jan. 11, 2016) (holding that "boilerplate pleadings do not suffice to establish that this action involves an amount in controversy adequate to support federal diversity jurisdiction"). "Moreover, in the event the complaint alleges on its face facts plausibly suggesting that the amount in controversy exceeds the jurisdictional minimum, a party challenging

8

jurisdiction may rebut this face-of-the-complaint presumption by showing 'to a legal certainty' that the amount in controversy does not meet the jurisdictional minimum." *Wood*, 2011 WL 4478485, at *2.

When "jurisdictional facts are challenged, the party asserting jurisdiction must support those facts with competent proof and justify its allegations by a preponderance of the evidence." *Acevado*, 2019 WL 1437575, at *6; *see also Weir v. Cenlar FSB*, 2018 WL 3443173, at *12 (S.D.N.Y. July 17, 2018) (holding that in evaluating the amount in controversy, "the jurisdictional amount, like any other factual allegation, ought not to receive the presumption of truth unless it is supported by facts rendering it plausible"). In resolving disputed jurisdictional facts, "a court may reference evidence outside the pleadings" and "decide the matter on the basis of affidavits or other evidence, but argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Acevado*, 2019 WL 1437575, at 6 (internal quotation marks omitted).

### C. Plaintiffs Cannot Recover Any Statutory Penalties for Purported Violations of NYLL § 195(1)

The SAC alleges that "[d]uring the Class Period [defined as December 31, 2018 to the present] Defendants willfully violated NYLL § 195(1) by failing to provide Plaintiffs and the Class Members a notice at the time of hire that states their regular hourly wage rate and their overtime rate of pay." Dkt. No. 62, ¶¶ 1, 41. As a threshold matter, Metcalf cannot recover any damages for an alleged violation of NYLL § 195(1) because she was hired to work in Washington, D.C., where the NYLL plainly does not apply. Moreover, Plaintiffs cannot recover any damages for such purported wage notice violations because there is no dispute that they were properly classified as exempt from overtime when they were hired as salaried employees before the class period began on December 31, 2018, and therefore received proper wage notices at the time of hiring in accordance with NYLL § 195(1).

NYLL § 195(1) only requires employers to provide a wage notice to non-exempt employees stating the regular rate of pay and overtime rate of pay "***at the time of hiring***." (Emphasis added). Thus, "only employees who did not receive a proper wage and hour notice at the time of hiring can sue for a penalty" for violation of NYLL § 195(1). *Guan Ming Lin v. Benihana N.Y. Corp.*, 2012 WL 7620734, at *8 (S.D.N.Y. Oct. 23, 2012), *report and recommendation adopted*, 2013 WL 829098 (S.D.N.Y. Feb. 27, 2013).

In this case, Plaintiffs allege that Defendant misclassified them and the putative class as exempt from overtime beginning on December 31, 2018, when the minimum salary to qualify for such exemption increased to $1,125 per week. It is undisputed that Metcalf was hired in November 2016 (in Washington, D.C., where the NYLL does not apply) and Lawson was hired in June 2018, and that they were both hired as salaried employees. There is no allegation that any employees were improperly classified as exempt before December 31, 2018, nor can there be as the claims at issue are expressly premised on changes to the NYLL that went into effect on that date. *See* Dkt. No. 62, ¶¶ 5, 7.

Because NYLL § 195(1) only requires wage notices to be provided "at the time of hiring," and Metcalf was hired to work for TransPerfect outside of New York, she cannot possibly recover any damages based on a purported violation of that section of the New York Labor Law. *See O'Neill v. Mermaid Touring Inc.*, 968 F. Supp. 2d 572, 578-79 (S.D.N.Y. 2013) (holding that a plaintiff cannot recover under the New York Labor Law for work performed outside of New York). Moreover, since both Plaintiffs were hired before December 31, 2018, at a time when they were indisputably classified properly, they have no entitlement to any relief for a purported violation of

10

NYLL § 195(1). Accordingly, no statutory penalties under NYLL § 195(1) may be counted for purposes of calculating the amount in controversy under CAFA.[4]

### D. The Court Lacks Subject Matter Jurisdiction Because the Amount in Controversy Does Not Exceed $5 Million

In this case, there is no factual basis to support the contention that the amount in controversy exceeds $5 million. Indeed, the SAC merely contains a boilerplate, entirely conclusory allegation that the amount in controversy is in excess of $5 million in the aggregate, exclusive of interest and costs. *See* Dkt. No. 62, ¶ 15. As a matter of law, that is not sufficient to constitute a good faith representation of the amount in controversy.

