USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _7/11/2022_

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------X
MICHELE METCALF and HANNAH
LAWSON, individually and on behalf of all
others similarly situated,

                                        Plaintiffs,

                        -against-

TRANSPERFECT TRANSLATIONS
INTERNATIONAL, INC.,

                                        Defendant.
-----------------------------------------------------------------X

**19-CV-10104 (ER) (KHP)**

<u>**REPORT AND RECOMMENDATION**</u>
<u>**ON MOTION TO DISMISS**</u>

**TO:     HONORABLE EDGARDO RAMOS, UNITED STATES DISTRICT JUDGE**
**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

          Plaintiffs bring this putative class action against TransPerfect Translations International

Inc., alleging violations of the New York Labor Law ("NYLL").  Although Plaintiffs only bring state

law claims, they argue federal jurisdiction exists over this action pursuant to the Class Action

Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005) (codified in relevant part at

28 U.S.C. § 1332(d)).  Before me for a report and recommendation is Defendant's Motion to

Dismiss the Second Amended Complaint ("SAC") for lack of subject matter jurisdiction pursuant

to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3).  Defendant argues that the amount in

controversy does not reach CAFA's $5 million jurisdictional threshold.  (ECF No. 131.)  For the

reasons stated below, I recommend denying the motion.

          Separately, for the reasons stated below, Plaintiffs have failed to adequately plead

standing to bring claims for Defendant's failure to provide wage statements pursuant to NYLL

§ 195(3).  Thus, I recommend dismissing this claim without prejudice.

## BACKGROUND

### 1. Plaintiffs' Claims

Plaintiffs Michele Metcalf and Hannah Lawson are former employees of Defendant, a corporation with its principal place of business in New York.  (SAC ¶¶ 5, 7, 9.)  Both worked in Defendant's New York City office for several months in 2019.  (*Id.* ¶¶ 5, 7.)  During the time Plaintiffs worked in Defendant's New York City office, each earned less than $1,125.00 per week and regularly worked more than forty hours a week.  (*Id.*)

NYLL provides that, unless an exemption applies, New York employers must pay certain employees 1.5 times their regular rate of pay for any hours worked "overtime," which is any time over forty hours per week.  N.Y. Comp. Codes R. & Regs. tit. 12 ("12 NYCCRR") § 142-2.2. Employers are not required to pay overtime to employees working in an "executive, administrative, or professional capacity" if their weekly pay meets or exceeds a certain threshold.  *Id.* § 142-2.14(4).  The threshold differs by the employer's size and location.  *Id.*  For New York City employers that employ 11 or more employees, the threshold as of December 31, 2018 was $1,125.00.  *Id.*  Since December 31, 2018, employees earning less than this minimum threshold must be paid for overtime even if they worked in an "executive, administrative, or professional capacity."  *Id.*

Plaintiffs bring claims on behalf of themselves and all of Defendant's salaried employees being compensated at less than $1,125.00 per week who worked in Defendant's New York City offices from December 31, 2018 to the present and who worked overtime.  (SAC ¶ 30.) Plaintiffs allege that beginning on December 31, 2018 until the present, class members worked up to approximately 15 hours of overtime a week but were not paid for overtime in violation of

NYLL.  (SAC ¶ 2.)  Defendant acknowledges there are at least 235 putative class members.  (ECF No. 132 at 2.)

### 2.  Pertinent Procedural History

Metcalf commenced this action on August 18, 2019 by filing a Complaint in the District Court for the Central District of California.  (ECF No. 1.)  By September 21, 2019, a majority of the putative class, including Metcalf and Lawson, received retroactive salary payments in an attempt to compensate them for the difference between their then-existing salaries and the salary threshold for exemption from overtime pay under NYLL for employees working in an executive, administrative, or professional capacity.  (ECF 132 at 2-3.)  Plaintiff alleges all retroactive payments occurred after this action was filed.  (ECF No. 141 at 12.)

On October 28, 2019, the California district court transferred the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  (ECF No. 24.)  Metcalf amended the Complaint on December 9, 2019, adding Lawson as a plaintiff and adding several TransPerfect corporations as Defendants.  (ECF No. 45.)  On January 13, 2020, Plaintiffs filed the SAC asserting jurisdiction based on CAFA.  (ECF No. 59.)  The SAC alleges that the amount in controversy exceeds the sum of $5 million.  (*Id.* at ¶ 15.)

