UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELE METCALF and
HANNAH LAWSON, *individually
and on behalf of all others similarly
situated*,

                        Plaintiffs,

        – against –

TRANSPERFECT TRANSLATIONS
INTERNATIONAL, INC.,

                        Defendant.

**OPINION & ORDER**

19 Civ. 10104 (ER)

RAMOS, D.J.:

      Michele Metcalf and Hannah Lawson ("Plaintiffs") brought this putative class action alleging that TransPerfect Translations International, Inc., violated various provisions of the New York Labor Law ("NYLL"). In brief, the claims concern overtime pay that TransPerfect allegedly failed to pay Plaintiffs.

      Before the Court is the Report and Recommendation ("R & R") dated July 11, 2022, of Magistrate Judge Katharine H. Parker, to whom this matter was referred for judicial review of TransPerfect's motion to dismiss the Second Amended Complaint ("SAC") for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(h)(3). *See* Doc. 131, 171. In the R & R, Judge Parker recommended (1) denying TransPerfect's motion to dismiss for lack of subject matter jurisdiction and (2) dismissing Plaintiffs' NYLL § 195(3)[1] claims without prejudice for failure to adequately plead standing to bring such claims. Doc. 171. TransPerfect filed

---

[1] NYLL § 195(3) provides that employers must furnish their employees with wage statements. Plaintiffs alleged that TransPerfect failed to provide putative class members with wage statements that listed the overtime rate of pay following a change to the NYLL's threshold for earning such pay in New York City. Doc. 62 ¶¶ 28–29.

objections to the R & R, and Plaintiffs responded. Doc. 179, 184. For the reasons stated herein, the Court ADOPTS Judge Parker's R & R.

## I. BACKGROUND

### A. Factual Background

Plaintiffs Michele Metcalf and Hannah Lawson brought this action on behalf of themselves and all of TransPerfect's "salaried employees being compensated at less than $1,125.00 per week" who worked overtime in its New York City office between December 31, 2018, and January 13, 2020. Doc. 62 ¶¶ 1–4. Metcalf and Lawson each worked at that office for various months during 2019.[2] *Id.* ¶¶ 5–7. Both earned a weekly salary of less than $1,125, and regularly worked more than forty hours a week. *Id.*

Metcalf is a citizen of California who worked for TransPerfect from approximately November 2015 to September 2019. *Id.* at ¶ 5. She held various roles during that period. *Id.* In January 2018, Metcalf transferred to TransPerfect's New York office where she earned an annual salary of $51,000, which amounted to approximately $980 per week. *Id.* Later that year, in November 2018, she was promoted to Senior Client Services Executive with an annual salary of $56,000, which was approximately $1,077 per week. *Id.* Metcalf held that position until June 2019. *Id.* During her time working in TransPerfect's New York office, she generally worked over 50 to 55 hours per week. *Id.*

Lawson is a resident of Brooklyn, New York. *Id.* at ¶ 7. Lawson worked in TransPerfect's New York office from approximately June 18, 2018, to October 9, 2019. *Id.* While she initially started as a Project Coordinator earning $43,000 per year, she was promoted in December 2018, at which point she began earning $980 per week. *Id.*

---

[2] The facts stated herein are drawn from Plaintiffs' SAC. Doc. 62. They are assumed true for the purpose of adjudicating the instant motion to dismiss. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) ("In reviewing a motion to dismiss . . . we accept as true all factual statements alleged in the complaint . . . .") (citation omitted); *see also J.S. ex rel. N.S. v. Attica Cent. Sch.,* 386 F.3d 107, 110 (2d Cir. 2004).

Lawson maintained her role as Project Manager until at least April 7, 2019. *Id.* During this time period, she worked an average of 45 hours weekly. *Id.*

In addition to Metcalf and Lawson, TransPerfect, a translation services company that is citizen of Delaware and New York, employed at least one hundred other salaried employees in its New York office. *Id.* at ¶¶ 12–14. They each worked overtime and earned less than $1,125 per week during the proposed class period. *Id.* at ¶¶ 14, 21.

### B.     Procedural Background

On August 18, 2019, Metcalf initiated this action by filing a complaint in the District Court for the Central District of California. Doc. 1. She asserted diversity, pursuant to 28 U.S.C. § 1332(a), as the basis for subject matter jurisdiction. *Id.* at ¶ 8.

