UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELE METCALF and HANNAH LAWSON, *on behalf of themselves and all others similarly situated*,

                    Plaintiffs,

– against –

TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.,

                    Defendant.

**OPINION AND ORDER**
19 Civ. 10104 (ER) (KHP)

Ramos, D.J.:

      Michele Metcalf and Hannah Lawson brought this putative class action on August 28, 2019, alleging that TransPerfect Translations International, Inc. ("TransPerfect") violated provisions of the New York Labor Law ("NYLL") by, *inter alia*, failing to pay plaintiffs for overtime hours worked. On September 30, 2022, the Court issued an opinion and order, Doc. 196, dismissing without prejudice plaintiffs' claims brought pursuant to the so-called New York Wage Theft Prevention Act ("WTPA"), NYLL § 195(3), for failure to plead an injury in fact sufficient to confer standing.

      Before the Court is the Report and Recommendation of Magistrate Judge Katherine H. Parker dated November 15, 2022 (the "R&R"), Doc. 197, which recommends that the Court grant in part and deny in part plaintiffs' motion for leave to file a proposed Third Amended Complaint (the "PTAC"), Doc. 190-2, pursuant to Federal Rule of Civil Procedure 15(a). Specifically, the R&R recommends that plaintiffs be granted leave replead their NYLL § 195(3) claims—because plaintiffs now sufficiently allege that they were injured by TransPerfect's failure to provide accurate wage statements—but denied leave to assert claims pursuant to a

separate provision of the WTPA, § 195(1), which requires employers to provide employees with wage notices at the time of hiring.  Doc. 197.

On November 29, 2022, TransPerfect objected to the portion of the R&R granting plaintiffs leave to amend their § 195(3) claims, asserting that the PTAC still does not sufficiently allege that plaintiffs suffered an injury in fact.  Doc. 200.  For the reasons set forth below, the R&R is ADOPTED.

## I.   BACKGROUND[1]

TransPerfect is a corporate language services provider domiciled in New York.  ¶ 12. Metcalf and Lawson each worked at TransPerfect's New York City office for various months in 2018 and 2019.  ¶¶ 5, 7.  Metcalf worked as a client services manager, Lawson as a project manager.  *Id.*  Both earned a weekly salary of less than $1,125 and regularly worked more than forty hours per week.  *Id*.  Metcalf and Lawson bring this action on behalf of themselves and TransPerfect salaried employees who were compensated less than $1,125 per week while working overtime in the New York City office between December 31, 2018 and January 13, 2020 (the "Class Members").  ¶ 1.

Section 195(3) of the NYLL requires employers to furnish employees with a statement with every wage payment and, for all employees who are not exempt from overtime compensation, to include their regular hourly rate(s) of pay, overtime rate or rates of pay, number of regular hours worked, and number of overtime hours worked in the statement.  ¶ 26; NYLL § 195(3).

---

[1] Unless otherwise noted, citations to "¶ __" refer to the PTAC, Doc. 190-2.  The Court assumes familiarity with the background of this case and includes only those facts relevant to this motion.  *See, e.g.*, Doc. 196, the Opinion and Order issued on September 30, 2022, adopting the Report and Recommendation issued by Judge Parker on July 11, 2022, Doc 171.

When hired, Metcalf and Lawson were exempt from overtime compensation because they earned a salary that exceed the minimum amount to qualify as exempt under New York law. Accordingly, their wage notices provided them with their base salary amount.  However, a change in New York law effective January 1, 2019 increased the base salary amount needed to categorize an employee as exempt from overtime to $1,125.  *See* N.Y. Comp. Codes R. & Regs. § 142-2.14(4).  Plaintiffs therefore assert that they became non-exempt, as their salaries remained below $1,125 per week after the effective date.  ¶ 18.  TransPerfect did not notify plaintiffs of their change in status or provide them with their regular hourly and overtime rates of pay, as required by New York Law.  ¶¶ 23–24.  TransPerfect also failed to provide them with wage statements that reflected their regular hourly rate of pay, overtime rate of pay, and number of regular or overtime hours worked.  ¶ 28.  TransPerfect did not pay plaintiffs for any overtime after they became non-exempt.  ¶ 19.

