**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

MICHELE METCALF and HANNAH
LAWSON, individually and on behalf of all
others similarly situated,

              Plaintiffs,

       - v -

TRANSPERFECT TRANSLATIONS
INTERNATIONAL, INC.,

            Defendant.

Case No.  1:19-cv-10104 (ER) (KHP)


**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TRANSPERFECT TRANSLATIONS INTERNATIONAL INC.'S MOTION TO PRECLUDE THE EXPERT REPORT AND ANY TESTIMONY OF PLAINTIFFS' EXPERT, DAVID BRESHEARS**


**DLA PIPER LLP (US)**
Daniel Turinsky, Esq.
(daniel.turinsky@dlapiper.com)
Garrett David Kennedy, Esq.
(garrett.kennedy@dlapiper.com)
1251 Avenue of the Americas, 27th Floor
New York, New York 10020
Tel.: (212) 335-4500
Fax: (212) 335-4501

*Attorneys for Defendant*
*TransPerfect Translations International Inc.*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...............................................................................................................................2

      I.      PLAINTIFFS' EXPERT'S REPORT FAILS TO MEET THE
            REQUIREMENTS FOR ADMISSIBLITY UNDER THE FEDERAL
            RULES OF EVIDENCE....................................................................... 2

            A.      Representative Evidence Cannot Be Utilized in This Case .........................2

            B.      Plaintiffs' Expert's Arbitrary Assumptions and Flawed Methods
                    Preclude the Admissibility of His Opinion Testimony...............................5

            C.      Plaintiffs' Expert Report Will Not Assist the Trier of Fact ........................8

      II.     THE CASES CITED BY PLAINTIFFS AS EXAMPLES OF BRESHEARS
            OVERCOMING DAUBERT MOTIONS ARE INAPPOSITE ............................ 8

      III.    PLAINTIFFS' COMPLAINTS REGARDING THEIR EXPERT'S
            PURPORTED NEED FOR ADDITIONAL DATA ARE MERITLESS ............. 10

CONCLUSION.........................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alix v. Wal-Mart Stores, Inc.*,
   16 Misc. 3d 844 (Sup. Ct. Albany Cty. 2007), *aff'd* 57 A.D.3d 1044 (3d Dept.
   2008) ...............................................................................................................3, 4

*Alves v. Affiliated Care of Putnam, Inc.*,
   2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022) ...........................................................7

*Bernstein v. Virgin Am., Inc.*,
   2016 WL 6576621 (N.D. Cal. Nov. 7, 2016) ...........................................................8, 9

*Campbell v. City of N.Y.*,
   2021 WL 826899 (S.D.N.Y. Mar. 4, 2021) ...........................................................7, 8

*Collinge v. IntelliQuick Delivery, Inc.*,
   2018 WL 1088811 (D. Ariz. Jan. 9, 2018) .................................................................9

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993).............................................................................................2, 5, 8

*EEOC v. Bloomberg L.P.*,
   2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010).............................................................8

*Espenscheld v. DirectSat USA, LLC*,
   705 F.3d 770 (7th Cir. 2013) .....................................................................................4

*Farmer v. DirectSAT USA, LLC*,
   2013 WL 1195651 (N.D. Ill. Mar. 22, 2013)..............................................................5

*Feinberg v. Katz*,
   2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007) ............................................................8

*Foster v. City of New York*,
   2018 WL 11323303 (S.D.N.Y. June 18, 2018) ..........................................................3

*Hart v. Rick's Caberet Int'l Inc.*,
   60 F. Supp. 3d 447 (S.D.N.Y. 2014)...........................................................................7

*Holick v. Cellular Sales of N.Y., LLC*,
   2019 WL 1877176 (N.D.N.Y. Apr. 26, 2019).............................................................3

*Jimenez v. Allstate Ins. Co.*,
   2019 WL 13088814 (C.D. Cal. May 13, 2019) ..........................................................6

*Lippe v. Bairnco Corp.*,
    99 F. App'x (2d Cir. 2004) ...........................................................................................5

*Murphy v. Lajaunie*,
    2018 WL 7968908 (S.D.N.Y. Feb. 2, 2018) ...........................................................7, 8

*Patsy's Italian Rest., Inc. v. Banas*,
    531 F. Supp. 2d 483 (E.D.N.Y. 2008) .........................................................................8

