


**DLA Piper LLP (US)**
1251 Avenue of the Americas
27th Floor
New York, New York 10020-1104
www.dlapiper.com

Daniel Turinsky
Daniel.Turinsky@dlapiper.com
T 212.335.4566
F 917.778.8631

September 15, 2023

**VIA ECF**

Hon. Katharine H. Parker
United States Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

**Re: *Metcalf v. TransPerfect Translations Int'l Inc.*, No. 1:19-cv-10104 (ER) (KHP)**

Dear Judge Parker:

We represent Defendant TransPerfect Translations International Inc. ("Defendant" or "TransPerfect"). We write in response to the letter from Plaintiffs Michele Metcalf and Hannah Lawson ("Plaintiffs") dated September 12, 2023 (ECF No. 272), requesting a pre-motion conference. We oppose Plaintiffs' request for a classwide survey because it is premature and because any such survey would be inherently biased and unreliable. We also oppose Plaintiffs' request for the issuance of an amended protective order because Plaintiffs fail to present any evidence supporting such an extreme remedy. Finally, the information requested in Plaintiffs' Fourth Request for Production is beyond the scope of permissible precertification discovery.

## I. A Classwide Survey Is Premature and Will Not Aid in Estimating Damages

Initially, a classwide survey is premature as it presumes that Plaintiffs' pending motion for class certification has been granted and a class has been certified. Even if the Court grants the motion, in whole or in part, such a survey is unlikely to be helpful in estimating accurate damages. It would be inherently biased, as putative class members (1) are likely to respond only if they actually worked overtime hours; (2) are unlikely to recall accurately hours worked more than four years ago, but are likely to inflate their work hours worked and rely on outlier weeks as their "standard" worktime; and (3) will have a financial self-interest to overreport their overtime hours worked, particularly if their response will not be subject to cross examination.

Courts have recognized the inherent unreliability of surveys of putative class members. *See Littler v. Ohio Ass'n of Pub. Sch. Employees*, 2020 WL 1861646, at *14-15 (S.D. Ohio Apr. 14, 2020) (rejecting survey due to concerns regarding memory, accuracy, and putative class members' incentive to lie for financial advantage); *Jimenez v. Allstate Ins. Co.*, 2019 WL 13088814, at *17-26 (C.D. Cal. May 13, 2019) (excluding expert evidence based on survey of putative class members due to non-response bias, design and methodology concerns, recall bias,






and self-interest bias); *Chen-Oster v. Goldman, Sachs & Co.*, 114 F.Supp.3d 110, 124 (S.D.N.Y. 2015) (noting "significant danger of reporting bias" with expert's survey methodology).[1]

Numerous studies have recognized that workers tend to overestimate hours worked when asked to estimate same through a survey. *See, e.g.,* Robinson J., Martin, S. "The overestimated workweek revisited," Monthly Labor Review, June 2011, pp. 43-53; Robinson, J., Bostrom, A., "The overestimated workweek? What the time diary measures suggest," Monthly Labor Review, August 1994, pp. 11-23. In these studies, the researchers found that employees who participated in surveys conducted only weeks after the time worked (as opposed to years afterward, as here) overestimated their work hours, often materially. Here, this would be more than enough to result in a faulty finding of liability or damages where none exists. Additionally, given the small sample size here, the resulting data is unlikely to be statistically significant, an issue further compounded by a potential low return rate. *See, e.g.,* Diamond, S.S. "Reference Guide on Survey Research," in *Reference Manual on Scientific Research*, Second Edition: Federal Judicial Center, 2000, p. 245 (2000) (a less-than 50% return rate would be insufficient to allow for a precise analysis).

Moreover, the purpose of the survey remains unclear. Plaintiffs claim to want a survey "to determine damages," but such a survey will only collect individualized information concerning hours worked from those class members who respond. It could not be used to estimate a workweek across the class, given that the class is split across numerous departments and dozens of managers, each of whom set their own schedule. Where a putative class must rely on individualized evidence to establish "the existence of an injury and the amount of damages," class certification is inappropriate. *See Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 468-71 (9th Cir. 2023) (reversing grant of class certification where "individualized questions and the absence of representative evidence" concerning injury and damages predominated over common questions).

