UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELE METCALF *and*
HANNAH LAWSON, *individually
and on behalf of all others similarly
situated*,

                Plaintiffs,

– against –

TRANSPERFECT TRANSLATIONS
INTERNATIONAL INC.,

                Defendant.

**OPINION & ORDER**

19-cv-10104 (ER)

RAMOS, D.J.:

    Michele Metcalf and Hannah Lawson ("Plaintiffs") bring this putative class action alleging that TransPerfect Translations International, Inc. ("TransPerfect") violated provisions of New York labor law. Specifically, Plaintiffs allege that TransPerfect failed to pay them and other similarly situated employees overtime pay between December 31, 2018 and September 2019[1] (the "Relevant Period") in violation of New York City regulations,[2] and failed to provide them with accurate wage statements pursuant to New York Labor Law ("NYLL") § 195(3). Doc. 211 (Third Amended Complaint, hereinafter "TAC").

    On November 6, 2023, Magistrate Judge Katherine H. Parker, to whom the motion to certify the class action was referred, issued a Report and Recommendation ("the R&R"), recommending that the Court grant in part and deny in part the motion. Doc. 282. Specifically, Judge Parker recommended that the Court certify a narrower class than Plaintiffs proposed: "all TransPerfect salaried employees in New York City

---

[1] Plaintiffs do not specify when in September 2019 the proposed class period ends. *See* Doc. 218 at 13 ("Plaintiffs bring this action on behalf of all of TransPerfect's salaried employees who worked over forty hours per week in its New York City offices between December 31, 2018 and September 2019[.]").

[2] *See* 12 N.Y.C.R.R. § 142-2.2

who were paid $1,125.00 per week or less during the Relevant Period who did not sign Arbitration Agreements." Doc. 282 at 1.

Before the Court are the parties' objections to the R&R, as well as their respective responses. Docs. 288, 290, 294–295. For the reasons set forth below, the Court ADOPTS the R&R in its entirety.

## I. BACKGROUND[3]

### a. Factual History

TransPerfect is a corporate language services provider with its principal place of business in New York. TAC ¶ 9. Metcalf and Lawson each worked at TransPerfect's New York City office for various months in 2018 and 2019. TAC ¶¶ 14–15. Metcalf worked as a client services manager, Lawson as a project manager. *Id.* Both earned a weekly salary of less than $1,125 and regularly worked more than forty hours per week. *Id.* Metcalf and Lawson bring this action on behalf of themselves and TransPerfect salaried employees who were compensated less than $1,125 per week while working overtime in the New York City office between December 31, 2018 and September 2019. TAC ¶ 26.[4]

Pursuant to New York City regulations, employers are not required to pay overtime—the pay due to an employee when they work over 40 hours in a work week—to bona fide executive, administrative, or professional employees provided that their weekly pay meets or exceeds a certain minimum threshold. 12 N.Y.C.R.R. § 142-2.2; TAC ¶ 18. During the Relevant Period, that minimum threshold was $1,125 per week. TAC ¶¶ 1–2.

---

[3] The Court assumes familiarity with the background of this case and includes only those facts relevant to this motion. *See, e.g.*, Doc. 196, the Opinion and Order issued on September 30, 2022; Doc. 209, the Opinion and Order issued on March 29, 2023; Doc. 282, and the R&R issued on November 13, 2023.

[4] The TAC, which was filed on November 29, 2022, states the class period is from "December 31, 2018 to the present." ¶ 26. In their papers in support of the motion for class certification, Plaintiffs clarify that they propose a class period from December 31, 2018 and September 2019. *See* Doc. 218 at 13.

2

Section 195(3) of the NYLL requires employers to furnish employees who are not exempt from overtime compensation—that is, employees who make less than $1,125 per week—with a wage statement that is required to include the employee's regular hourly rate(s) of pay, overtime rate or rates of pay, number of regular hours worked, and number of overtime hours worked.  TAC ¶ 21; NYLL § 195(3).