Even if, however, the Court were inclined to credit the boilerplate allegation in the SAC as sufficient, the damages alleged by the Plaintiffs demonstrate that the required monetary threshold cannot be met.

In determining the amount in controversy under CAFA, it is "not unreasonable to assume that . . . the proposed class representative[] has damages that are typical of the class" because "[i]n a class action, the class representative's claim(s) must be typical of the claims of the class." *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 507 (3d Cir. 2014); *see also Sierra v. Progressive Direct Ins. Co.*, 2012 WL 4572923, at *2 (D. Mass. Sept. 28, 2012) ("Because a named plaintiff purports to represent the putative class, his claimed damages normally provide an appropriate basis on which to calculate the damages of a typical class member").

---

[4] Solely for purposes of this motion, Defendant assumes that Plaintiffs and the putative class are eligible to recover the maximum statutory penalty for Defendant's purported failure to furnish proper wage statements in violation of NYLL § 195(3). However, there is no dispute that the wage statements furnished to Plaintiffs contained all required information and properly reflected their compensation at the time the statements were issued. The only claim is that the statements purportedly reflected improper wages due to the alleged misclassification. We are unaware of any authority requiring derivative liability under NYLL § 195(3) for misclassification violations. *See Green v. Humana At Home, Inc.*, 380 F. Supp. 3d 400, 416 (S.D.N.Y. 2019) (Nathan, J.) (declining to resolve "the parties' disagreements regarding so-called derivative liability because a reasonable jury could conclude [the defendant] harbored a good-faith belief that it was not obligated to make the WTPA disclosures applicable to non-exempt employees").

Here, Metcalf stated in her sworn interrogatory answers that her total damages, including unpaid overtime wages, liquidated damages and statutory damages for wage statement violations, equaled $6,153.  Lawson similarly stated in her interrogatory answers that her total damages were $7,019.22.  They both also conceded in their interrogatory answers that they were not seeking any damages for alleged wage notice violations.  If all 235 putative class members had a level of damages comparable to Plaintiffs, as alleged in the SAC, the total amount in controversy (excluding attorneys' fees) would be between $1,445,955 and $1,649,517.  If an additional 25% of that total was added for attorneys' fees, the total amount in controversy would be, at the high end, $2,061,896, which is not even remotely close to the $5 million threshold.  *See Ryan v. Legends Hosp., LLC*, 2012 WL 3834088, at *1 (S.D.N.Y. Aug. 1, 2012) (granting motion to dismiss New York Labor Law class action for lack of subject matter jurisdiction because the amount in controversy "falls short of the CAFA threshold"); *Acevado*, 2019 WL 1437575, at *13 (granting motion to dismiss putative class action following jurisdictional discovery because "Plaintiffs cannot satisfy the amount in controversy requirement" under CAFA); *In re DDAVP Direct Purchaser Antitrust Litig.*, 2007 WL 9752977, at *3 (S.D.N.Y. Mar. 13, 2007) ("Based on the allegations of the Complaint, the Court would not be inclined to make the inference that 'millions' is reasonably probable to mean more than five million, so as to satisfy the statute").[5]

---

[5] With respect to attorneys' fees, "courts in this Circuit apply the 'presumptively reasonable fee' test, which looks to the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate and modified by factors such as the complexity of the litigation and results obtained, when awarding fees under the . . . New York Labor Law." *Ryan*, 2012 WL 3834088, at *3 n.3.  There is no serious question that estimated attorneys' fees equal to 25% of the total recovery likely exceeds any amount that Plaintiffs could plausibly recover in this litigation.  *See Bolanos v. Hooten*, 2021 WL 516580, at *1 (S.D.N.Y. Feb. 11, 2021) (holding that "a statutory entitlement to [attorneys'] fees is not necessarily a statutory entitlement to federal jurisdiction" and that "an unreasonable award of attorney's fees cannot serve as the basis for federal jurisdiction").

In sum, it is abundantly clear that under no circumstances does the amount in controversy exceed $5 million. Accordingly, subject matter jurisdiction is lacking, and this action should be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss Plaintiffs' Second Amended Class Action Complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and 12(h)(3) and award such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 25, 2022

**DLA PIPER LLP (US)**

By: /s/ Daniel Turinsky

Daniel Turinsky, Esq.
Garrett D. Kennedy, Esq.
Janeen Hall, Esq.
1251 Avenue of the Americas
New York, New York 10020
Tel.:   (212) 335-4500
daniel.turinsky@dlapiper.com
garrett.kennedy@dlapiper.com
janeen.hall@dlapiper.com

*Attorneys for Defendant*