On January 27, 2020, Defendants moved to dismiss the SAC for lack of subject matter jurisdiction and failure to state a claim.  (ECF No. 65.)  Defendants did not contest that the amount in controversy was met, and instead argued that certain exceptions to the exercise of CAFA jurisdiction applied.  The Honorable Alison J. Nathan denied the motion, finding that the "requirements for establishing CAFA jurisdiction" were met and no exceptions applied.  *Metcalf v. TransPerfect Glob., Inc.*, 2020 WL 7028644, *3 (S.D.N.Y. Nov. 30, 2020) (citations omitted).

Judge Nathan dismissed the claims against all defendants except TransPerfect Translations International Inc. for failure to state a claim because Plaintiffs did not plausibly allege that the other defendants were "joint employers" of Plaintiffs and the proposed class. *Id.*

The parties then engaged in discovery, which remains ongoing. (*See* ECF No. 141 at 6.) Defendant did not maintain or produce records that allow the parties to definitively determine the size of the class or the number of overtime hours worked by putative class members. (ECF 141 at 7.)

On February 25, 2022, Defendant filed a second motion to dismiss the SAC, this time arguing that there is no factual basis to support the contention that the amount in controversy exceeds the minimum $5 million threshold required by CAFA. (ECF No. 132 at 1.) On June 29, 2022, the Court held an oral argument on Defendant's motion to dismiss. (ECF No. 168.)

## LEGAL STANDARDS

The same standards govern a motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) and 12(h)(3). *Greystone Bank v. Tavarez*, 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010). A case is properly dismissed for lack of subject matter jurisdiction "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Jurisdiction must be shown affirmatively and the court may "refer to evidence outside the pleadings." *Id.* (citations omitted). The Court must draw all inferences in favor of the party asserting jurisdiction. *Id*.

CAFA confers federal jurisdiction over class actions where: (1) the proposed class contains at least 100 members; (2) there is minimal diversity; and (3) the aggregate amount in controversy exceeds $5 million. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006).

When the Complaint is filed in federal court in the first instance, the plaintiff has the burden of proving "to a reasonable probability" that "the aggregate claims of the plaintiff class are in excess of $5 million." *Id.* at 58 (quotation marks and citation omitted).  This is a light burden: "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Wells Fargo Bank, Nat'l Ass'n v. CIT Bank, N.A.*, 2017 WL 1184296, at *5 (S.D.N.Y. Mar. 29, 2017) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938)).  The court presumes that the face of the complaint is a good faith representation of the actual amount in controversy.  *Wolde-Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).  Plaintiff is subject to a "liberal" pleading standard, *GW Holdings Grp., LLC v. U.S. Highland, Inc.*, 794 F. App'x. 49, 51 (2d Cir. 2019) (citation omitted), and even cursory allegations that the jurisdictional amount is met may be sufficient, provided the allegations are plausible, *Hart v. Rick's NY Cabaret Int'l, Inc.*, 967 F. Supp. 2d 955, 960 (S.D.N.Y. 2014); *see also* 14AA Wright & Miller, Fed. Prac. & Proc. Juris. § 3702 (4th ed.) (listing cases finding that plaintiffs met their initial burden where the complaints contained cursory allegations that the amount was met and concluding this is the correct result).

Once a good faith representation has been made, the burden shifts to the defendant to show to a "legal certainty" that the amount recoverable does not meet the jurisdictional threshold.  *St. Paul Mercury Indem., Co.*, 303 U.S. at 289.  Unlike the plaintiff's burden, the defendant's burden is heavy.  "[T]he legal impossibility of recovery must be so certain as virtually to negat[e] the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank & Trust Co. of Chi.*, 93 F.3d 1064, 1070 (2d Cir. 1996) (citation omitted).  "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the

requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982).  However, dismissal may be granted where there is no evidence that plaintiffs reasonably could accrue damages amounting to $5 million.  *See Acevado v. Citibank, N.A.*, 2019 WL 1437575, at *13 (S.D.N.Y. Mar. 31, 2019).

In considering whether Defendant has met its burden, the court may look at evidence outside the pleadings, including affidavits.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000).  However, the Court should not look to post-filing events in evaluating the amount in controversy, because "the amount in controversy is established as of the date of the complaint and is not reevaluated based on post-filing events."  *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005).  For the same reason, the court should not recalculate the amount in controversy based on jurisdictional discovery, particularly where the damages sought were uncertain at the time the complaint was filed.  *Id.*  Affirmative defenses asserted on the merits similarly may not be used to "whittle down the amount in controversy."  *Scherer v. Equitable Life Assurance Soc' y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citation omitted).