On October 23, 2019, the parties submitted a joint stipulation to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Doc. 22. The federal court in California granted that and the case was transferred to this District. Doc. 24, 25. On November 15, 2019, TransPerfect filed a motion to dismiss the Complaint on the grounds that there was no subject matter jurisdiction because Metcalf had not sufficiently alleged the amount in controversy exceeded $75,000. Doc. 38. Metcalf subsequently amended her Complaint on December 19, 2019. Doc. 45. The First Amended Complaint ("FAC") added Lawson as a named plaintiff and additional TransPerfect entities as defendants. *Id.* ¶¶ 7–13. It otherwise asserted substantially the same claims and once again asserted diversity jurisdiction. *See generally* Doc. 45.

On December 10, 2019, TransPerfect filed a letter with the Court arguing that the addition of Lawson to Metcalf's FAC divested the Court of diversity jurisdiction because both Lawson and TransPerfect are New York citizens. Doc. 50. Plaintiffs then filed the SAC on January 13, 2020, asserting jurisdiction based on the Class Action Fairness Act of 2005 ("CAFA"). Doc. 62 ¶ 15. The SAC alleges that the amount in controversy exceeds $5 million, including the individual claims of a proposed class of more than 100 individuals. *Id.*

On January 27, 2020, TransPerfect moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  Doc. 65.  In that motion, TransPerfect did not contest that the amount in controversy threshold for CAFA jurisdiction was met.  *See* Doc. 66 at 9–10.  Rather, TransPerfect argued that exceptions to the exercise of CAFA jurisdiction applied to the case.  *Id.*

On November 30, 2020, the Court denied TransPerfect's motion to dismiss for lack of subject matter jurisdiction and granted its motion to dismiss for failure to state a claim against any "joint employers."  *See generally* Doc. 83.  Accordingly, all corporate entities besides TransPerfect Translations, Inc., were dismissed.  *See id.* at 12–13.

Following a period of discovery and settlement discussions, TransPerfect subsequently filed the instant motion to dismiss on February 25, 2022, this time alleging that there is no factual basis to support the contention that the amount in controversy exceeds the $5 million threshold required by CAFA.  Doc. 131–32.  On July 11, 2022, Judge Parker issued the R & R.  Doc. 171.  It recommended that TransPerfect's motion to dismiss be denied, and that Plaintiffs' NYLL § 195(3) wage statement claims be dismissed without prejudice due to Plaintiffs' failure to adequately plead standing to bring those claims.  *See id.* at 1.

Thereafter on July 25, 2022, TransPerfect filed its objection to the R & R's recommendation that TransPerfect's motion to dismiss be denied.  Doc. 179.  It did not object to the recommendation regarding Plaintiffs' NYLL § 195(3) wage statement claims.  *See generally id.*  Plaintiffs responded on August 8, 2022.  Doc. 184.  They did not object to either recommendation.  *See generally id.*

## II. STANDARD OF REVIEW

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Parties may raise "specific," "written" objections to the report and recommendation "[w]ithin fourteen days after being served

4

with a copy." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).  A district court reviews de novo those portions of the report and recommendation to which timely and specific objections are made.  28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juv.* (95–CR–1074), 121 F.3d 34, 38 (2d Cir.1997).  The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record.  *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).  The district court will also review the R & R for clear error where a party's objections are "merely perfunctory responses" argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

### III.  DISCUSSION

#### A.  CAFA Jurisdiction – Amount in Controversy Dispute

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  *See Mason Tenders Dist. Council of Greater New York and Long Is. v. CAC of New York, Inc.*, 46 F. Supp. 3d 432, 435 (S.D.N.Y. 2014).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *See Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings, such as affidavits, may be considered by the Court to resolve the disputed jurisdictional fact issues.  *See Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi,* 215 F.3d 247, 253 (2d Cir. 2000); *see also Morrison,* 547 F.3d at 170 (citing *Makarova,* 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the Court accepts all material factual allegations in the complaint as true, but it does not necessarily

draw inferences from the complaint favorable to the plaintiff. *See Attica Cent. Sch.,* 386 F.3d at 110 (citing *Shipping Fin. Servs. Corp. v. Drakos,* 140 F.3d 129, 131 (2d Cir. 1998)).