On September 17, 2019, nearly nine months after the statutory change of the overtime exemption amount, TransPerfect realized that it had not paid plaintiffs the appropriate salary rate to maintain their exempt status.  ¶ 20, n.4.  TransPerfect therefore made retroactive payments to remedy the mistake, which plaintiffs now contend are insufficient to cover the actual overtime hours they worked during the nine-month period.  *Id.*

Plaintiffs argue that by providing inaccurate wage statements that failed to disclose their regular and overtime rates and hours during the period when they were eligible for overtime pay, they were denied the information needed to determine whether they were being underpaid in violation of NYLL § 195(3).  ¶¶ 24, 29.  Plaintiffs further claim that had they been provided with the required information, they would have been able to determine whether they were being

3

underpaid and by what amount; they also would be able to assess whether the retroactive payments have adequately compensated them for their unpaid overtime hours. ¶¶ 24–25, 29–30.

## II.  PROCEDURAL HISTORY

On August 18, 2019, Metcalf initiated this action by filing a complaint in the District Court for the Central District of California. Doc. 1. She asserted diversity, pursuant to 28 U.S.C. § 1332(a), as the basis for subject matter jurisdiction. *Id.* ¶ 8. On October 23, 2019, the parties submitted a joint stipulation to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a). Doc. 22. The federal court in California granted that request, and the case was transferred to this District. Doc. 24, 25.

The following month, on November 15, 2019, TransPerfect filed a motion to dismiss the complaint on the grounds that there was no subject matter jurisdiction because Metcalf had not sufficiently alleged that the amount in controversy exceeded $75,000. Doc. 38. Metcalf subsequently amended her Complaint on December 19, 2019. Doc. 45. The First Amended Complaint ("FAC") added Lawson as a named plaintiff and additional TransPerfect entities as defendants. *Id.* ¶¶ 7–13. The FAC otherwise asserted substantially the same claims and again asserted diversity jurisdiction. *See generally* Doc. 45.

On December 10, 2019, TransPerfect filed a letter with the Court arguing that the addition of Lawson to the FAC divested the Court of diversity jurisdiction because both Lawson and TransPerfect are New York citizens. Doc. 50. Plaintiffs then filed the SAC on January 13, 2020, asserting jurisdiction based on the Class Action Fairness Act of 2005 ("CAFA"). ¶ 15. The SAC alleges that the amount in controversy exceeds $5 million, including the individual claims of a proposed class of more than 100 individuals. *Id.*

On January 27, 2020, TransPerfect moved to dismiss the SAC for lack of subject matter jurisdiction and for failure to state a claim.  Doc. 65.  In that motion, TransPerfect argued that exceptions to the exercise of CAFA jurisdiction applied to the case, specifically, the "local controversy" and "home state" exceptions.  *See* Doc. 66 at 5, 9–10.  TransPerfect further argued that the corporate affiliates of TransPerfect that were previously named as defendants should be dismissed as they were not plaintiffs' employers.[2]  *Id.* at 6.  On November 30, 2020, the Court denied TransPerfect's motion to dismiss for lack of subject matter jurisdiction but granted its motion to dismiss for failure to state a claim against the TransPerfect corporate affiliates.  *See generally* Doc. 83.  Accordingly, all corporate entities besides TransPerfect were dismissed.  *See id.* at 12–13.

Following a period of discovery and settlement discussions, TransPerfect filed another motion to dismiss on February 25, 2022, alleging that there is no factual basis to support the contention that the amount in controversy exceeds the $5 million threshold required by the CAFA.  Doc. 131–32.  On July 11, 2022, Judge Parker issued a report and recommendation, recommending that the Court deny the motion to dismiss in part, but dismiss plaintiffs' NYLL § 195(3) wage statement claims without prejudice due to their failure to adequately plead standing to bring those claims.  Doc. 171.

On July 25, 2022, plaintiffs moved for leave to amend the SAC to state claims pursuant to NYLL §§ 195(1) and (3).  Doc. 176.  The following month, on August 15, 2022, plaintiffs attached the PTAC, Doc. 190-2, as an exhibit to the declaration of Andrew C. White in support of the motion to amend, Doc. 190.

---

[2] These affiliates were TransPerfect Translations International, Inc., TransPerfect Global, Inc., TransPerfect Document Management, Inc., TransPerfect, Inc., and TransPerfect Remote Interpreting, Inc.

On September 30, 2022, the Court adopted the July 11, 2022 report and recommendation, Doc. 171.  Doc. 196.