*Powell v. Carey Int'l, Inc.*,
    2007 WL 1068487 (S.D. Fla. Apr. 9, 2007) ...............................................................8

*Reich v. S. Md. Hosp., Inc.*,
    43 F.3d 949 (4th Cir. 1995) .........................................................................................3

*Reinig v. RBS Citizens, N.A.*,
    912 F.3d 115 (3d Cir. 2018).....................................................................................3, 4

*Smith v. Family Video Movie Club, Inc.*,
    2015 WL 1542663 (N.D. Ill. Mar. 31, 2015)..........................................................9, 10

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)......................................................................................................4

*Villalpando v. Exel Direct Inc.*,
    2016 WL 1598663 (N.D. Cal. Apr. 21, 2016) .............................................................9

Defendant TransPerfect Translations International Inc. ("TPT" or "Defendant") respectfully submits this reply memorandum of law in further support of its motion (the "Motion") to preclude the Expert Report of David Breshears, CPA/CFF (the "Expert Report") in connection with Plaintiffs' motion for class certification (ECF Nos. 215-219).

## PRELIMINARY STATEMENT

Plaintiffs attempt to minimize the Expert Report's glaring deficiencies by arguing that these issues go to the weight, not the admissibility of Breshears' opinion. The faulty assumptions and flawed methodology employed by Breshears are too significant to ignore, however, and should preclude the admissibility of the Expert Report and any related testimony for myriad reasons.

First, the Expert Report relies exclusively on a spreadsheet identifying the date and time of emails sent before 9:30 am or after 5:30 pm by six putative class members (out of 235) to determine working hours outside of the assumed (but incorrect) standard workweek of 8:30 am through 5:30 pm (which has no basis in any evidence whatsoever). This is an inherently unreliable basis for an expert report given that (i) the "standard workweek" is based on an assumption but is contrary to the evidence, (ii) Plaintiff Lawson and two putative class members testified that the timing of when emails were sent would not accurately reflect an individual's workday (Turinsky Decl. Ex. B at 323-324; Ex. C at 211; Ex. D at 272), and (iii) the spreadsheet includes references to numerous personal, non-work related emails (with subjects such as "Karaoke," "Doubles ping pong tournament," "Dear Evan Hansen," "Go meet dad," "Mets game tonight," and "bring home turkey burgers"), which Breshears improperly assumed were work-related based solely on the time when they were sent. For these reasons alone, the Expert Report should be excluded.

Second, while "minor flaws" in an expert's reasoning may not be sufficient to render the expert's opinions inadmissible, multiple "indicia of unreliability" will preclude admissibility. Breshears' flawed and speculative assumptions regarding a "standard work week" that are

1

contradicted by the evidence and calculations regarding work activity that grossly overestimate

hours worked constitute such "indicia of unreliability," which render Breshears' methodology

inherently unreliable and should foreclose the admission of his report and testimony.

Third, Breshears' past success surviving *Daubert* motions in unrelated cases is not a basis

to deny Defendant's motion here.  Indeed, Plaintiffs' citations to Breshears' prior "wins" are totally

inapposite, as none of those cases involved comparable facts or similarly deficient methodologies.

Finally, Plaintiffs' repeated complaints regarding the purported lack of relevant data are

meritless.  For example, Plaintiffs complain about only being given metadata for emails sent before

9:30 am or after 5:30 pm, but that is what they requested.  *See* ECF No. 93 ("Plaintiffs' Second

Requests for Production of Documents . . . seek, *inter alia*, metadata . . . identifying the date and

time of all emails Putative Class Members sent from the work email address *before 9:30 am or

after 5:30 pm*") (emphasis added).  Given that they chose to move for class certification without

seeking any additional discovery and repeatedly represented that they had all they needed to move

forward, it would violate basic principles of fairness to blame Defendant for Plaintiffs' intentional

failure to seek discovery they now claim to need for purposes of class certification.

Accordingly, as set forth herein and in our moving memorandum, Defendant respectfully

requests the Court preclude the Expert Report and any associated testimony.