In lieu of Plaintiffs' proposed survey of putative class members, Defendant has suggested a survey of managers for the various groups subsumed within the putative class during the operative period which would request information regarding the schedule(s) regularly worked by the members of each manager's team/group/department, and whether and how often members of the applicable team/group/department worked more than 40 hours per week. Notably, during the June 2023 status conference, Your Honor expressly suggested that the parties engage in targeted discovery regarding the schedule in each of the various departments covered within the putative class. *See* Status Conf. Tr. at 21:23-22:5 ("You know the departments that these 220 people were in; right? And so maybe if you already have declarations from a couple of the people – department

---

[1] Plaintiffs' cited authority in support of the issuance of a survey is inapposite. The survey in *Melgar v. CSK Auto, Inc.*, 2015 U.S. Dist. LEXIS 1030 (N.D. Cal. Jan. 6, 2015), asked putative class members specific, binary questions about driving personal vehicles to work before moving for class certification, whereas Plaintiffs propose an open-ended inquiry regarding hours worked after filing a class certification motion. And in *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 225 (2d Cir. 1999), the surveys at issue included qualitative survey questions to physicians regarding marketing presentations by pharmaceutical representatives. Neither case has any relevance here.





heads, maybe – maybe there's a little discovery just on what was the practice in those departments. That might even clarify if – what departments, what people may have worked over 40 and narrow any class that might be certified."). A survey of managers would accomplish this objective.

## II. <u>There Is No Basis for Issuance of a Protective Order</u>

Plaintiff's proposed protective order seeks to prohibit Defendant from communicating with putative class members. First Amendment principles militate that a court may not restrict such communications absent a "clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties," and any restriction entered must "result in a carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101-102 (1981); *see also Julian v. MetLife, Inc.*, 2021 WL 3887763, at *2 (S.D.N.Y. Aug. 31, 2021) ("Courts have the power under Rule 23 to restrict counsels' communication with potential class members, but that power is limited to situations where there have been specific findings of serious abuses, and any potential remedy must be weighed against the parties' rights to free speech").

Plaintiffs' feigned concerns over potential "coercive communications" are wholly unfounded. They cite TransPerfect's implementation of its arbitration program and issuance of backpay to certain employees, but the arbitration program was in response to a U.S. Supreme Court decision, not this litigation, and remitting backpay to certain putative class members was an attempt to make them whole. Moreover, Plaintiffs' proposed Protective Order is designed to give them an improper litigation advantage, as it creates materially different scopes of permissible communication with class members: Defendant could not communicate with class members regarding the survey at all, while Plaintiffs would only be so limited while the survey is being "prepared or conducted," permitting free discussions about the survey and its purpose prior thereto.

## III. <u>The Information Sought Is Beyond the Scope of Precertification Discovery</u>

Precertification discovery need not be produced where it does not bear on issues regarding "whether a suit should proceed as a class action under Rule 23, such as numerosity, common questions, and adequacy of representation." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) (at the precertification stage, discovery is generally limited to certification issues). Thus, discovery requests seeking detailed personal information of class members are inappropriate before class certification. *See, e.g.*, *Jenkins v. TJX Cos., Inc.*, 2011 WL 1563677 (E.D.N.Y. Apr. 25, 2011) (denying request for contact information of putative Rule 23 class members as "premature"); *Charles v. Nationwide Mut. Ins. Co.*, 2010 WL 7132173, at *4, *8 (E.D.N.Y. May 27, 2010) (denying motion to compel names and contact information of putative class members because such precertification discovery was premature and plaintiff failed to explain why it was relevant). Plaintiffs should not be permitted to circumvent the discovery rules and obtain detailed personal information regarding putative members of an as-yet-uncertified class.

In sum, Plaintiffs' proposed survey is not appropriate here and the information sought in Plaintiffs' Fourth RFP is beyond the scope of permissible pre-certification discovery.





Respectfully submitted,

**DLA Piper LLP (US)**

*/s/ Daniel Turinsky*

Daniel Turinsky