When hired, Metcalf and Lawson were exempt from overtime compensation because, at the time, they earned a salary that exceeded the minimum threshold under New York law.  Accordingly, their wage notices provided them with only their base salary amount.  However, a change in New York law effective January 1, 2019 increased the base salary amount needed to categorize an employee as exempt from overtime to $1,125.  *See* 12 N.Y.C.R.R. § 142-2.2; TAC ¶ 18.  Plaintiffs therefore assert that they became non-exempt, as their salaries remained below $1,125 per week after the effective date.  TAC ¶ 18.  TransPerfect did not thereafter notify Plaintiffs of their change in status or provide them with their regular hourly and overtime rates of pay, or pay them for any overtime after they became non-exempt, as required by New York Law.  TAC ¶¶ 19, 20, 23.

On August 28, 2019, more than eight months after the change in law, Metcalf brought this putative class action against TransPerfect Global, Inc., a different TransPerfect entity than the defendant, alleging violations of the NYLL.[5]  Doc. 1. Sometime in September 2019, TransPerfect allegedly[6] realized that the salaries of some of their employees'—including Plaintiffs—fell below the threshold requirements to maintain their exempt status.  Doc. 282 at 7.  It issued retroactive salary increases to certain employees, including Plaintiffs, to raise their salaries up to $1,125 per week, in

---

[5] Specifically, Metcalf alleged failure to provide overtime pay and failure to provide proper wage statements.  Doc. 1 ¶¶ 30–48.

[6] Plaintiffs dispute that Defendants only learned about the change in law at that time. *See* Doc. 290 at 12 n.5.

3

order to meet the new salary threshold. *Id*. at 3,7. TransPerfect also reclassified some employees to hourly workers who would, going forward, be eligible for overtime pay. *Id*. at 7.

In connection with receipt of the retroactive pay increase, TransPerfect requested that employees sign an acknowledgment form stating that they had been paid all wages that they were due (the "Acknowledgement Form"). Doc. 225 ¶ 18. One hundred and twenty employees signed the Acknowledgement Form, although the Plaintiffs did not. *Id*. ¶¶ 18–19.

On November 26, 2019, three months after this action was filed, TransPerfect implemented a company-wide arbitration policy and asked their employees to sign an arbitration agreement (the "2019 Arbitration Agreement"). *Id*. ¶ 20. TransPerfect concedes that it did not inform its employees of the instant lawsuit when it asked its employees to sign the Agreement. Doc. 282 at 9. Relevant portions of the 2019 Arbitration Agreement provide that:

- "Employer and Employee agree that any claim, complaint, or dispute that arises out of or relates in any way to the Parties' employment relationship or termination of that relationship shall be submitted to binding arbitration before a single arbitrator . . . administered by Judicial Arbitration and Mediation Services, Inc. . . . . The Claims covered by the Agreement include, but are not limited to, claims related to wages, hours worked, or other compensation or benefits due, and any claims arising under the or relating to the Fair Labor Standards Act or the New York Labor Law[.]" Doc. 225-5 ¶¶ 2–3.

- "The Arbitrator, and not any federal, state, or local court, shall have exclusive authority to resolve any disputes relating to the enforceability or formation of this Agreement and the arbitrability of disputes between the Parties." *Id*. ¶ 2.

- "<u>Waiver of Class and Collective Action and Representative Action Claims</u>. Employee and Employer expressly intend and agree that any and all disputes hereunder shall be brought solely on an individual, and not on a class, collective or representative basis. Specifically, Employee and Employer expressly intend and agree that: . . . neither Employer or Employee will assert collective action or representative action claims against the other in arbitration or otherwise[.]" *Id*. ¶ 4.

4

While Plaintiffs did not sign the 2019 Arbitration Agreement, approximately 101 putative class members did. Doc. 282 at 9.