## ANALYSIS

### 1.  The Amount in Controversy Requirement is Met.

In most CAFA cases addressing amount in controversy, plaintiffs have filed their complaint in state court in the first instance, and the defendant seeks removal to the federal court and must show that federal jurisdiction exists.  *Hart*, 967 F. Supp. 2d at 959-60.  Here, Plaintiffs filed this action in federal court, and Defendant is the party disputing jurisdiction. Accordingly, I first consider whether Plaintiffs met their low burden of showing to a reasonable

probability that the aggregate claims of the putative class exceed $5 million.[1]  As described

below, the Plaintiffs easily clear this burden.  I next consider whether Defendant has proved to

a "legal certainty" that the amount recoverable does not meet the jurisdictional threshold, and

find Defendant is not able to meet this heavy burden.

> ### a. The Face of the Complaint Shows to a Reasonable Probability that the Aggregate Claims Exceed $5 Million.

Plaintiffs assert that the alleged class-wide damages exceed the jurisdictional threshold

amount of $5 million.  (SAC ¶ 15).  Plaintiffs bring claims on behalf of a class of over 100

individuals stemming from Defendant's failure to pay overtime from December 31, 2018 until

the "present" (i.e., the date the SAC was filed, which is January 13, 2020).  (SAC ¶¶ 1, 15.)

Plaintiffs seek compensatory and liquidated damages under NYLL, as well as attorneys' fees and

any further relief that the Court deems proper.  (*Id.* ¶ 48.)[2]

The SAC's allegation that the amount in controversy exceeds $5 million creates a

presumption that the amount in controversy requirement is met.  *Hart*, 967 F. Supp. 2d at 960.

Moreover, the SAC alleges more than sufficient facts to support the allegation that the

requirement is met.  The exact amount of damages at issue was not known at the time the

---

[1] Defendant argues that because jurisdiction is contested, plaintiffs must prove jurisdiction exists "by a preponderance of the evidence" rather than to a "reasonable probability."  (ECF No. 132 at 1 n.1).  In this context, "it is unclear that these two standards are functionally different," but "Courts in the Second Circuit continue to use the 'reasonable probability' standard."  *Daly v. United Airlines, Inc.*, 2017 WL 3499928, at *2 (D. Conn. Aug. 16, 2017).  Because challenges to jurisdiction are typically brought before evidence is produced, "the 'reasonable probability' language better captures the preliminary nature of this inquiry" and prevents "extensive and time-consuming litigation over the question of the amount in controversy in CAFA removal cases."  *Amoche v. Guarantee Tr. Life Ins. Co.*, 556 F.3d 41, 50-51 (1st Cir. 2009).

[2] Plaintiffs also seek statutory penalties for Defendant's alleged violations of NYLL § 195(3).  However, as described below, Plaintiffs have not pled that they have standing to bring claims for statutory violations, and accordingly the Court did not consider damages relating to such violations in evaluating the amount in controversy.  *See Cellucci v. O'Leary*, 2021 WL 242806, at *2 (S.D.N.Y. Jan. 25, 2021) ("Without standing to bring this claim, Plaintiffs cannot rely on it to satisfy the amount in controversy threshold.").

Complaint was filed, and remains uncertain due to Defendant's insufficient recordkeeping. However, some back-of-the-envelope calculations based on the plausible allegations in the SAC demonstrate a reasonable probability that the amount in controversy exceeds $5 million.[3]

To start, compensatory damages are calculated as the product of the number of uncompensated overtime hours worked and the applicable overtime rate. The presumptive overtime rate is 1.5 times the employee's regular hourly rate of pay. 12 N.Y.C.R.R. § 142-2.2; *Hayward v. IBI Armored Servs., Inc.*, 954 F.3d 573, 575 (2d Cir. 2020). The relevant time period is December 31, 2018 until January 13, 2020, which totals 54 weeks, and the SAC alleges putative class members worked up to 15 overtime hours per week. (SAC ¶¶ 1-2.)[4] This amounts to 810 uncompensated hours per putative class member over the period at issue. The Complaint alleges there are over 100 class members, but assuming for now that there are just 100 (though Defendant admits there are at least 235 class members), this amounts to approximately 81,000 uncompensated hours for the class. Regarding the applicable overtime rate, the SAC alleges that Plaintiff Metcalf earned $1,076.92 per week, which is $26.92 per hour. (SAC ¶ 5.) The applicable overtime rate is 1.5 times this amount, which is $40.38. Assuming for now that this rate of pay is equal across the class, compensatory damages amount to 81,000 multiplied by $40.38, which totals **$3,270,780**.[5] *See, e.g., Hart*, 967 F. Supp. 2d at

---

[3]  At this stage, rough calculations are sufficient given that the amount in controversy is not the sum ultimately due, but the sum demanded in good faith. *Kurland & Assocs., P.C. v. Glassdoor, Inc.*, 2020 WL 4016816, at *2 (S.D.N.Y. July 16, 2020); *see also Payne v. Tri-State Careflight, LLC*, 322 F.R.D. 647, 678 (D.N.M. 2017) (explaining that "rough, back-of-the-envelope calculations" are sufficient for determining the amount in controversy)

[4]  Note that even on a motion for summary judgment, where, as here, an employer's records are inadequate, plaintiffs may show the amount and extent of uncompensated work through estimates based on their own recollection. *Vasquez v. NS Luxury Limousine Serv., Ltd.*, 2021 WL 1226567, at *12 (S.D.N.Y. Mar. 31, 2021).