Likewise, the Court has the authority to dismiss a complaint, even when the plaintiff has paid the fees to bring a federal civil action, if the Court determines that it lacks subject matter jurisdiction, *see* Fed. R. Civ. P. 12(h)(3); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999). The standards that govern TransPerfect's Rule 12(h)(3) motion are the same as those that govern its Rule 12(b)(1) motion. *Greystone Bank v. Tavarez*, No. 9 Civ. 5192 (ST), 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010).

CAFA confers federal jurisdiction over class actions where: (1) the proposed class contains no fewer than 100 members, (2) there is minimal diversity between the parties, and (3) the aggregate amount in controversy exceeds $5 million. *Blockbuster, Inc. v. Galeno*, 472 F.3d 53, 57 (2d Cir. 2006). The amount in controversy is established as of the date of the complaint, and it may not be re-evaluated based on post-filing events. *Hall v. EarthLink Network, Inc.*, 396 F.3d 500, 506 (2d Cir. 2005).

The party invoking jurisdiction bears the burden of proving that the amount in controversy exceeds the CAFA threshold. *Id.* at 58. This is not a heavy burden. *Blockbuster, Inc.*, 472 F.3d at 58 (holding that a party need only show "to a reasonable probability" that the aggregate claims exceed $5 million); *see also Ocean Ships, Inc. v. Stiles*, 315 F.3d 111, 116 (2d Cir. 2002) (recognizing a rebuttable presumption that the face of the complaint is a "good faith" representation of the amount in controversy). Once the party invoking jurisdiction has made a good faith representation as to the amount in controversy, the burden shifts to the opposing party, who must demonstrate "to a legal certainty" that the claim does not add up to $5 million. *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust C. of Chicago*, 93 F.3d 1064, 1070 (2d Cir. 1996) (concluding that the "legal impossibility of recovery must be so certain as to virtually

negat[e] the plaintiff's good faith in asserting the claim") (quoting *Tongkook Am. Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 785–86 (2d Cir. 1994)) (internal quotations omitted).

In its objections to the R & R, TransPerfect raised three reasons why Plaintiffs allegedly fail to meet the $5 million threshold to a legal certainty. *See generally* Doc. 179. First, TransPerfect claims that Judge Parker erroneously failed to extrapolate Plaintiffs' damages across the class to determine the amount in controversy. *Id.* at 13–16. Second, TransPerfect alleges that Judge Parker applied a higher number of overtime hours than was supported by the evidence while simultaneously incorporating "an unsupported assertion" that Plaintiffs' attorney's fees could amount to or exceed $2 million. *Id.* at 13. Finally, TransPerfect asserts that Judge Parker applied the incorrect rate of compensation for determining CAFA jurisdiction—erroneously using the employees' regular rate rather than the minimum wage. *Id.* The Court considers these objections in light of the burden-shifting framework discussed above.

### i. Overtime Hours, Compensation Rate, and Attorney's Fees

Judge Parker determined that the face of the Complaint shows to a reasonable probability that the aggregate claims exceed the CAFA amount in controversy threshold. Doc. 171 at 7–9. The R & R conducted "some back-of-the-envelope calculations" to come to this determination. *Id.* at 8. Setting forth the fact that compensatory damages are calculated as the product of the number of uncompensated overtime hours at the applicable rate, Judge Parker noted that the SAC alleged that putative class members worked up to 15 overtime hours per week over the course of 54 weeks. *Id.* at 8; *see also* Doc. 62 at ¶¶ 1–2. Judge Parker also stated that pursuant to 12 N.Y.C.4.4. § 142-2.2, the presumptive overtime rate is 1.5 times the employee's hourly pay rate, here, $40.38 per hour ($26.92 per hour x 1.5). Doc. 171 at 8; *see also* Doc. 62 at ¶ 5. From there, Judge

Parker noted that the SAC alleged a putative class of at least 100 members.[3]  Doc. 171 at 8.