On November 15, 2022, Judge Parker issued the R&R now before the Court, recommending that plaintiffs' motion be granted as to the NYLL § 195(3) claims, but denied as to the individual NYLL § 195(1) claims.  Doc. 197.  On November 29, 2022, TransPerfect objected to the R&R, but only insofar as it recommends that plaintiffs be allowed to reassert the § 195(3) claims.  Doc. 200.

### III.   STANDARD

#### a.  Reviewing a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Parties may raise "specific," "written" objections to the report and recommendation "[w]ithin fourteen days after being served with a copy."  *Id.*; *see also* Fed. R. Civ. P. 72(b)(2).  A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made.  28 U.S.C. § 636(b)(1)(C); *see also* United States v. Male Juv. (95–CR–1074), 121 F.3d 34, 38 (2d Cir. 1997).  The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record.  *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008).  The district court will also review the R&R for clear error where a party's objections are "merely perfunctory responses" argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition."  *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

### b. Leave to Amend

Rule 15 allows a party to amend its complaint pursuant to the other party's written consent or the court's leave. Fed. R. Civ. P. 15. Section 15(a)(2) provides that a "court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15. Motions to amend are ultimately within the discretion of the district court judge, *Foman v. Davis,* 371 U.S. 178, 182 (1962), who may deny leave to amend for "good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holes v. Grubman,* 568 F.3d 329, 334 (2d Cir. 2009) (quoting *McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 200 (2d Cir. 2007) (internal quotation marks omitted)). This is a permissive standard since the Federal Rules "accept the principle that the purpose of pleading is to facilitate a proper decision on the merits" of the case. *Conley v. Gibson,* 355 U.S. 41, 48 (1957).

An amendment to a pleading is futile if the proposed claim would not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Dougherty v. North Hempstead Bd. of Zoning Appeals,* 282 F.3d 83, 88 (2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F. 2d 119, 123 (2d Cir. 1991)). To withstand a motion to dismiss, the plaintiff must allege sufficient facts that, when accepted as true, state "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The party opposing the motion to amend bears the burden of proving the claim's futility. *See, e.g., Allison v. Clos-ette Too, L.L.C.,* 14 Civ. 1618 (LAK) (JCF), 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015).

The Second Circuit has held that leave to amend may be denied on the basis of futility when it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims." *Pangburn v. Culberston,* 200 F.3d 65, 71 (2d Cir. 1999) (citation and internal quotation marks omitted). In determining whether an amendment is futile, the court evaluates the amended

7

complaint "through the prism of a Rule 12(b)(6) analysis." *Henneberry v. Sumitomo* Corp. *of America*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006). Following this standard, courts accepts a plaintiff's factual allegations as true and draws reasonable inferences in favor of the plaintiff. *Id; See also Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

The trial court has broad discretion when ruling on a motion to amend, *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000), but generally, will not deny leave to amend based on futility unless the proposed amendment is clearly frivolous or legally insufficient. *See In re Ivan F. Boesky Sec. Litig.*, 882 F. Supp. 1371, 1379 (S.D.N.Y. 1995) (citation omitted). Beyond these considerations, the court does not need to consider the substantive merits of the plaintiff's claim on a motion to amend. *Id.*

IV.   **DISCUSSION**

   a.   **NYLL § 195(1)**

Plaintiffs do not object to Judge Parker's recommendation to deny them leave bring claims pursuant to NYLL § 195(1) as futile. In any event, the Court has reviewed the thorough and well-reasoned R&R and finds no error, clear or otherwise. The Court therefore adopts Judge Parker's recommendation to deny plaintiffs leave to amend the SAC to bring claims pursuant to NYLL § 195(1).

   b.   **NYLL § 195(3)**

TransPerfect objects to the determination of the R&R that plaintiffs have standing to litigate their NYLL § 195(3) claims because plaintiffs still have not adequately alleged an actual injury in fact.

At the motion to dismiss stage, the plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest" they have standing. *Calcano v. Swarovski N. Am. Ltd.*, 36

8

F.4th 68, 75 (2d Cir. 2022) (citation omitted).  Article III of the United States Constitution confines the judicial power of the federal courts to cases in which the plaintiff shows, *inter alia*, that she suffered a concrete injury in fact.  *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).  The Second Circuit has described the injury-in-fact requirement as "a low threshold." *John v. Whole Food Markets Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017).  An "injury in law," however, does not amount to an "injury in fact" for purposes of Article III standing.  *TransUnion*, 141 S. Ct. 2190 at 2205.  Rather, a "concrete" harm is something with at least a "'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms." *Id.* at 2200 (quoting *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340-41, (2016)).