## ARGUMENT

### I.     PLAINTIFFS' EXPERT'S REPORT FAILS TO MEET THE REQUIREMENTS FOR ADMISSIBLITY UNDER THE FEDERAL RULES OF EVIDENCE

#### A.     Representative Evidence Cannot Be Utilized in This Case

Plaintiffs contend that they intend to use Breshears' report solely "to calculate damages,"

and thus the "imperfect" nature of his report can be forgiven.  (Opp., pp. 1-2.)  This is misleading

as Plaintiffs offer Breshears' report to demonstrate ***liability*** as well as damages: liability is a two-

part analysis – were putative class members misclassified ***and*** did they work overtime? – and in their motion for class certification, Breshears' report is the ***only*** "evidence" proffered to show that putative class members (other than Plaintiffs) worked overtime.  *See, generally*, ECF No. 218; *Alix v. Wal-Mart Stores, Inc.*, 16 Misc. 3d 844, 850 (Sup. Ct. Albany Cty. 2007), *aff'd* 57 A.D.3d 1044 (3d Dept. 2008) (noting that plaintiffs confuse "the issue of calculating and apportioning damages with that of determining liability" and that "the question is not how much may be owing to each of the members of the proposed class; rather, the issue is whether the class consists of members who can, in good faith, assert a claim that they were injured by defendants' alleged misconduct").

The "imperfections" in Breshears' report are fatal, as classwide liability (and damages) cannot be shown through inferences drawn from unsupported assumptions.  For "representative evidence to satisfy the commonality and predominance requirements of Rule 23, that evidence ***must*** be sufficiently representative of the class as a whole such that each individual Plaintiff 'could have relied on the sample to establish ***liability if he or she had brought an individual action***.'" *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 128 (3d Cir. 2018) (emphasis added); *see also Reich v. S. Md. Hosp., Inc.*, 43 F.3d 949, 952 (4th Cir. 1995) (rejecting liability based on testimony from 1.6% of employee population where the class included various "departments, positions, time periods, shifts, and staffing needs"); *Holick v. Cellular Sales of N.Y., LLC*, 2019 WL 1877176, at *1 (N.D.N.Y. Apr. 26, 2019) (denying class certification because "Plaintiffs' disparate and highly individualized experiences with the Defendants are not conducive to the production of representative evidence"); *Foster v. City of New York*, 2018 WL 11323303, at *9 (S.D.N.Y. June 18, 2018) ("[W]here plaintiffs are not similarly situated, the testimony of a sample of the plaintiffs is not representative and cannot fairly be extrapolated to other employees[.]") (citation and internal quotation marks omitted)).  "Representative evidence that is statistically inadequate or based on

3

implausible assumptions could not lead to a fair or accurate estimate of the uncompensated hours an employee has worked." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016).

Plainly, an expert's report, founded on an assumption that finds no support in the record, is insufficient evidence to "establish ***liability if [the plaintiff] had brought an individual action***." *Reinig*, 912 F.3d at 128. For instance, in *Alix v. Wal-Mart Stores, Inc.*, 16 Misc.3d at 854-55, the court found, *inter alia*, that "the facts and circumstances surrounding the allegedly unpaid work vary substantially from associate to associate" such that an expert opinion based on statistical sampling could not substitute for individualized proof. The court explained that whether an employee performed work "prior to punching in or after punching out on any given day can only be determined by individualized inquiry" and that "fundamental fairness would counsel in favor" of permitting the defendant "to offer numerous individualized, employee-specific defenses as to liability and damages." *Id.* at 857; *see also Espenscheld v. DirectSat USA, LLC*, 705 F.3d 770, 774-75 (7th Cir. 2013) (holding that "evidence of the experience of a small, unrepresentative sample" of employees could not support an inference about the work time of the entire class, as doing so "would require that all [class members] have done roughly the same amount of work, including the same amount of overtime work, and had been paid the same wage").

Here, Plaintiffs and other putative class members were not subject to a uniform classwide schedule. Rather, it is undisputed that individual managers set different schedules for departments, or even for groups within departments. Supplemental Declaration of Daniel Turinsky ("Turinsky Decl."), Ex. A at 67:2-11, 192:21-196:2, 199:17-200:4; Ex. B at 226:25-228:25; 290:15-291:17; 294:3-17; Ex. C at 223:23-224:2, 225:12-226:9; Ex. D at 105:14-23, 216:3-10, 220:12-15. Moreover, putative class members in certain departments or roles never worked more than 40 hours in a week. Declaration of Jonathan Van Lunsen ¶¶ 5-6; Declaration of Carol Chuang ¶ 16;

Turinsky Decl. Ex. F; Ex. G; Ex. H.  Under such circumstances, the "representative" evidence offered by Breshears is not appropriate because it is premised on an individualized, employee-by-employee analysis, which is the antithesis of evidence relevant to a class certification motion.