In April 2023, TransPerfect reissued the arbitration agreement to employees who had not previously agreed to it in 2019 (the "2023 Arbitration Agreement). Doc. 282 at 9; Doc. 225-6. The 2023 Arbitration Agreement was nearly identical to the 2019 version. As relevant here, the 2023 version includes the same clauses excerpted above from the original 2019 Arbitration Agreement. *Compare* Doc. 225-5 ¶¶ 2–4 *with* Doc. 225-6. ¶¶ 2–4. The 2023 Arbitration Agreement did, however, explicitly advise employees of existence of the instant lawsuit, and further informed employees that by entering into the Agreement, "Employee knowingly and voluntarily waives Employee's right to participate as a class member" in this action. Doc. 225-6 ¶ 4. Neither of the named Plaintiffs signed the 2023 Arbitration Agreement, but eleven of the putative class members did. Doc. 282 at 9.

b. *Procedural History*

When Metcalf first filed this putative class action on August 28, 2019, it named as the defendant TransPerfect Global, Inc., a different TransPerfect entity than the defendant, and it was filed in the Central District of California. Doc. 1. The putative class members were defined as "all of Defendant's Client Services Associates and Senior Client Services Executives who worked in Defendant's New York, New York offices from December 31, 2018 to the present." Doc. 1 ¶ 1. At the time the initial complaint was filed, counsel for Metcalf "mistakenly believed that [the class members] were employed by TransPerfect Global, Inc. and shared the same job title as [] Metcalf[.]" Doc. 290 at 13–14.

During their initial discussions with counsel for TransPerfect Global, Inc., counsel for Metcalf became aware that TransPerfect Global, Inc. did not employ any of the putative class members, who were in fact employed by different TransPerfect entities. Doc. 290 at 14, Doc. 282 at 8–9. On October 3, 2019, counsel for Metcalf informed

counsel for TransPerfect Global, Inc., that they intended to file an amended complaint. Doc. 290 at 14.  On October 23, 2019, the parties submitted a joint stipulation to transfer the case to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).  Doc. 22. The federal court in California granted that stipulation and the case was transferred to this District.  Docs. 24, 25.

On December 9, 2019, counsel for Plaintiffs filed the amended complaint, which added Lawson as a plaintiff, employed a broader class definition that included "all of Defendants' salaried employees being compensated at less than $1,125.00 per week," and named as defendants TransPerfect Global, Inc., TransPerfect Translations International, Inc., TransPerfect Document Management, Inc., TransPerfect, Inc., and TransPerfect Remote Interpreting, Inc.  Doc. 45 at 1.

On January 13, 2020, Plaintiffs filed the second amended complaint.  Doc. 62.  On January 27, 2020, the TransPerfect entities moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  Doc. 65.  On November 30, 2020, the Court denied the TransPerfect entities' motion to dismiss for lack of subject matter jurisdiction, but did grant its motion to dismiss for failure to state a claim against any "joint employers" for the putative class.  *See generally* Doc. 83.  Accordingly, all corporate entities except TransPerfect Translations International, Inc. were dismissed.  *See id.* at 12–13.

On September 30, 2022, the Court issued an opinion dismissing without prejudice Plaintiffs' claims brought pursuant to NYLL § 195(3), for failure to plead an injury in fact sufficient to confer standing.  Doc. 196.  Then, on March 29, 2023, the Court issued an opinion granting Plaintiffs leave to replead their NYLL § 195(3) claims—because Plaintiffs sufficiently alleged that they were injured by TransPerfect's failure to provide accurate wage statements.  *See generally*, Doc. 209.

On April 7, 2023, Plaintiffs filed the TAC, which is now the operative complaint in this action.  Doc. 211.  On April 24, 2023, the Court referred this action to Magistrate

6

Judge Parker to issue a R&R on the motion for class certification. Doc. 222. Magistrate Judge Parker issued an R&R on November 6, 2023, and as stated above, recommended that a class composed of "all TransPerfect salaried employees in New York City who were paid $1,125.00 per week or less during the Relevant Period who did not sign Arbitration Agreements" be certified. Doc. 282 at 1. This is a narrower class than that which was proposed by Plaintiffs, who wish to include in the class employees who signed the 2019 Arbitration Agreement. Doc. 290 at 11 n.4.[7] Magistrate Judge Parker additionally recommended that the parties be required to meet and confer about the proposed Notice to the Class and submit it to the Court for approval within fourteen days of any decision adopting the R&R. Doc. 282 at 35.