[5]  If the putative class size is 235, the amount of reasonably probable compensatory damages alleged in the SAC equals $7,686,333, which *far* exceeds the jurisdictional minimum, not even considering other damages.

961-62 (multiplying estimated damages for named plaintiff by the number of putative class members to calculate amount in controversy, even though "not every class member will be entitled to" damages equal to named plaintiff's). Prevailing plaintiffs are also entitled to recover liquidated damages under NYLL in the amount equal to their actual damages for unpaid wages. *Gomez v. MLB Enters., Corp.*, 2018 WL 3019102, at *10 (S.D.N.Y. June 5, 2018). The SAC therefore plausibly alleges sufficient facts showing it is reasonably probable that approximately $3.3 million in compensatory damages and $3.3 million in liquidated damages is in controversy. This totals $6.6 million, which exceeds the $5 million threshold requirement.

NYLL also provides that prevailing plaintiffs are entitled to attorneys' fees, and Plaintiffs may therefore include attorneys' fees in their calculation. *Fields v. Sony Corp. of Am.*, 2014 WL 3877431, at *2 (S.D.N.Y. Aug. 4, 2014) (citation omitted). In cases brought under NYLL, courts typically award attorneys' fees representing one third of the total recovery. *Ramirez v. Oscar De La Renta, LLC*, 2017 WL 2062960, at *6 (S.D.N.Y. May 12, 2017). One third of the above roughly calculated damages equals $2,200,000. Therefore, the allegations in the SAC plausibly allege that approximately $2.2 million in attorneys' fees is in controversy. Together, compensatory damages, liquidated damages, and attorneys' fees as calculated based solely on the allegations in the SAC amount to $8.8 million, which far exceeds the $5 million threshold.

Discovery may show that the available damages are higher or lower than this amount, but Plaintiffs "are not required at this stage to conclusively establish total damages." *Hart*, 967 F. Supp. 2d at 961-62. At this stage, Plaintiffs have met their initial, low burden to demonstrate through the allegations in the complaint that it is reasonably probable that an excess of $5 million is in controversy here.

b. **Defendant has not shown to a legal certainty that $5 million is not in controversy.**

Defendant brings four main arguments in an attempt to rebut the presumption that the SAC satisfies the amount in controversy requirement.  This is a very high bar, and Defendant has not met it.  *See Chase Manhattan Bank, N.A.*, 93 F.3d at 1070.

***First***, Defendant argues that discovery has revealed damages are lower than $5 million, but this is not true.  Specifically, Defendant argues that Plaintiffs Metcalf and Lawson provided interrogatory answers stating that their total compensatory and liquidated damages equaled $6,153 and $7,019.22, respectively, and that the Court should assume total damages for the class are comparable to these figures.  (ECF No. 132 at 11.)  But Defendant cites old damages estimations that Plaintiffs stated were "preliminary and tentative" at the time they shared them with Defendant.  (ECF No. 141 at 20).  Plaintiffs have since provided Defendant with updated damages estimations following additional limited discovery and informed Defendant that Plaintiff Metcalf's total compensatory and liquidated damages are likely closer to $18,000.  (ECF No. 141 at 20.)  Thus, by Defendant's logic, if there are 235 putative class members all with damages comparable to Metcalf's, the total amount in controversy before attorneys' fees would be $4.2 million.  Attorneys' fees calculated as a third of that amount easily bring this number above $5 million.

It is also well established that class members' damages may "vary" from those of the named plaintiffs.  *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 164-65 (2d Cir. 2012).  Thus, there is no reason to assume total damages for the class are limited by the damages owed to the named Plaintiffs.  Defendant presents no proof that its assumptions are correct; no time records or pay rates for the 200+ members of the putative

class are provided.  Defendant's assumptions about damages across the putative class clearly fall short of the "legal certainty" standard required to contest the jurisdictional amount.