Multiplying these figures together, Judge Parker determined that the compensatory damages amount to approximately $3.3 million (15 overtime hours x 54 weeks x $40.38 per hour x 100 class members).  *Id.* at 8–9.  Adding another $3.3 million in liquidated damages, Judge Parker determined that the total damages amounted to $6.6 million, and accordingly, the $5 million CAFA threshold was easily met.  *Id.* at 9; *Gomez v. MLB Enters., Corp.*, No. 15 Civ. 3326 (CM), 2018 WL 3019102, at *10 (S.D.N.Y. June 5, 2018).  She then noted that attorneys' fees could be included in the calculation, which could plausibly amount to an additional $2.2 million based on the rate awarded in typical NYLL cases, namely, one-third of the total damages recovery.  Doc. 171 at 9; *Fields v. Sony Corp. of Am.*, No. 13 Civ. 6520 (GBD), 2014 WL 3877431, at *2 (S.D.N.Y. Aug. 4, 2014) (concluding that prevailing plaintiffs are entitled to attorney's fees and those fees may be included in the amount in controversy calculation); *Ramirez v. Oscar De La Renta, LLC*, No. 16 Civ. 7855 (RA), 2017 WL 2062960, at *6 (S.D.N.Y. May 12, 2015) (noting that courts typically award attorneys' fees representing one-third of the total recovery).

TransPerfect challenges the amounts used for the total amount of overtime hours, the applicable rate of overtime pay, and the sum and application of the $2.2 million in attorneys' fees.  Doc. 171 at 8; *see Blockbuster, Inc.*, 472 F.3d at 58.

First, TransPerfect contends that the operative number of overtime hours per week should be 6.56 rather than 15.  Doc. 179 at 16–17.  In support of that contention, TransPerfect asserts that this number is "undisputed" by the parties, and is allegedly supported by the calculations carried out over the course of this litigation.  *Id.* at 17.

---

[3] Both parties now agree that the putative class is indeed larger; however, Judge Parker used this figure for preliminary calculations based on the SAC.  Doc. 171 at 8; *see also* Doc. 132 at 6; Doc. 179 at 16.

While the parties do agree that the 6.56 number is the result of the analysis done to date based on produced data corresponding to *five percent* of the putative class,[4] Doc. 143 at 16–17, Plaintiffs have repeatedly emphasized that that number is based on limited discovery and may not be representative of the entire class, Doc. 184 at 23.

Accordingly, despite TransPerfect's contentions, this is not a situation wherein new information—here, the parties' 6.56-hour calculation based on limited document production—so "contradicts" the material allegations of the Complaint that it is an error to set aside or contextualize that number in assessing Plaintiffs' low burden. Doc. 179 at 17; *see also* Doc. 171 at 8 n.4 (noting that even on a motion for summary judgment where an employer's records are limited, plaintiffs may show the amount of uncompensated work through estimates based on their recollection) (citing *Vasquez v. NS Luxury Limousine Serv., Ltd.*, No. 18 Civ. 10219 (AN), 2021 WL 1226567, at *12 (S.D.N.Y. Mar. 31, 2021)). TransPerfect's reliance on *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) and *Crescent Publ'g Grp., Inc. v. Playboy Enterprises, Inc.*, 246 F.3d 142, 146 (2d Cir. 2001) fail to bolster its argument. *Id.* at 17–18. Both cases deal with situations where, based on the record, the courts endorsed a "clearly erroneous assessment of the evidence." *See, e.g.*, *Playboy Enterprises, Inc.*, 246 F.3d at 146. That is not the case here. At this stage of the litigation, it is not at all clear that the calculations based on five percent of the class discredit the 15-hour figure set out in the SAC. Indeed, discovery as to the remaining 95% of the putative class may very well bring the average number of overtime hours much closer to 15.

Critically, the R & R used the 15-hour figure for the first step of the amount in controversy analysis, wherein the Court must assess whether Plaintiffs met their modest,

---

[4] As Judge Parker noted, these calculations relied on conservative estimates that made multiple assumptions in favor of TransPerfect and were based on documents representing only a small percentage of the putative class members. Doc. 171 at 11; *see also* Doc. 143 at 16–17.

good faith burden to show that the aggregate claims exceed $5 million to a reasonable probability. *Blockbuster, Inc.*, 472 F.3d at 58; *Stiles*, 315 F.3d. at 116. While TransPerfect urges that the 6.56-hour figure is the appropriate measure and, if used, proves that Plaintiffs' damages *do not* reach the CAFA threshold to a "legal certainty,"[5] that number need not be applied by the Court in its analysis of Plaintiffs' initial burden. *Chase Manhattan Bank, N.A.*, 93 F.3d at 1070 (noting that the good faith sum claimed by a plaintiff controls the analysis unless an opposing party demonstrates "to a legal certainty that the claim is really for less than the jurisdictional amount") (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938)).