In the R&R, Judge Parker held that the PTAC sufficiently alleges an injury in fact.  Doc. 197 at 9.  As discussed in the R&R, the PTAC pleads that by providing inaccurate wage statements that failed to disclose their straight time and overtime rates during a nine-month period when they were eligible for overtime pay, TransPerfect denied plaintiffs the information needed to determine:  (1) whether they were being underpaid, (2) by what amount, and (3) whether the retroactive payments adequately covered the overtime hours they worked.  *See* Doc. 197 at 4.  According to the R&R, such allegations suffice to show concrete injury at the pleading stage.[3]  *Id.* at 9 ("The allegations here plausibly suggest that had [TransPerfect] provided

---

[3] The R&R further noted that TransPerfect's "argument that [p]laintiffs' pleading is deficient because they did not also plead that they looked at their wage statements and relied on them is unpersuasive.  At the pleading stage, Plaintiffs need only allege facts that affirmatively and plausibly suggest standing." Doc. 197 at 9.  The Court agrees that it is premature to address the factual question of reliance at this early stage of litigation.

accurate notices and statements, [p]laintiffs . . . would not have gone underpaid for nearly nine months. No more is required.").

The R&R explained that while there have been several decisions post-dating *TransUnion* issued by courts in the Eastern District of New York that have dismissed plaintiffs' WTPA claims for failure to plead a concrete injury,[4] there is only one decision from a court in this District that has addressed this question, *Mateer v. Peloton Interactive, Inc.*, 22 Civ. 740 (LGS), 2022 WL 2751871 (S.D.N.Y. July 14, 2022). Doc. 197 at 7–8. There, the plaintiffs alleged that they were entitled to overtime pay for periods of their employment but that the defendant failed to provide accurate wage statements. *Id.*, at *2. Without accurate wage statements, the plaintiffs claimed that there was no way for them to accurately confirm that they were being paid properly, which ultimately resulted in them being underpaid. *Id.* The court ultimately denied the defendant's motion to dismiss, reasoning that

> [i]n contrast to technical violations of the WTPA that have been dismissed for lack of standing in some cases, *see, e.g., Francisco v. NY Tex Care, Inc.*, No. 19 Civ. 1649, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022), the allegations in the [complaint went] beyond asserting a bare statutory violation and sufficiently allege[d] [the] concrete harm that [the d]efendant's violation resulted in the underpayment of wages. . . .

*Id.* The *Mateer* court further emphasized that "monetary injury is a concrete harm sufficient for purposes of Article III standing." *Id.* (citing *TransUnion LLC*, 141 S. Ct. at 2204; *Imbarrato v. Banta Mgmt. Servs., Inc.*, No. 18 Civ. 5422, WL 1330744, at *9 (S.D.N.Y. Mar. 20, 2020) (rejecting a similar standing challenge to a WTPA claim because plaintiffs tied the defendants' failure to provide them with wage notices to a subsequent deprivation of adequate wages)).

---

[4] *See, e.g.*, *Sevilla v. House of Salads One LLC*, 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022); *Wang v. XBB, Inc.*, 2022 WL 912592, at *13 (E.D.N.Y. Mar. 29, 2022); *Francisco v. NY Tex Care, Inc.*, 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022).

10

In the R&R, Judge Parker deemed the instant action analogous to *Mateer* because like the plaintiffs in *Mateer*, plaintiffs here allege that the inaccurate wage statements provided by TransPerfect resulted in them being underpaid for nearly nine months.  Furthermore, Judge Parker noted that plaintiffs' allegations "are more robust than those in the Eastern District of New York cases, which asserted technical violations and did not specifically tie harm to" the violation.  Doc. 197 at 9.  Accordingly, the R&R recommends that the Court permit plaintiffs to bring the § 195(3) claims, as reflected in the PTAC.

TransPerfect, however, argues that plaintiffs have not adequately alleged that they suffered a concrete injury as a result of the inaccurate wage statements.  Doc. 200.  Specifically, TransPerfect argues that:  (1) permitting the claim to go forward runs contrary to *TransUnion* and the Second Circuit's holding in *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 –64 (2d Cir. 2021); (2) *Mateer* is inapposite; and (3) this action is more like decisions of numerous district courts in this Circuit that have dismissed WTPA claims for lack of standing.