**B.      Plaintiffs' Expert's Arbitrary Assumptions and Flawed Methods Preclude the Admissibility of His Opinion Testimony**

While "'a minor flaw in an expert's reasoning . . . will not render an expert's opinion *per se* inadmissible,'" the presence of multiple "indicia of unreliability" will.  *Lippe v. Bairnco Corp.*, 99 F. App'x, 274, 279 (2d Cir. 2004) (citation omitted).  Examples of "indicia of unreliability" include an expert's "inability to explain a number of variables and assumptions used in his analysis," failure to independently verify information provided by counsel, and errors in the expert's analysis.  *Lippe*, 99 F. App'x, at 279.  As the Supreme Court noted, "[e]xpert evidence can be both powerful and quite misleading . . . ."  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 595 (1993).  Accordingly, "[a]lthough 'shaky' expert testimony may be admissible . . . unreliable testimony is inadmissible."  *See Farmer v. DirectSAT USA, LLC*, 2013 WL 1195651, at *8-*9 (N.D. Ill. Mar. 22, 2013) (excluding expert testimony because the data upon which the expert relied "would not provide a representative sample from which [he] could reliably draw classwide conclusions" and the assumption regarding hours worked based on GPS data for vans used by service technicians was "fatally flawed" because "a technician could have engaged in 'any number' of non-work related activities between the van's first and last movement").

Here, the Expert Report is replete with examples of indicia of unreliability.  ***First***, Breshears assumes a "standard work week" of 8:30am to 5:30pm with one hour for lunch, without any evidence of such a common work schedule or explanation for extrapolating this assumption across the putative class – much less why he ignored contradictory testimony that schedules varied and were set by direct managers independently.

*Second*, Breshears was "asked to assume" not only the parameters of the "standard work-week," but also assumed additional hours worked based on the unsubstantiated supposition that email activity within 30 minutes of other email activity outside of the "standard workweek" constituted continuous work time.  Several putative class members testified that this was not an accurate way to determine working time.  Turinsky Decl. Ex. B at 323:22-324:1; Ex. C at 211:13-20; Ex. D at 272:2-9.  Moreover, the spreadsheet Breshears reviewed to prepare his report includes references to numerous personal emails (with subjects such as "Karaoke," "Doubles ping pong tournament," "Dear Evan Hansen," and "bring home turkey burgers").  *See* Turinsky Decl. Ex. I. This demonstrates the unreliability of Breshears' methodology, which presumes – despite evidence to the contrary – that sending e-mails outside of work hours means one is engaging in work.

*Third*, Breshears' calculations yield inaccurate and erroneous results.  Specifically, his use of the "standard workweek" floor, combined with (i) the absence of any mechanism to account for situations where employees do not work the "standard schedule" and (ii) the arbitrary 30-minute email activity interval, grossly overestimates hours worked for employees who (1) worked schedules other than the "standard schedule" (*e.g.*, if they worked 8:00am – 5:00pm with an hour lunch or 9:30 – 6:00 with a half-hour lunch); or (2) sent emails outside of the "standard work week" which were either not work-related or not part of continuous compensable work activity.[1]

*Finally*, Breshears ignored evidence inconsistent with his assumptions.  For example, evidence reflects that Peter Till (one of six individuals identified in Breshears' report) never worked overtime in 2019.  *See* Turinsky Decl., Ex. G.  Indeed, when managers were asked to

---

[1] Nor is there an easy cure for the deficiencies in the Expert Report.  For instance, Plaintiffs have proposed a survey of class members to allow them to identify their work hours, but (i) this plainly implicates a person-by-person analysis inconsistent with class certification, and (ii) would itself be inherently unreliable, as such surveys are necessarily subject to myriad biases.  *See, e.g.*, *Jimenez v. Allstate Ins. Co.*, 2019 WL 13088814, at *21 (C.D. Cal. May 13, 2019) (explaining that a survey of work hours necessarily suffers from, *inter alia*, recall bias and self-interest bias).

provide estimates for overtime worked by their teams, several departments reported zero overtime worked in 2019.  Turinsky Decl. Ex. E at 121:12-16.  Breshears' report ignores this evidence.