On December 4, 2023, Plaintiffs and TransPerfect filed timely objections to the R&R, and filed their respective responses on December 18, 2023. Docs. 290 (Pls.' Objections), 288 (Def.'s Objections), 294–95.

## II.  LEGAL STANDARDS

*1.  Review of a Magistrate Judge's Report and Recommendation*

A district court reviewing a magistrate judge's R&R "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise "specific," "written" objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile* (95–CR–1074), 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is

---

[7] In their Objections to the R&R, Plaintiffs reference including in the class employees who "signed unenforceable arbitration agreements after the litigation was initiated." Doc. 290 at 7. However, footnote 4 clarifies that "Plaintiffs only seeks [*sic*] to have members who signed the 2019 [A]rbitration [A]greement included in the class." Doc. 290 at 11 n.4.

apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008). The district court will also review the R&R for clear error where a party's objections are "merely perfunctory responses" argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

### 2. Standard for Class Action Certification

One or more members of a class are permitted to sue on behalf of the class if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). The four requirements "effectively limit the class claims to those fairly encompassed by the named plaintiff's claims." *Id.* (internal quotation marks omitted).

The putative class must also satisfy at least one of the three requirements listed in Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(3), which requires them to demonstrate, in addition to the prerequisites of Rule 23(a), that "the questions of law or fact common to class members predominate over any questions affecting only individual members," and that a class action would be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III. DISCUSSION

#### A. Plaintiffs' Objections

Plaintiffs make two objections to the R&R. First, they argue that the R&R erred because, under the relation back doctrine, the Court must "act as if Plaintiffs, on August 28, 2019, filed a complaint that named TransPerfect Translations International, Inc. as a

8

party defendant and proposed a class" that included employees who signed the 2019 Arbitration Agreement.  Doc. 290 at 16.  Second, they argue that the Court retains the managerial authority to find the 2019 Arbitration Agreement unenforceable.  Doc. 290 at 19–23.  Each objection is addressed in turn.

### 1. The Relation Back Doctrine Will Not be Considered

Rule 15(c)(1)(C) provides that an amended complaint relates back to the original complaint if the claim "arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading," and if within 90 days from the original filing of the complaint, the proposed defendant "received such notice of the action that it will not be prejudiced in defending on the merits; and [ ] knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  Plaintiffs argue that the criteria outlined by Rule 15(c)(1)(C) are satisfied here.  Doc. 290 at 16–19.  Consequently, Plaintiffs argue that there was an active lawsuit against TransPerfect—despite the fact that it was not named in the August 28, 2019 complaint—when it allegedly "forced" class members to sign the 2019 Arbitration Agreement beginning on November 26, 2019.  *Id.* at 11.  As a result, Plaintiffs argue, the 2019 Arbitration Agreement may be deemed unenforceable by this Court.  *Id*. at 20.

In response, TransPerfect argues that Plaintiffs' argument should not be considered by the Court, since it was not presented in their motion for class certification before Magistrate Judge Parker.  Doc. 294 at 11.  The Court agrees with TransPerfect.  "In this Circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not."  *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y.  2019) (internal quotations and citations omitted); *see also Emamian v. Rockefeller Univ.*, No. 7-cv-3919 (PGG), 2023 WL 4493498, at *5 (S.D.N.Y. July 11, 2023) (" A party cannot invoke *de novo* review by citing new facts or making

new arguments that the party could have raised in the briefing before the magistrate judge but did not."); *Ortiz*, 558 F. Supp. at 451 ("[A] district court generally should not entertain new grounds for relief or additional legal arguments not presented to the magistrate[.]").  Here, Plaintiffs could have raised their relation back argument in their motion before Magistrate Judge Parker.  Accordingly, their argument will not be considered.