Additionally, at the oral argument, Defendant argued that even using Plaintiffs' calculations in their brief opposing Defendant's motion to dismiss, it is clear that "it is impossible" for Plaintiffs to "get above $5 million."  (ECF No. 169, Tr. 13:4-5.)  Plaintiffs' calculations relied on "conservative" estimates and made multiple assumptions in favor of Defendant.  (ECF No. 143 at 10.)  Using these calculations, Plaintiffs calculated that there is *at least* $2.98 million in actual compensatory damages and liquidated damages in controversy, and *at least* approximately $2 million in attorneys' fees in controversy.  Using these conservative calculations, Plaintiffs showed that at least $4.98 million is in controversy—a number Defendant implausibly characterized at oral argument as "not even remotely close to $5 million."  (ECF No. 169, Tr. 13:14.)  Plaintiffs also clarified that these calculations do not represent "a cap or a limit" on what damages are in controversy, and in fact class-wide discovery might show damages that are significantly higher.  (*Id.* at 21:20-21.)

As such, Defendant has not shown that discovery to date in any way forecloses the possibility that the amount in controversy exceeds $5 million.  To the contrary, calculations based on available discovery, though incomplete, only support the notion that at least $5 million is in controversy here.

**Second**, Defendant argues that the applicable overtime rate in calculating damages should be 1.5 times the minimum wage rather than 1.5 times the hourly rate of putative class members.  Defendants cite 12 N.Y.C.R.R. § 142-2.2, which provides that payment of overtime shall be made:

> [I]n the manner and methods provided in *and subject to the exemptions of* sections 7 and 13 of 29 USC 201 et seq., the Fair Labor Standards Act of 1938, as amended. . . .  In addition, an employer shall pay employees subject to the exemptions of section 13 of the Fair Labor Standards Act . . . overtime at a wage rate of one and one-half times the basic minimum hourly rate.

12 N.Y.C.R.R. § 142-2.2 (emphasis added).  The Second Circuit has explained that the provision requires employers to pay employees that are subject to a Fair Labor Standards Act ("FLSA") exemption under section 13 overtime compensation at a rate of 1.5 times the minimum wage rather than 1.5 times their hourly rate.  *Hayward*, 954 F.3d at 575.

Remarkably, Defendant argues that Plaintiffs *must* be subject to an FLSA exemption under section 13 without stating which exemption applies or showing how it applies to Plaintiffs and all members of the putative class.  Plaintiffs dispute that they are subject to any exemptions that might impact the applicable overtime rate.  (ECF No. 157 at 2-3.)  Plaintiffs are not required to bring claims under FLSA or to allege that they were not exempt under FLSA or NYLL.  *Black v. Coughlin*, 76 F.3d 72, 75 (2d Cir. 1996).  Rather, an exemption is an affirmative defense, *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 91 (2d Cir. 2013), and it is Defendant's burden to prove an exemption applies, *Chen v. Major League Baseball Props., Inc.*, 798 F.3d 72, 82 (2d Cir. 2015).  Moreover, even if Defendant somehow proved an exemption applied, an affirmative defense cannot be used "to whittle down the amount in controversy."  *Scherer*, 347 F.3d at 397 (citation omitted).  Defendant's argument regarding the applicable overtime rate thus fails to meet the "legal certainty" standard required to contest the jurisdictional amount.

***Third***, Defendant argues that retroactive payments it made to putative class members offset the amount of compensatory damages owed, and accordingly offset the amount in controversy.  (ECF 151 at 7.)  This argument fails for several reasons.

To start, Defendant alleges that by September 21, 2019, most putative class members received retroactive salary payments to compensate them for the difference between their salaries and the effective salary threshold for exemption under NYLL.  But Defendant has not provided data showing that these payments were sufficient to bring putative class members within the salary requirements to qualify them for an NYLL exemption.  Moreover, in order to qualify for an NYLL exemption, employees must meet both a salary requirement *and* the duty requirements.  *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447, 455 (S.D.N.Y. 2008).  In other words, employees' duties must fall within certain definitions outlined in the statute. Defendant alleges its retroactive payments brought putative class members' salaries above the threshold to qualify them for an NYLL exemption, but it does not show that their workplace *duties* also satisfied the requirements to qualify for an NYLL exemption.

Additionally, Defendant cites no case law supporting the notion that late payments can be used to retroactively bring employees within the salary threshold required for an NYLL exemption.  Defendant similarly cites no case law supporting the position that damages for failure to pay overtime should be offset as a result of a retroactive salary increase.  NYLL requires that overtime payments be made in full on a weekly basis, and payments earned by an employee after they were due generally do not satisfy the employer's obligations.  12 NYCCRR § 146–2.6; *Karic v. Major Automotive Cos.*, 992 F. Supp. 2d 196, 201 (E.D.N.Y. 2014).  The Second Circuit has rejected the notion that "overpayments" of overtime in certain weeks can offset an employer's liability for other weeks under the analogous federal statute, the FLSA.  *Harold Levinson Assocs., Inc. v. Chao*, 37 F. App'x 19, 22 (2d Cir. 2002).  Similarly, numerous courts in this District have held that retroactive payments of overtime under the FLSA cannot be used to

offset overtime liability. *See, e.g.*, *Lynch v. City of New York*, 291 F. Supp. 3d 537, 548 (S.D.N.Y. 2018); *Conzo v. City of New York*, 667 F. Supp. 2d 279, 291 (S.D.N.Y. 2009). Accordingly, it is far from "legally certain" that the retroactive salary payments here could offset damages for purposes of assessing whether the CAFA amount in controversy is met—the inquiry before the Court on this motion.