TransPerfect also challenges the rate of pay used to assess whether Plaintiffs met their burden. It insists that the applicable rate is 1.5 times the minimum wage, rather than 1.5 times the hourly rate of class members. Doc. 179 at 20–22 (citing 12 N.Y.C.4.4. § 142-2.2). But 12 N.Y.C.4.4. § 142-2.2 makes clear that TransPerfect's contention is only true if the putative class members are subject to the Fair Labor Standards Act ("FLSA") exemptions laid out in that provision. *See also Hayward v. IBI Armored Servs., Inc.*, 954 F.3d 573, 575 (2d Cir. 2020). Here, TransPerfect fails to show that an exemption applies, much less "to a legal certainty." *Chase Manhattan Bank, N.A.*, 93 F.3d at 1070. Indeed, as Judge Parker noted, Plaintiffs challenge this contention, and TransPerfect fails to conclusively establish which FLSA exemption applies and how it applies. Doc. 171 at 12–13; *see generally* Doc. 179 at 20–22. Perhaps most importantly, TransPerfect concedes that an FLSA exemption is an affirmative defense. Doc. 179 at 20. And the Second Circuit has long held that affirmative defenses may not be used "to whittle down the amount in controversy" for the purposes of evaluating subject matter jurisdiction. *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (citing *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982)).

---

[5] *See* Section III(A)(ii) *infra.*

While TransPerfect is free to raise this defense at the appropriate time, it does not affect the amount in controversy analysis here.

With respect to attorneys' fees, TransPerfect objects to the calculation of a total of $2.2 million. Doc. 179 at 18. However, TransPerfect acknowledges that "[c]ourts in this Circuit have consistently recognized that when determining the amount in controversy for CAFA purposes, attorneys' fees are calculated as one-third of total recovery in wage-and-hour cases brought under the NYLL." *Id.* at 18. Judge Parker relied precisely on that assumption to derive the $2.2 million figure. Doc. 171 at 9. The R & R specifically states as follows:

> NYLL also provides that prevailing plaintiffs are entitled to attorneys' fees, and Plaintiffs may therefore include attorneys' fees in their calculation. *Fields v. Sony Corp. of Am.*, 2014 WL 3877431, at *2 (S.D.N.Y. Aug. 4, 2014) (citation omitted). In cases brought under NYLL, courts typically award attorneys' fees representing one third of the total recovery. *Ramirez v. Oscar De La Renta, LLC*, 2017 WL 2062960, at *6 (S.D.N.Y. May 12, 2017). One third of the above roughly calculated damages equals $2,200,000. Therefore, the allegations in the SAC plausibly allege that approximately $2.2 million in attorneys' fees is in controversy. Together, compensatory damages, liquidated damages, and attorneys' fees as calculated based solely on the allegations in the SAC amount to $8.8 million, which far exceeds the $5 million threshold.

*Id.* Contrary to TransPerfect's objection, Judge Parker's calculation was not "inconsistent with applicable law." Doc. 179 at 19. That the R & R later mentioned various methods that the Court may subsequently use to calculate attorneys' fees does not call into question its application of the broadly accepted "one-third" method to estimate attorneys' fees for the purpose of the amount in controversy determination at this stage. *See generally* Doc. 171 at 16 (noting that the Court need not engage in the parties' dispute regarding the appropriate method for calculating attorneys' fees because both proposed methods are sufficient to establish the necessary amount in controversy).