As noted by plaintiffs, *see* Doc. 204 at 6, TransPerfect made many of these same arguments in its opposition to their motion to file the PTAC, *see* Doc. 181 at 8–11, which Judge Parker considered and rejected.  *See Genao v. United States*, No. 08 Civ. 9313 (RO), 2011 WL 924202, at *1 (S.D.N.Y. Mar. 16, 2011) ("In the event a party's objections . . . reiterate original arguments, the district court reviews the [R&R] for clear error.").  In any event, for the reasons set forth below, the Court finds each of these arguments unavailing.

The Supreme Court's decision in *TransUnion* illustrates the difference between an injury in fact and an injury in law.  There, a class sued a credit agency for violations of the Fair Credit Reporting Act after the agency mistakenly linked certain class members to a Treasury Department terrorist database.  141 S. Ct. at 2209, 2211–13.  Evaluating standing, the Supreme

11

Court concluded that class members whose misleading reports were actually disseminated by the agency to third-party businesses stated a concrete injury sufficient to establish standing. *Id.* at 2208. But by contrast, the Court held that the remaining class members—those whose misleading information was never actually disseminated to anyone—did not suffer a harm in fact; they suffered a "risk of future harm," which does not suffice to confer standing. *Id.* at 2209–11.

Plaintiffs in this case are similar to the subset of *TransUnion* class members whose erroneous information *was* shared and who *did* have standing. Plaintiffs here actually received inaccurate wage notices, which did not include a tabulation of hours and overtime, and which thereby prevented them from knowing whether, and to what extent, they had been underpaid during the nine-month period. Without a record of hours worked, plaintiffs have further remained unable to determine whether the remedial payments issued by TransPerfect have adequately compensated them for their overtime hours. Accordingly, the injury suffered by plaintiffs is not merely hypothetical. *TransUnion* therefore does not preclude the recommendation of the R&R, as TransPerfect contends.

Similarly, the R&R is in line with *Maddox*. 19 F.4th 58. There, the plaintiffs sued a bank for failing to record a satisfaction of a mortgage within thirty days in violation of New York law. 19 F.4th at 59–60. The Second Circuit reversed the district court's order denying the defendant-bank's motion for judgment on the pleadings, finding that the plaintiffs lacked standing. *Id.* at 66. Although the court noted that "delayed recording of a discharge of mortgage may create and sustain an actionable cloud on title to the property" and "result in the borrower having to pay a duplicative filing fee for the discharge," the plaintiffs alleged no such harms or even that they were at risk for such harms. *Id.* at 64. Similarly, the Second Circuit noted that "a

lender's delay in recording a mortgage satisfaction could cause the borrower "reputational harm" sufficient to create standing, but that plaintiffs did not allege any such injury either. *Id.* at 65. The Circuit further rejected the plaintiffs' argument that they were injured by the delay's effects on their credit during that time, which "ma[de] it difficult to obtain financing *had they needed it* in an emergency or for a new home," since "it [was] not alleged that this purported risk materialized." *Id.* (emphasis added). At its core, the *Maddox* decision, like the *TransUnion* decision, espoused the principle that the risk of hypothetical future harm does not suffice to confer standing.

Permitting plaintiffs' § 195(3) claims to go forward does not run counter to that principle. As noted, plaintiffs do not claim that they faced a theoretical risk of some intangible harm; they claim that they were *in fact* routinely provided with inaccurate and misleading information over the course of nine months, which prevented them from pursuing the full amount of compensation to which they were entitled. The Court agrees with Judge Parker that "monetary harm [of this kind] is a concrete injury sufficient to show standing." *See* Doc. 197 at 9 (citing *TransUnion*, 141 S. Ct. at 2190).

TransPerfect argues that *Mateer* is not analogous to the instant action because in that case, the plaintiff alleged that his paystubs co-mingled wages and commission credit and deduction amounts from prior pay periods, which prevented him from determining how much he was *actually* paid in any given pay period. Doc. 200 at 15–16. In contrast, TransPerfect asserts that here, plaintiffs knew precisely what they were being paid and do not allege that the information contained in their wage statements ever failed to reflect the actual payment amounts. *See* Doc. 200 at 16–17. The Court finds this argument unavailing, as irrespective of the confusing compensation methods used by the defendant in *Mateer*, the case stands for the

proposition that when an employer prevents a non-exempt employee from knowing the compensation that he has *earned* by failing to provide accurate wage statements, and the employee is actually underpaid by consequence, he has suffered an injury in fact. That is what plaintiffs allege here: for nearly nine months they did not know they were not receiving due compensation, and they were thereby prevented from obtaining their earned pay. What's more, plaintiffs allege that as a result of TransPerfect's WTPA violation, they remain unable to determine whether the remedial payments issued by TransPerfect are in fact adequate, since the wage statements provided during the nine-month period did not reflect the hours that they actually worked. Accordingly, the Court agrees with the R&R that *Mateer* is persuasive.