The flaws in Plaintiffs' expert's analysis are not "minor."  His analysis is contradicted by the facts and based on implausible assumptions that cannot lead to a fair or accurate estimate of uncompensated hours purportedly worked by putative class members.

In their opposition, Plaintiffs cite *Alves v. Affiliated Care of Putnam, Inc.*, 2022 WL 1002817 (S.D.N.Y. Mar. 30, 2022), for the proposition that where an expert's assumptions are not speculative or made in bad faith, "contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony."  Here, however, Breshears' assumptions ***are*** speculative and therefore inadmissible.  Moreover, in *Alves* the expert "extensively outlined his process and the reasoning behind his conclusions, including how he dealt with absurd results stemming from missing values in the [data]." *Id.* at *8.  Breshears adopts arbitrary assumptions (*e.g.*, a classwide standard workweek) and sweeping conclusions (*e.g.*, applying his methodology classwide while ignoring the varied schedules and responsibilities of different groups of putative class members) without addressing how his methodology accurately accounts for potentially illogical results.

Similarly, Plaintiffs' reliance on *Hart v. Rick's Caberet Int'l Inc.*, 60 F. Supp. 3d 447 (S.D.N.Y. 2014), is misplaced.  In *Hart*, the court found that most of the expert's assumptions were "conservative" and "redound[ed] to defendants' benefit" because he "broadly excluded categories of data based on his concerns about their potential unreliability." *Id.* at 466.  By contrast, Breshears makes numerous assumptions that ignore competent evidence and contains arbitrary conclusions that benefit only Plaintiffs.  And, unlike the putative class here, all putative class members in *Hart* occupied the same role with similar schedules and responsibilities.[2]

---

[2] Plaintiffs' citation to *Campbell v. City of N.Y.*, 2021 WL 826899 (S.D.N.Y. Mar. 4, 2021), and *Murphy v. Lajaunie*, 2018 WL 7968908 (S.D.N.Y. Feb. 2, 2018), is unavailing.  In *Campbell*, the expert assumed that plaintiffs worked

###### C.       Plaintiffs' Expert Report Will Not Assist the Trier of Fact

"[E]xpert testimony must be both relevant **and** reliable," *Feinberg v. Katz*, 2007 WL

4562930, at \*6 (S.D.N.Y. Dec. 21, 2007) (emphasis added), and thus, "the court should only permit

testimony that is based on 'more than subjective belief or unsupported speculation.'"  *Patsy's*

*Italian Rest., Inc. v. Banas*, 531 F. Supp. 2d 483, 485 (E.D.N.Y. 2008) (citation omitted).  If an

expert's methodology is unreliable, the opinion will not assist the trier of fact and should be

excluded.  *See, e.g.*, *EEOC v. Bloomberg L.P.*, 2010 WL 3466370, at \*17-18 (S.D.N.Y. Aug. 31,

2010) (holding that "proposed expert testimony is the result of an unreliable methodology and will

not assist the trier of fact"); *Powell v. Carey Int'l, Inc.*, 2007 WL 1068487, at \*4 (S.D. Fla. Apr.

9, 2007) (excluding expert testimony where the expert's "opinion [was] fundamentally flawed"

and would not "aid a trier of fact in determining how much Plaintiffs are owed in unpaid wages").

Here, Breshears' report is based upon an unreliable methodology to undergird his opinion

and conclusions.  His dubious conclusions will not assist the trier of fact and should be excluded.

## II.      THE CASES CITED BY PLAINTIFFS AS EXAMPLES OF BRESHEARS OVERCOMING *DAUBERT* MOTIONS ARE INAPPOSITE

Plaintiffs cite several previous actions where Breshears' testimony was not excluded.

However, each of these matters is readily distinguishable.

In *Bernstein v. Virgin Am., Inc.*, 2016 WL 6576621 (N.D. Cal. Nov. 7, 2016), the plaintiffs

sought to certify a class of flight attendants.  Breshears relied primarily upon flight schedule

activity and earnings statements for the named plaintiffs.  The time each plaintiff spent on duty

was "relatively simple" to calculate because there was "a uniform policy" requiring "flight

---

during "uncompensated" time shown in the timekeeping platform data.  *Id.* at \*3.  Here, Plaintiffs have not identified any such periods of "uncompensated" time that they worked.  Additionally, unlike here, the class in *Campbell* was comprised of individuals with similar roles.  *Murphy* involved a motion for default judgment where plaintiffs used "samples from or averages derived from the records" defendants produced to calculate damages.  It is not remotely comparable to this case where Breshears assumed a standard work schedule and ignored all contradicting evidence.

attendants to report for duty one hour before the scheduled departure and to remain on duty until fifteen minutes after their last flight lands." *Id.* at *5.  By contrast, Breshears' assumptions here are unsupported by any uniform policy.  Additionally, unlike in this case, the class in *Bernstein* was limited to employees in a single role with common responsibilities.