2. *The Court Does Not Have Managerial Authority Pursuant to Rule 23*

The second objection to the R&R builds on the relation back doctrine.  Plaintiffs claim that pursuant to the doctrine, the putative class members' rights are deemed protected as of the date they filed the complaint against TransPerfect—August 28, 2019—despite the fact that a different corporate entity was named, and that entity did not employ any putative class members.  Doc. 290 at 21; *see also In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 251 (S.D.N.Y. 2005) (explaining that "putative class members' rights" are "protected as of the filing date of the complaint" in a class action.).  As a result, they argue the Court has managerial authority pursuant to Federal Rule of Civil Procedure 23 to find the 2019 Arbitration Agreement is unenforceable.  Doc. 290 at 19–23.  Specifically, Plaintiffs argue that the Court has a duty under Rule 23 to ensure that class members are protected from misleading communications, which allow the Court to restrict communications between the parties and class members that occur after the date of the complaint.  *Id*. at 19–21.  Thus, Plaintiffs argue that the Court should find the 2019 Arbitration Agreement unenforceable as an improper communication, and notes that other courts have found arbitration agreements unenforceable when they "were signed after a lawsuit commenced but failed to mention the lawsuit or the putative class members right [*sic*] under it." *Id.* at 20.

Plaintiffs' argument is without merit.  First, as explained above, the Court cannot consider the relation back doctrine because it was not raised below.  In addition, Plaintiffs do not cite, and the Court is unaware of, any other case where a court has invalidated an

10

arbitration agreement pursuant to its managerial authority under Rule 23 due to application of the relation back doctrine as Plaintiffs suggest.

Second, the import of Plaintiffs' argument is that, due to the relation back doctrine, the 2019 Arbitration Agreement is unenforceable; in other words, it assumes the Court has jurisdiction to decide the issue of enforceability on the merits. While the issue of arbitrability—*i.e.,* whether a court or arbitrator has jurisdiction to hear whether certain claims can be resolved by arbitration—is generally be decided by courts, this does not apply when "there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (internal quotations and citations omitted). When parties "explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Wells Fargo Advisors v. Sappington*, 884 F.3d 392, 396 (2d Cir. 2018) (internal quotations and citations omitted).

Here, both the 2019 and 2023 Arbitration Agreements expressly provide that the Arbitrator, and not any federal, state, or local court, will have the "exclusive" authority to resolve disputes concerning enforceability or arbitrability. Doc. 225-5 ¶ 2; Doc. 225-6 ¶ 2. Based on this unambiguous language, Magistrate Judge Parker found that both the 2019 and 2023 Arbitration Agreements divest the Court of the power to adjudicate the issue of arbitrability or enforceability. Doc. 282 at 31. The Court agrees with Magistrate Judge Parker's conclusion, providing an independent basis to reject Plaintiffs' argument.

### B. TransPerfect's Objections

TransPerfect raises four objections to the R&R. It argues that the R&R erred in finding: (1) TransPerfect had a common policy of failing to pay overtime; (2) predominance satisfied due to individualized analysis needed to ascertain whether each putative class member is exempt pursuant to the Fair Labor Standards Act ("FLSA"); (3)

11

typicality satisfied despite the "unique defense" presented by the fact that certain class members, but not the named Plaintiffs, signed the Acknowledgment Form; and (4) commonality and predominance satisfied because it failed to consider individualized evidence required to show standing for an NYLL wage claim. Doc. 288. Each objection is addressed in turn.

1. *Common Policy of Failing to Provide Overtime*

Magistrate Judge Parker found that Plaintiffs satisfied the commonality requirement, in part, because "[a] common policy of failing to provide overtime is sufficient" to satisfy this requirement. Doc. 282 at 15 (citing *Rivera v. Harvest Bakery, Inc.*, 312 F.R.D. 254, 271 (E.D.N.Y. 2016)). TransPerfect objects to this finding, because it claims the evidence reflects there was no common policy requiring employees to work overtime. Doc. 288 at 15. Additionally, TransPerfect argues that employees' schedules were set "manager by manager" and were not common across the company, and there is a "lack of testimony regarding work schedules" for certain employees. *Id.* at 17. Therefore, TransPerfect claims, neither commonality or predominance can be satisfied, because Plaintiffs cannot show that the employees actually worked more than 40 hours a week—as required for liability– on a classwide basis. *Id.* at 16–17.