Finally, even if the retroactive payments can be used to offset damages, this does not impact the amount in controversy because Plaintiffs allege no retroactive payments were made prior to the filing of the action. It is black-letter law that "the jurisdiction of the court depends upon the state of things at the time of the action brought." *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570 (2004) (citing *Mollan v. Torrance*, 22 U.S. 537, 539 (1824)). This is known as the "time-of-filing" rule, and it means that "if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991). The court must look to "the date that suit is filed" to determine the amount in controversy. *Kuhl v. U.S. Bank Tr. Nat'l Ass'n as trustee for Legacy Mortg. Asset Tr. 2018GS-1*, 2020 WL 5775092, at *3 (S.D.N.Y. Sept. 28, 2020) (rejecting the argument that the defendant's payment of additional insurance proceeds to the plaintiff after commencement of the suit lowered the amount in controversy); *see also Hall*, 396 F.3d at 507. Because the plaintiff alleges retroactive payments were made after the suit was filed, the Court cannot consider these payments in calculating the amount in controversy.[6]

---

[6] *Tongkook Am. v. Shipton Sportwear Co.*, 14 F.3d 781 (1994) is not to the contrary. There, the complaint mistakenly alleged an amount of contract damages that subsequent discovery revealed was legally impossible for plaintiffs to recover, because at the time the suit was commenced, the balance due on the contract at issue was actually below the requisite amount. *Tongkook*, 14 F.3d at 783. Thus, it was a legal certainty "from the outset" that plaintiff could not recover the statutory jurisdictional amount. *Id.* at 785. Here, Defendant has provided no evidence that *at the time the action was commenced*, it was legally impossible for Plaintiffs to recover $5 million.

Defendant argues that rather than looking to "the state of things" at the time the action was filed, the relevant period to consider is the moment the SAC was filed.  (ECF No. 151 at 7.) This is incorrect, and the argument touches upon an important nuance worth elaborating upon. That is, when considering *facts* that impact jurisdiction, the court must consider them as they existed at the time of the filing of the action, but the court should look to the operative complaint when considering *allegations* that impact jurisdiction.  *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 474 (2007); *Gale v. Chi. Title Ins. Co.*, 929 F.3d 74, 78 (2d Cir. 2019).  As the Second Circuit explained, "[t]he time-of-filing rule applies to changes of the 'state of things,' but not to changes of the 'alleged state of things.'"  *Gale*, 929 F.3d at 78 (citing *Rockwell*, 549 U.S. at 473).

Accordingly, when a plaintiff files a complaint in federal court and then amends the complaint, as occurred here, courts look to the allegations in the amended complaint to determine jurisdiction.  *Rockwell*, 549 U.S. at 473-74 (2007).[7]  This rule does not impact the time-of-filing rule, because "[t]he state of things and the originally alleged state of things are not synonymous."  *Id.* at 473.  Thus, it is irrelevant in calculating the amount in controversy that retroactive payments may have been made between the filing of the action and the filing of the SAC.  *See Gale*, 929 F.3d at 78; *accord James River Ins. Co. v. Liberty Surplus Ins. Corp.*, 2018 WL 11346744, at *5-6 (C.D. Cal. Mar. 6, 2018) (considering the jurisdictional amount at the time the first complaint was filed even though the defendant made retroactive payments prior to the filing of the amended complaint).

---

[7] This is why the Court relies on the *allegations* in the SAC, as opposed to the initial Complaint, to determine whether it has CAFA jurisdiction.  *Gale*, 929 F.3d at 78.

Thus, this argument falls well short of the "legal certainty" requirement necessary to rebut the presumption that the amount in controversy is satisfied.