11

### ii. Extrapolation of Plaintiff's Damages

TransPerfect also objects to the methodology in the R & R. Doc. 179 at 13–16. It contends that the named plaintiffs' purported damages should be extrapolated across the entire class, rather than being calculated based on the allegations set out in the SAC. Doc. 179 at 13. Specifically, TransPerfect insists that the Court must calculate the amount in controversy by multiplying the *exact* unpaid overtime damages estimated by the named Plaintiffs at the outset of this litigation (namely, $6,153 for Metcalf and $7,019.22 for Lawson) by the total number of class members. *Id.* at 13–14. In response, Plaintiffs assert that while it may be proper to extrapolate damages across the entire class in some cases, this cannot and should not be limited to the "preliminary and tentative" calculations prepared by the named plaintiffs in their initial interrogatory responses— particularly where there are indications that the class members' damages may vary. Doc 184 at 14–15; Doc 141 at 20.

Central to Plaintiffs' response is the fact that they updated their damages estimations after TransPerfect produced documents over the course of discovery. Doc. 184 at 14–15; *see also* Doc. 141 at 20–21. Thereafter, Metcalf revised her compensatory and liquidated damages to a total of approximately $18,000—almost three times the original estimate of her damages. Doc. 141 at 26; Doc. 142-1 at 8–9. Critically, these revisions came after TransPerfect provided Plaintiffs with additional data that prompted Plaintiffs to shift their initial calculations, which were based on data from TransPerfect's prior, more limited disclosures. Doc. 184 at 15, 20.

TransPerfect nevertheless claims that the Court cannot, at this stage, consider those adjustments because precedent "is clear that courts may not rely upon sworn statements, such as affidavits, which directly contradict" prior testimony, namely, Plaintiffs' initial damages estimates. Doc. 179 at 15. That is certainly true in cases where, as Plaintiffs note, a litigant simply revises deposition testimony with a contradictory affidavit based only "a new recollection or realization, not new evidence."

Doc. 184 at 18; *see, e.g.*, *Margo v. Weiss*, 213 F.3d 55, 58–59 (2d Cir. 2000). But here, Plaintiffs revised their calculations after receiving employer records from TransPerfect that provided a more complete picture of their actual payment history—not merely after realizing that they simply forgot to add overtime hours to their initial calculations. Doc. 184 at 15–18, 20. Accordingly, the Court sees no reason why it should not consider the revised damages calculations.

This renders TransPerfect's extrapolation argument futile. As Judge Parker noted in her R & R, TransPerfect acknowledges that there are at least 235 class members. Doc. 171 at 10; Doc. 132 at 6; Doc. 179 at 16. Applying TransPerfect's logic, if the putative class members all have damages comparable to Metcalf's, the total damages in controversy would be more than $4 million, exclusive of attorneys' fees. Plaintiffs thus easily clear the $5 million threshold even under TransPerfect's extrapolation theory. *Fields*, 2014 WL 3877431, at *2; *see also Ramirez*, 2017 WL 2062960, at *6. At minimum, this theory fails to demonstrate "to a legal certainty" that Plaintiffs' claims do not meet the $5 million CAFA threshold. *Chase Manhattan Bank, N.A*, 93 F.3d at 1070.

### B.  Standing to Bring NYLL § 195(3) Claims

In the R & R, Judge Parker concluded that Plaintiffs failed to sufficiently plead standing to bring claims pursuant to NYLL § 195(3) for TransPerfect's alleged failure to furnish its employees with accurate wage statements. Doc. 171 at 16–17. Neither party challenged this portion of the R & R. *See generally* Doc. 178; Doc. 184. Having reviewed the NYLL § 195(3) standing analysis for clear error, the Court adopts Judge Parker's recommendation that such claims be dismissed without prejudice.

### IV.  CONCLUSION

The Court has reviewed Judge Parker's thorough R & R and finds no error, clear or otherwise. Judge Parker reached her determinations after a careful review of the parties' submissions and arguments, and appropriately relied on pertinent assumptions to determine that the CAFA threshold was met. Doc. 171. The Court therefore ADOPTS

Judge Parker's recommendations and (1) denies Defendant's motion to dismiss under CAFA and (2) dismisses Plaintiffs' NYLL § 195(3) claims for failure to adequately plead standing without prejudice.

    The Clerk of the Court is respectfully directed to terminate the motion. Doc. 131.

    It is SO ORDERED.

Dated:    September 30, 2022
           New York, New York

                                                   EDGARDO RAMOS, U.S.D.J.