Lastly, the Court similarly agrees with the R&R, that the PTAC alleges more than the mere technical violations asserted by the plaintiffs in other district court cases that have dismissed WTPA claims for lack of standing. In contrast to plaintiffs' pleadings here, none of the plaintiffs in the cases cited by TransPerfect specifically tied a concrete injury to the WTPA violation and alleged that the injury would not have occurred but for the violation. *See, e.g.*, *Sudilovskiy v. City WAV Corp.*, 22 Civ. 469 (DG), 2022 WL 4586307, at *5 (E.D.N.Y. Sept. 29, 2022) (granting motion to dismiss WTPA claims when plaintiffs did not allege "that the wage underpayment would not have occurred, or would have been reduced, had plaintiffs received a proper wage notice or wage statements" and also failed to link any injury in fact to the WTPA violation); *Deng v. Frequency Electronics, Inc.*, No. 21 Civ. 6081 (BMC), 2022 WL 16923999, at *10 (E.D.N.Y. Nov. 14, 2022) ("Plaintiff's complaint contains no allegations that she was somehow injured merely because of the failure to provide the required notice and statements."); *Sevilla*, 2022 WL 954740, at *7 (noting that plaintiffs did not allege more than "[t]echnical statutory violations that do not lead to . . . a tangible injury") (marks and citations omitted);

14

*Pastrana v. Mr. Taco LLC.*, No. 18 Civ. 9374 (GBD) (SN), 2022 WL 16857111 (S.D.N.Y. Sept. 23, 2022) ("Plaintiffs [have not] identified an informational injury with consequences beyond this lawsuit."); *Wang*, 2022 WL 912592, at *13 ("Plaintiff has not linked any injury-in-fact to Defendants' failure to provide statutory notices under the NYLL."); *Francisco*, 2022 WL 900603, at *7 (same).

The Court agrees with the R&R that the PTAC makes "allegations [that] plausibly suggest that had [TransPerfect] provided accurate notices and statements, [p]laintiffs . . . would not have gone underpaid for nearly nine months," and would now be able to determine whether the retroactive payments are sufficient.[5]  Doc. 197 at 9.  For now, at the pleading stage, "[n]o more is required." *Id.*

---

[5] TransPerfect also references *Rosario v. Icon Burger Acquisition LLC*, for the proposition that under *Maddox*, allegations of a NYLL violation cannot confer standing when they contain "no facts from which the Court could plausibly conclude that plaintiff actually suffered the sort of harm that would entitle him to relief," absent "factual allegations that the plaintiff forewent the opportunity to invest or otherwise use the money to which he was legally entitled." No. 21 Civ. 4313 (JS) (ST), 2022 WL 198503, at *3 (E.D.N.Y. Jan. 21, 2022).  But *Rosario* did not involve wage notices; it involved a claim that the plaintiff had been paid biweekly instead of weekly. Critically, the *Rosario* court stressed that "the late payment of wages *can* constitute a concrete harm sufficient to confer standing on a plaintiff," quoting then-Circuit Judge Kavanaugh:  "Money later is not the same as money now."  *Id*; *see also Levy v. Endeavor Air Inc.*, No. 21 Civ. 4387 (ENV) (JRC), 2022 WL 16645829, at *3 (E.D.N.Y. Nov. 1, 2022) (noting that "the time value of money is real and concrete, and those courts have therefore found that wrongful deprivation of such time value is a concrete harm.").

## V. CONCLUSION

For the reasons set forth, the Court, having reviewed Magistrate Judge Parker's thorough and well-reasoned R&R, finds no error, clear or otherwise. The Court therefore adopts the R&R and denies the motion to amend as to the § 195(1) claims but grants it as to the § 195(3) claims. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 176.

It is SO ORDERED.

Dated:   March 29, 2023
        New York, New York

                                      Edgardo Ramos, U.S.D.J