In *Collinge v. IntelliQuick Delivery, Inc.*, 2018 WL 1088811 (D. Ariz. Jan. 9, 2018), the class included delivery drivers.  The defendant challenged certain assumptions made by Breshears in his estimate of hours worked, including his use of "drop off" time and "due times" as proxies for driver activity and hours worked, and that drivers took no breaks during the driving periods.  *Id.* at *4-5.  Those assumptions, while imperfect, were adequate proxies given the circumstances and were consistent with driver testimony.  *Id.* at *5-6.  Here, however, Breshears' assumptions regarding a common classwide schedule are contrary to the record, and the putative class members occupy numerous different roles with varied responsibilities, unlike in *Collinge*.

Similarly, in *Villalpando v. Exel Direct Inc.*, 2016 WL 1598663 (N.D. Cal. Apr. 21, 2016), the putative class included "[a]ll individuals who have personally provided services for Defendant . . . as independent contractors."  *Id.* at *1.  The assumptions in Breshears' report were based on a recruiting document describing the typical work schedule for the individuals classified as independent contractors and deposition testimony from managers.  *Id.* at *19-20.  By contrast, in this matter, Breshears' assumptions were provided by Plaintiffs' counsel and are contrary to deposition testimony and documentary evidence.  Indeed, there is no "typical work schedule" common to all members of the putative class in this matter.

Finally, *Smith v. Family Video Movie Club, Inc.*, 2015 WL 1542663, at *5 (N.D. Ill. Mar. 31, 2015), is inapposite because there Breshears was "not offering testimony regarding all Plaintiffs' specific damages in the collective action" but rather intended "to offer testimony that

9

damages can be calculated by plugging variables into a single formula." Here, unlike in *Smith*, Breshears seeks to conduct an individualized, person-by-person analysis of email metadata to determine hours worked, which is completely inconsistent with the purposes for which the Expert Report is offered, namely to show liability and damages on a classwide basis.[3]

In short, Breshears' success in surviving challenges to his methodologies and conclusions in other matters have no bearing on this case, where the facts – and Breshears' flawed assumptions – are distinct from these other cases in which he served as an expert witness.

## III.   PLAINTIFFS' COMPLAINTS REGARDING THEIR EXPERT'S PURPORTED NEED FOR ADDITIONAL DATA ARE MERITLESS

Plaintiffs argue that to the extent Breshears draws imperfect conclusions, Defendant is to blame because it failed to produce more comprehensive data in discovery. However, Plaintiffs elected to move for class certification with the evidence available to them and represented that they did not require further discovery before so moving. It would be unfair to excuse the deficiencies in the Expert Report based on Defendant's alleged failure to provide adequate discovery, when Plaintiffs chose not to seek any such discovery before filing their motion.

## CONCLUSION

Defendant respectfully requests that the Court preclude the Expert Report and any associated testimony, and grant such other and further relief as the Court deems just and proper.

---

[3] In at least one case, a report prepared by Breshears was withdrawn in response to a motion to strike. *See Strauch v. Computer Scis. Corp.*, No. 3:14-cv-956-JBA (D. Conn. Dec. 5, 2018), attached hereto as Ex. J.

10

Dated: New York, New York
      August 10, 2023

                                          **DLA PIPER LLP (US)**

                                          By: /s/ Daniel Turinsky

                                          Daniel Turinsky, Esq.
                                          Garrett D. Kennedy, Esq.
                                          1251 Avenue of the Americas
                                          New York, New York 10020
                                          Tel.:   (212) 335-4500
                                          Fax:   (212) 335-4501
                                          daniel.turinsky@dlapiper.com
                                          garrett.kennedy@dlapiper.com

                                          *Attorneys for Defendant*
                                          *TransPerfect Translations International Inc.*