TransPerfect's argument is unavailing. First, Magistrate Judge Parker found commonality and predominance were satisfied on grounds in addition to the common policy of not paying overtime or how employee work schedules were set. Specifically, Judge Parker found commonality satisfied because of "questions common to the class," including whether TransPerfect provided accurate wage statements and the "legal import" of the retroactive wage payments. Doc. 282 at 14.[8] And with regard to predominance,

---

[8] Indeed, the R&R found that "there is evidence common to the proposed class regarding Defendant's payroll practices, the eligibility of the class members for overtime during the Relevant Period, the form of wage statement provided, and the circumstances of the retroactive payments made to a large portion of the putative class that will inform answers to the questions identified above." Doc. 282 at 14.

Magistrate Judge Parker also found that there was "common evidence to prove critical aspects" of liability, including:

> "evidence about why class members' salaries did not meet the NYLL threshold for an exemption, whether a retroactive salary payment was made and why, the amounts of the retroactive payments, communications to affected employees about their eligibility for overtime during the Relevant Period, communications to affected employees about the retroactive payments, the format of the pay statements, and the manner in which time was or was not recorded.

*Id*. at 24. Thus, the R&R found both commonality and predominance were satisfied by reference to issues in addition to the particular objection raised by TransPerfect.[9]

Second, the Court notes that the gravamen of TransPerfect's objection is that the R&R made an incorrect factual finding that there was a common policy of not paying overtime. *See* Doc. 288 ("the *evidence reflects* there was no common policy requiring employees in disparate departments, with different managers . . . to work more than forty hours per week) (emphasis added). "Factual findings by a magistrate judge are reviewed for clear error." *Pippins v. KPMG LLP*, 279 F.R.D. 245, 253 (S.D.N.Y. 2012); *see also Kinojuz I.P. v. IRP Int'l Inc.*, 739 F. App'x 9, 10 (2d Cir. 2017) ("With regard to the issue on appeal, we review the magistrate judge's legal conclusions *de novo* and findings of fact for clear error"). Here, Magistrate Judge Parker did not clearly err[10] in interpreting TransPerfect's failure to pay overtime to any member of the putative class as a "common practice of failing to treat class members as overtime eligible" or a "common policy of failing to provide overtime." Doc. 282 at 15.

Third, TransPerfect's argument that the inability to establish whether class members *actually* worked more than 40 hours, as required for liability to attach, defeats class certification is unequally unpersuasive. As the R&R correctly found, this argument

---

[9] TransPerfect does not cite any precedential caselaw that establishes Plaintiffs must show a common policy of failing to provide overtime in order to meet predominance or commonality, especially when the R&R found these elements were met on other grounds.

[10] Applying a non-deferential standard of review would not alter the Court's conclusion.

13

has been "rejected by many courts within the Second Circuit." *See, e.g.*, *Roach v. T.L. Cannon Corp.*, 2017 WL 11529679, *8 (N.D.N.Y. Sept. 27, 2017) (denying decertification of class and finding that common issues going toward liability predominated over individualized issues as to whether each class member worked more than 10 hours in a day); *Fonseca v. Dircksen & Talleyrand Inc.*, 2015 WL 5813382, at *5 (S.D.N.Y. Sept. 28, 2015) ("District courts 'have routinely found that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices.'") (quoting *Murphy v. LaJaunie*, 2015 WL 4528140, at *7 (S.D.N.Y. Jul. 24, 2015) (collecting cases)).[11]

Finally, to the extent TransPerfect argues that variation in working hours or the employees' different departments defeats commonality and predominance, this is simply not the case as a matter of law. *See Bolanos v. Norwegian Cruise Lines Limited*, 212 F.R.D. 144, at 148 (S.D.N.Y. 2002) (holding "different . . . departments kept track of overtime using different methods, differences in departments, job duties, and even factual variations in plaintiffs' claims should not defeat class certification . . . where all plaintiffs claim they were denied overtime."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (differences such as "the number of hours worked, the precise work [employees] did, and the amount of pay they received concern the amount of damages," and such "individual questions with respect to damages will not defeat class certification[.]"). Accordingly, TransPerfect's objection fails.