*Fourth*, Defendant argues Plaintiffs are not entitled to the amount of attorneys' fees to which they claim they are entitled.  Specifically, Plaintiffs claim they will be entitled to attorneys' fees using the lodestar method, which is the product of the number of hours billed and the attorneys' hourly rate.  (ECF No. 141 at 17.)  Courts in this Circuit have the discretion to award attorneys' fees using the lodestar method, and as such, Plaintiffs may use this method to establish the amount of attorneys' fees in controversy.  *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 622 (S.D.N.Y. 2012) (citing *McDaniel*, 595 F.3d at 417).  However, even when calculating attorneys' fees as one third of damages, which Defendant admits is typical in this District, (ECF No. 151 at 8-9), attorneys' fees as alleged in the SAC are sufficient to ensure the amount in controversy is well over $5 million.  *See Wells Fargo Bank, Nat'l Ass'n*, 2017 WL 1184296, at *5 (finding that although it was uncertain what the attorneys' fees would be, it was not legally certain that the plaintiff would be unable to recover the jurisdictional amount that included an estimation of attorneys' fees).  The Court thus need not engage in the parties' dispute regarding the appropriate method of calculating attorneys' fees because both methods are sufficient to bring the amount in controversy over $5 million.

As none of its arguments is availing, Defendant falls far short of demonstrating to a legal certainty that $5 million is not in controversy here.  As such, jurisdiction under CAFA exists.

### 2.  Plaintiffs Lack Standing to Bring Claims for Statutory Penalties.

Separate from the amount in controversy question, I consider whether Plaintiffs have standing to bring claims pursuant to NYLL § 195(3), which provides that employers must furnish

their employees with accurate wage statements.  Plaintiffs allege Defendant failed to provide

putative class members with wage statements that listed the overtime rate of pay to which

they were entitled.  (ECF No. 141 at 14).  Defendant challenges Plaintiffs' standing to bring this

claim for the first time on reply, and Defendant did not move to dismiss the statutory wage

statement claims.  However, the Court is required to consider the issue to ensure it has

jurisdiction to hear the claims.  *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-*

*Medco Managed Care, LLC*, 433 F.3d 181, 198 (2d Cir. 2005).  Recent precedent demonstrates

that Plaintiffs failed to adequately allege that they have standing to bring such claims.

At the motion to dismiss stage, the plaintiff "bears the burden of alleging facts that

affirmatively and plausibly suggest" they have standing.  *Calcano v. Swarovski N. Am. Ltd.*, 2022

WL 1788305, at *4 (2d Cir. June 2, 2022) (citation omitted).  Article III of the United States

Constitution confines the judicial power of the federal courts to cases where the plaintiff

shows, *inter alia*, that she suffered a concrete injury in fact.  *TransUnion LLC v. Ramirez*, 141 S.

Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  A plaintiff

cannot rely on the fact that the defendant committed a statutory violation: an "injury in law"

does not amount to an "injury in fact" for purposes of Article III standing.  *Id.* at 2205.  Rather, a

"concrete" harm is something with at least a "'close relationship' to a harm 'traditionally'

recognized as providing a basis for a lawsuit in American courts—such as physical harm,

monetary harm, or various intangible harms."  *Id.* at 2200 (citing *Spokeo, Inc. v. Robins*, 578 U.

S. 330, 340-41, (2016)).  "[A] material risk of future harm" cannot satisfy the concrete-harm

requirement for a claim of damages, nor can an "informational injury" absent any actual

"adverse effects."  *Id.* at 2213-14.  Such adverse harms must be pled in the Complaint.  *Maddox*

*v. Bank of New York Mellon Tr. Co., N.A.*, 19 F.4th 58, 65-66 (2d Cir. 2021); *see also Epstein*

*v. JPMorgan Chase & Co.*, 2014 WL 1133567, at *7 n.6 (S.D.N.Y. Mar. 21, 2014) (declining to

infer standing based on harms plaintiff claimed to have suffered where plaintiff failed "to make

this claim in his papers").

In *TransUnion*, the Supreme Court considered whether plaintiffs had standing to bring

claims against a credit reporting agency for violating several provisions of the Fair Credit

Reporting Act, including a requirement to send certain mailings in a specific format.  The Court

found the plaintiffs did not demonstrate that the improperly formatted mailings caused them a

concrete harm because there was no evidence the plaintiffs even opened the mailings or that

they "were confused, distressed, or relied on the information in any way."  *Id.* at 2213 (citation

omitted).  The plaintiffs never alleged—as Plaintiffs do here—that they received *incorrect*

information, but the Supreme Court explained that even if the plaintiffs had alleged an

"informational injury," they would still need to show the "downstream consequences" they

experienced "from failing to receive the required information."  *Id.* at 2214 (citation omitted);

*accord Kola v. Forster & Garbus LLP*, 2021 WL 4135153, at *7 (S.D.N.Y. Sept. 10, 2021) (holding

plaintiff did not show "concrete harm" after receiving a misleading letter from a debt collector

because plaintiff did not rely on the statements in the letter).[8]