---

[11] Additionally, this argument ignores the separate issue of whether TransPerfect's wage statements complied with the NYLL, an issue which the R&R found also satisfied the commonality and predominance requirements. *See* Doc. 282 at 14, 24.

14

2. *Effect of FLSA Exemption*

Computation of damages in this case also depends on whether each putative class member is exempt from overtime pay under the FLSA.[12]  Specifically, under New York law, employees are entitled to pay at 1.5 times minimum wage if they are exempt under the FLSA and 1.5 times their regular rate of pay if they are not exempt.  *See* 12 N.Y.C.R.R. § 142-2.2.

Magistrate Judge Parker found that this issue was not a barrier to establishing predominance because it ultimately pertained to damages, and that the parties could use various tools—including reasonable inferences to calculate hours worked if time records are not available, or sworn interrogatories from class members—to calculate hours worked.  Doc. 282 at 27–28.

In its objection, TransPerfect argues that the R&R erred because the FLSA exemption issue goes to liability, not to damages.  Doc. 288 at 21–23.  Specifically, TransPerfect argues that because the putative class is "spread across numerous different departments with different positions," an "individualized analysis of each putative class members' duties and responsibilities will be required to determine" whether they are exempt under the FLSA, defeating predominance.  *Id*. at 21–22.

Again, as explained above, TransPerfect's argument ignores other portions of the R&R establishing predominance on other grounds, including on issues that do not require individualized determinations of hours worked (such as if TransPerfect supplied legally required wage statements).  *See* Doc. 282 at 24.  Second, "it is well-settled that individualized damages calculations do not defeat predominance." *Johnson v. Brennan*, No. 10-cv-4712 (CM), 2011 WL 4357376, at *6 (S.D.N.Y. Sept. 16, 2011); *see also NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co*., 693 F.3d 145, 164–65 (2d

---

[12] Pursuant to Section 13(a)(1) of the FLSA, there is an exemption for overtime pay for employees who, among other requirements, make at least $694 per week.  *See* Dep't of Labor, *Fact Sheet #17C*, https://www.dol.gov/agencies/whd/fact-sheets/17c-overtime-administrative.  Accordingly, an employee could be exempt under FLSA but non-exempt under the NYLL, due to its higher salary threshold for exemption ( $1,125 per week).  *See* 12 N.Y.C.R.R. § 142-2.2

15

Cir. 2012) ("It is well-established that the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification under Rule 23(a), let alone class standing."). TransPerfect concedes that if the FLSA exemption applies to some putative class members, the calculation of their overtime rates will be affected; accordingly, this issue is squarely about damages. The predominance requirement cannot be defeated on this basis. Indeed, TransPerfect does not cite to any authority to support its argument that whether class members are exempt under FLSA is an issue that goes to liability in an action brought exclusively under the NYLL and other New York regulations. Accordingly, the second objection also fails.

3. *Effect of the Acknowledgment Form*

In the proceedings below, TransPerfect argued that the fact that approximately half the putative class signed the Acknowledgment Form made them subject to unique defenses that were not applicable to Plaintiffs, precluding the named Plaintiffs from establishing typicality and adequacy. Doc. 223 at 29–30. Magistrate Judge Parker rejected this argument, finding that because neither of the named Plaintiffs signed the Acknowledgment Form, neither of them were subject to a unique defense on that basis. Doc. 282 at 17.