Citing *TransUnion*, the Honorable Pamela K. Chen of the Eastern District of New York

held, in three seriatim decisions, that plaintiffs lacked standing to maintain claims in federal

---

[8]  At oral argument, Plaintiff noted that the Ninth Circuit in *Magadia v. Wal-Mart Assocs. Inc.*, 999 F.3d 668 (9th Cir. 2021) held that employees have a "concrete interest" for standing purposes in "receiving accurate information about their wages in their pay statements."  (ECF No. 169, Tr. 7:11-18.)  *Magadia* was decided about a month prior to *TransUnion*, which clarified that an informational injury, without some downstream consequences, is insufficient for standing.

court for violations of statutory wage statement requirements under NYLL § 195(3).  *See Sevilla v. House of Salads One LLC*, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022); *Wang v. XBB, Inc.*, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022); *Francisco v. NY Tex Care, Inc.*, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022).  Judge Chen explained that the plaintiffs in those cases did not demonstrate how the lack of accurate wage statements "led to either a tangible injury or something akin to a traditional cause of action."  *Francisco*, 2022 WL 900603, at *7.

Accordingly, to state a viable claim for statutory violations, the complaint must provide factually specific, non-conclusory allegations that they suffered a concrete harm as a result of the violations.  Here, the SAC has not alleged any such harm.  The SAC does not allege that Plaintiffs even read the wage statements or relied on them in any way, or that the wage statements caused Plaintiffs confusion or distress.

At oral argument, Plaintiff's counsel argued that the lack of accurate wage statements may have resulted in actual adverse effects; specifically, inaccurate information may have prevented putative class members from realizing they were being underpaid and from taking appropriate action to obtain the payments due to them.  (ECF No. 169, Tr. 5:2-5.)  If putative class members indeed reviewed the wage statements and, based on this review, wrongly believed that they were being paid fully and therefore failed to take action to correct the situation, this would likely constitute "concrete harm" that is sufficient for standing.  *See TransUnion*, 141 S. Ct. at 2203 (explaining that identification of "downstream consequences" resulting from an informational injury is sufficient for standing, such as that the information deficit hindered plaintiffs' ability to correct erroneous information before it was sent to others).

However, Plaintiffs failed to identify such "downstream consequences" in the SAC, and they noted them for the first time at oral argument.  This is not sufficient to plead standing. *Maddox*, 19 F.4th at 65-66; *see also Bd. of Managers of Mason Fisk Condo. v. 72 Berry St., LLC*, 801 F. Supp. 2d 30, 39 (E.D.N.Y. 2011) (declining to consider theory of standing raised for first time at oral argument).

Therefore, the SAC does not sufficiently allege an injury in fact sufficient to establish standing to assert claims for wage statement violations under NYLL.  For this reason, the Court did not consider damages relating to such violations in evaluating the amount in controversy above. *Cellucci*, 2021 WL 242806, at *2.  I recommend that Plaintiffs be granted leave to amend the complaint in order to plead downstream injuries they suffered, if any, as a result of the inaccurate wage statements. *See, e.g.*, *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 345 (D.N.J. 2003) (finding complaint did not plead standing and granting leave to amend the complaint because it may have been possible for the plaintiff to cure the deficiency).

## CONCLUSION

In sum, Plaintiffs have plausibly alleged that at least $5 million in damages is in controversy.  Despite Defendant's enthusiastic efforts, it has not shown that recovery of this amount is legally impossible.  Therefore, I respectfully recommend that Defendant's Motion to Dismiss for lack of subject matter jurisdiction (ECF No. 131) be DENIED.

Additionally, as Plaintiffs have not adequately pled standing to assert claims for failure to provide wage statements based on the allegations in the SAC, I respectfully recommend that claims for wage statement violations (SAC ¶¶ 28-29) be dismissed without prejudice.

Dated:   July 11, 2022

New York, New York

Respectfully submitted,

*Katharine H. Parker*

KATHARINE H. PARKER

United States Magistrate Judge

**<u>NOTICE</u>**

The parties shall have fourteen days from this date to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) to this Report and Recommendation.  If Defendant files written objections to this Report and Recommendation, Plaintiffs may respond to the objections within fourteen days after being served with a copy.  Fed. R. Civ. P.72(b)(2).  If Plaintiffs file written objections, Defendant may respond to the objections within fourteen days.

Objections and responses to objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Edgardo Ramos at 40 Foley Square New York, NY 10007-1312, to the chambers of the undersigned magistrate judge, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b).  Any request for an extension of time to file objections must be directed to Judge Ramos.  Failure to file timely objections will result in a waiver of those objections for purposes of appeal.  *See* 28 U.S.C.§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).