In its objections, TransPerfect again argues that the Acknowledgement Form presents a unique defense, and thus, the fact that half of the putative class members signed the Acknowledgment Form while Plaintiffs did not "preclude Plaintiffs from establishing typicality, commonality, or adequacy." Doc. 288 at 24.

Unique defenses implicate both typicality and adequacy of class representation. *Bowling v. Johnson & Johnson*, 2019 WL 1760162, *4 (S.D.N.Y. Apr. 22, 2019). The Second Circuit has instructed that "the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification . . . [but] class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v.*

16

*Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000). The relevant inquiry is whether any unique defenses with respect to a class representative will "unacceptably detract from the focus of the litigation to the detriment of absent class members." *Id.* The Court does not need resolve whether a unique defense would ultimately succeed on the merits, but rather "certification must be refused if the Court is confronted with a sufficiently clear showing of the defense's applicability to the representative plaintiff." *Id.*

The Court agrees with Magistrate Judge Parker's analysis. The R&R correctly found that because neither of the named Plaintiffs signed the Acknowledgment Form, they are not subject to any unique defense related to that document. *See Baffa*, F.3d at 59. Because unique defenses only bear on the class representatives' typicality and adequacy, the fact some class members signed the Acknowledgment Form does not alter the result.

Finally, denial of class certification based on the inadequacy of class representatives is rare, and only happens in "flagrant cases where the putative class representatives display an alarming unfamiliarity with the suit[.]" *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 51 (S.D.N.Y. 2012). Here, Magistrate Judge Parker found that the Plaintiffs have demonstrated their adequacy by participating in discovery, providing depositions, and expressing a willingness to continue to litigate the case. Doc. 282 at 19. Thus, the R&R correctly found the Plaintiffs to be adequate. Accordingly, TransPerfect's objection fails.

4. *Standing Under the NYLL*

In its predominance analysis, the R&R rejected TransPerfect's argument that, because individualized proof is needed to show standing to assert a claim for the improper wage statements, individual issues will predominate such that class certification is inappropriate. Doc. 282 at 29–30. As Magistrate Judge Parker pointed out, this argument relies on the assumption that standing for wage statement claims requires a

17

showing of "reliance" or "actual harm," which is not supported by the caselaw in this Circuit.  Doc. 282 at 29.

TransPerfect argues individualized proof will be needed to demonstrate each putative class member's standing to pursue their wage statement claims.  Doc. 288 at 25–27.  In particular, TransPerfect argues that mere technical violations of the NYLL's wage statements requirements, on their own, are insufficient to confer standing, and thus individualized issues will predominate.  Doc. 288 at 25–27.

However, as the R&R points out, courts in this Circuit have routinely certified classes involving inaccurate wage statement claims without engaging in a standing analysis, much less one focused on putative class members' reliance on their inaccurate or improper wage statements.  *See, e.g.*, *Bayne*, 2021 WL 4822426, *Zivkovic v. Laura Christy LLC*, 329 F.R.D. 61, 75 (S.D.N.Y. 2018).  In any event, as this Court has previously ruled in its March 29, 2023 opinion granting Plaintiffs' motion for leave to replead their wage theft claims under the NYLL, Plaintiffs "allege more than the mere technical violations asserted by the plaintiffs in other district court cases that have dismissed [wage statement] claims for lack of standing" and have "tied a concrete injury to the [wage statement] violation and alleged that the injury would not have occurred but for the violation."  Doc. 209 at 9–14 (March 29, 2023 Opinion).  Thus, this objection also fails.

IV.  **CONCLUSION**

For the reasons set forth, the Court, having reviewed Magistrate Judge Parker's thorough and well-reasoned R&R, finds no error, clear or otherwise.  The Court therefore adopts the R&R in its entirety.

The parties are directed to meet and confer about the proposed Notice to the Class and submit it to the Court for approval within fourteen days of the date of this Opinion and Order.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 215.

It is SO ORDERED.
Dated:　March 21, 2024
　　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　EDGARDO RAMOS, U.S.D.J.