```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/30/2025
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHELE METCALF and HANNAH LAWSON, individually
and on behalf of all others similarly situated,

                           Plaintiffs,

          -against-

TRANSPERFECT TRANSLATIONS INTERNATIONAL INC.,

                          Defendant.
-----------------------------------------------------------------X

**REPORT AND RECOMMENDATION ON PARTIAL MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR DISMISSAL OF AFFIRMATIVE DEFENSE AND SANCTIONS**

19-CV-10104 (ER) (KHP)

**TO:** THE HONORABLE EDGARDO RAMOS, United States District Judge
**FROM:** THE HONORABLE KATHARINE H. PARKER, United States Magistrate Judge

      This is a class action comprised of approximately 110 New York City-based employees and former employees of TransPerfect Translations International, Inc. ("TransPerfect") who allege they are due overtime pay under New York Labor Law, as well as liquidated damages, attorneys' fees and costs and interest for the period December 31, 2018 through September 2019. During the relevant period, New York law provided that employees at companies with 11 or more employees must be paid at least $1,125 per week to qualify for either the executive or administrative exemption from overtime. There is no dispute that TransPerfect did not pay the class members the required salary to qualify for the exemption during the relevant period. However, in September 2019, it made retroactive salary payments to 82 class members to pay them the differential between what they were paid and the new salary threshold required to satisfy New York's exemption rule.

      Defendant has moved for summary judgment seeking dismissal of all claims of class members who received retroactive salary payments on the ground that its retroactive salary payments fall under a Fair Labor Standards Act ("FLSA") regulation that provides a "window of

1

correction" for isolated or inadvertent deductions from pay. Defendant also argues that Plaintiff's wage statement claim should be dismissed because the retroactive payments preserved the exemption, and therefore the wage statements provided by TransPerfect were accurate.

Plaintiffs cross-move for summary judgment seeking dismissal of Defendant's "window of correction" defense on the ground that it is not available under New York law. Plaintiffs further assert that Defendant's request to dismiss the wage statement claim is premature. Plaintiffs also seek sanctions against Defendant pursuant to 28 U.S.C. § 1927 and the Court's inherent powers for unreasonably and vexatiously multiplying the proceedings.

For the reasons set forth below, I respectfully recommend that Defendant's motion be DENIED and Plaintiffs' motion be GRANTED in part and DENIED in part.

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of showing there are no genuine issues of material fact, except "when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to" an absence of evidence "on an essential element of the nonmovant's claim." *Souza v. Exotic Island Enters., Inc.*, 68 F.4th 99, 108 (2d Cir. 2023) (citation and quotation marks omitted); *see also In re Whole Foods Mkt. Grp., Inc. Overcharging Litig.*, 397 F. Supp. 3d 406, 419-20 (S.D.N.Y. 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)), *aff'd sub nom. John v. Whole Foods Mkt. Grp., Inc.*, 823 F. App'x 46 (2d Cir. 2020). Once a movant has made its showing, "the nonmovant must set forth specific

facts showing that there is a genuine issue for trial." *Souza*, 68 F.4th at 108 (citation and quotation marks omitted). "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (citation and quotation marks omitted); *see also Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted); *Herlihy v. City of New York*, 654 F. App'x 40, 43 (2d Cir. 2016).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A genuine dispute is present when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party[.]" *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). To receive consideration, the evidence in the record must be admissible at trial. *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001). The Court must "resolve any doubts and ambiguities and draw all reasonable inferences in favor of the nonmoving party." *Johnson v. L'Oréal USA*, 2023 WL 2637456, at *3 (2d Cir. March 27, 2023) (citation omitted).

## FACTS

In 2016, New York amended its wage law to provide for increases to the minimum wage to be implemented incrementally over a five-year period and laid out the schedule for such increases. (Plaintiff's Statement of Undisputed Material Facts ("Pl. 56.1"), ECF No. 354 at ¶ 1.) The new law also provided for increases to the salary threshold needed to qualify for the administrative and executive exemptions from overtime with scheduled increases on December 31, 2016, December 31, 2017 and December 31, 2018. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4). Effective December 31, 2018, to qualify for either of these exemptions, an employee working at a company with 11 or more employees had to receive a salary of $1,125

3

per week.[1]  *Id.* (defining who qualifies as an executive, administrative or professional employee under New York law).  In addition to meeting the salary threshold, the employee also must perform specified duties to be exempt from overtime pay.[2]  *Id*.

TransPerfect employed many people whom it classified as exempt from overtime under either the administrative or executive exemption who were paid less than $1,125 per week.  (Pl. 56.1 at ¶ 4.) There is no dispute that TransPerfect had notice of the change in New York law.  An internal TransPerfect email from October 17, 2018 explicitly acknowledged that "[s]alaried employees that earn less than $58,500, as of December 31st, will either need to receive an increase to meet this salary or be converted to an hourly, overtime eligible employee."  (ECF No. 353-2.)  Yet, TransPerfect did not increase these employees' salaries to $1,125 or more per week on December 31, 2018 or notify these employees that they would be eligible for overtime effective December 31, 2018.  It also did not commence tracking the hours worked for most of these employees on December 31, 2018 or commence paying these employees overtime pay for hours worked in excess of 40 per week on December 31, 2018.  (Defendant's Statement of Undisputed Material Facts ("Def. 56.1"), ECF No. 334 at ¶¶ 22, 24.)  In fact, on December 27, 2018, an internal TransPerfect email states that the company is "at a standstill on [its] approach" to the change in the wage law.  (ECF No. 353-4.)  The email further explains that TransPerfect needed to understand its options on how to proceed and that "it doesn't seem like raising everyone's salaries because of a law makes much business sense or going hourly and

---

[1] The salary threshold for qualifying for the exemption has since increased to $1,237.50 per week effective January 1, 2025 and will increase to $1,275 per week on January 1, 2026.  For calendar year 2024, the salary threshold was $1,200 per week.

[2] There is no salary threshold for *bona fide* professionals under New York law. 12 N.Y.R.C.C. 142-2.14(c)(4)(iii).

being a clock in clock out model is really the culture we're looking for here either." *Id*. The email author inquires about a "grace period" for implementing a change and states that the company's CEO "doesn't seem to think any law could require a min[imum] base of 58.5K." *Id*. The email also states that, "[w]e don't need a letter of the law solution but knowing what we need to do here that's best for this company." *Id*.

According to TransPerfect, it was evaluating how to treat employees impacted by the change in New York law and that it took time to do this. It contends it always intended to provide retroactive payments to impacted employees, citing to a January 23, 2019 email to an employee inquiry about the change in the law. In that email, a Human Resources Assistant states that the company was "currently in the final steps of processing those affected by the FLSA minimum exempt wages but do not have a confirmed date at this time; however, any changes would be retroactive to 12/31." (ECF No. 336-5.) TransPerfect also points to another email exchange between Plaintiff Lawson and Human Resources from February 27, 2019 in which Lawson asks if her salary will be increased and the Human Resources Assistant states she does "not have that information for you at this time, but any changes would be retroactive to 12/31." (ECF No. 336-6.) Yet, no increase in pay was made to impacted employees in January or February 2019. Nor was pay increased in March, April, May, June, July, or August of 2019.

This lawsuit was filed on August 28, 2019. (*See* ECF No. 1.) Thereafter, in September 2019, TransPerfect gave 82 of the impacted employees a salary increase to $1,125 or more per week retroactive to December 31, 2018. (Def. 56.1 at ¶ 4; Declaration of Carol Chuang ("Chuang Decl."), ECF No. 225 at ¶ 4.) It did not pay these 82 employees interest on the

5

retroactive salary payment. (Pl. 56.1 at ¶ 22.) It did request that these employees sign an acknowledgement of receipt of the retroactive salary increase. (Chuang Decl. at ¶ 18.)

## DISCUSSION

1. **Window of Correction Defense**

TransPerfect contends that its retroactive pay increase cures any defect in its classification of 82 class members as exempt for the period of time their salary fell below the threshold for being exempt from overtime. It relies on the "window of correction" defense set forth in the federal Fair Labor Standards Act, 29 C.F.R. § 541.603.

Section 541.603 addresses the effect of improper deductions from salary. It states that "[a]n employer who makes improper deductions from salary shall lose the exemption [from overtime pay obligations] if the facts demonstrate that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). It further states that if an employer has a practice of making improper deductions, it will be deemed not to have intended to pay the employees on a salary basis. *Id*. Factors relevant to determining whether such a practice exists include, without limitation, "the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions." *Id*. The "window of correction" provision states that "[i]mproper deductions that are either isolated or inadvertent will not result in loss of the exemption for any employees subject to such improper deductions, if the employer

reimburses the employees for such improper deductions." 29 C.F.R. § 541.603(c). If the employer has a practice of making improper deductions, the exemption is lost during the period when improper deductions were made. 29 C.F.R. § 541.603(b).

TransPerfect argues that New York follows federal law and therefore the federal "window of correction" regulation applies to improper deductions under state law. There are several issues with TransPerfect's argument. The first is its characterization of failing to increase salaries as a "deduction" from wages. Federal law sets forth specific deductions that are allowed that will not jeopardize an employee's exempt status. These include:

- When an employee is absent from work for one or more full days for personal reasons other than sickness or disability;
- For absences of one or more full days due to sickness or disability if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for salary lost due to illness;
- To offset amounts employees receive as jury or witness fees, or for temporary military duty pay;
- For penalties imposed in good faith for infractions of safety rules of major significance;
- For unpaid disciplinary suspensions of one or more full days imposed in good faith for workplace conduct rule infractions;
- In the employee's initial or terminal week of employment if the employee does not work the full week, or
- For unpaid leave taken by the employee under the Federal Family and Medical Leave Act.

Fact Sheet #17G: Salary Basis Requirement and the Part 541 Exemptions Under the Fair Labor Standards Act (FLSA), Wage and Hour Div., U.S. Dep't Lab. https://www.dol.gov/agencies/whd/fact-sheets/17g-overtime-salary (last visited January 23, 2025).

A failure to increase salary to satisfy an exemption does not appear to fall within the type of inadvertent or isolated deductions contemplated by the federal regulation. Nor does TransPerfect cite to any case where a failure to increase salary to satisfy an exemption was deemed a deduction for purposes of the federal "window of correction" regulation.

Next, no reasonable jury could find that TransPerfect's failure to increase salaries of the class members was isolated or inadvertent. There is no dispute that TransPerfect knew about the change in New York's law in advance of it coming into effect. (*See, e.g.*, ECF No. 353-2.) Yet, it failed to pay more than 100 of its employees the salary required to meet the exemption or overtime for nine months. The employees impacted were in multiple departments and under multiple managers. TransPerfect's only explanation for this delay is that it was analyzing the cost of increasing salaries versus paying overtime and that only once it completed this analysis could it determine whether a retroactive salary increase was proper. This justification does not satisfy the isolated or inadvertent requirement of Section 541.603(c) given the number of employees affected, the time period over which the employees were affected, and the deliberate process that TransPerfect undertook to determine whether to increase an employee's salary or, alternatively, commence paying the employee overtime (and giving a retroactive overtime payment). While the Court does not fault TransPerfect for making employment decisions in its financial interest, it had ample notice of the change in the law and could have done the assessment it did well in advance of December 31, 2018 instead of simply withholding pay. *See Martin v. Malcolm Pirnie, Inc.*, 949 F2d 611, at *617 (2d Cir. 1991) (finding employer could not invoke "window of correction" because of employer's pay docking policy; applying former regulation).

TransPerfect argues that it intended to pay the class members on a salary basis, pointing to a February 2019 email to Lawson stating that she was "affected by the new exempt salary minimum threshold" and that "any changes" to her pay "would be retroactive to 12/31." (ECF No. 336-6.) However, this email does not show an intent to pay Lawson the salary required to meet New York's exemption; rather, it shows that TransPerfect identified Lawson as impacted by the law and that it was evaluating *whether* she would be entitled to a pay increase. The email does not state that Lawson definitely would receive a pay increase—it merely states that *any* change would be retroactive. That only 82 employees received retroactive payments further supports this reading of the email. The evidence shows that TransPerfect needed to conduct an assessment before determining whether it would give a retroactive salary increase or re-classify an employee as overtime-eligible (which it did for some employees) or simply not do anything (which it did for 28 of the 110 class members). The December 27, 2018 internal TransPerfect email makes this clear when in response to a question about whether the company had made a decision about the upcoming change in New York law, a Senior Vice President responded that the company was "at a standstill on [its] approach" to the change in New York's law. (ECF No. 353-4.) It further stated the company needed options on how to best proceed and that it needed more research and that the company's CEO didn't "seem to think any law could require a min[imum] base [salary] of [$58,500]." *Id*. Furthermore, the retroactive salary increases were made only after this action was filed and then only to a portion of the class. All of these facts are inconsistent with a longstanding intent to pay the salary required for the class members to qualify for New York's exemption from overtime. Rather, if what TransPerfect did can be construed to be deductions, then its actions would reflect an actual practice of making

deductions for a nine-month period. Under this view, the impacted employees would be deemed non-exempt pursuant to 29 C.F.R. § 541.603(b). *Scholtisek v. Eldre Corp.*, 697 F. Supp.2d 445, at *452-54 (W.D.N.Y. 2010) (on motion for summary judgment, finding employer practice of making improper deductions violated salary basis test); *see also Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees,* 69 Fed.Reg. 22122–01 ("[w]e have modified the first two sentences of subsection (a) to better clarify that the effect of improper deductions depends upon whether the facts demonstrate that the employer intended to pay employees on a salary basis, and to substitute the phrase 'actual practice' of making improper deductions for the 'pattern and practice' language in proposed subsection (a).").

Thus, no reasonable jury could find that TransPerfect always intended to pay impacted employees the required salary to meet the exemption. And even if the withholding of wages can be characterized as a deduction under federal law, no reasonable jury could find that what TransPerfect did was "inadvertent or isolated." Therefore, TransPerfect cannot rely on the federal "window of correction" defense.

Next, it is doubtful that the federal "window of correction" defense may be relied upon to correct the wrongful withholding of wages under New York law. To start, because the eligibility requirements for the executive and administrative exemptions changed on December 31, 2018 and TransPerfect did not satisfy the exemption on that day, the impacted employees no longer qualified as exempt and immediately became eligible for overtime pay under New

York law.³  Yet, TransPerfect did not begin paying the impacted employees overtime or track their hours.  TransPerfect points to no law, regulation or case holding that an employer can retroactively classify an employee as exempt after nine months of the employee not qualifying for the exemption simply by giving the employee a retroactive salary increase.  If this Court were to so hold, employers could potentially avoid paying more in overtime pay after the fact by paying a lesser amount in salary and retroactively designating an employee as exempt.⁴

Additionally, New York has very specific rules regarding deductions from pay and wage theft.  New York Labor Law Section 193 prohibits a wide range of deductions from wages and is far more detailed in its prohibition of deductions than federal law.  N.Y. Lab. Law § 193.  And while Section 193 permits deductions that are allowed under federal law, it provides no "window of correction" like the federal regulation and does not explicitly adopt or incorporate 29 C.F.R. § 541.603(c).⁵  Nor does New York's regulation pertaining to deductions incorporate

---

³ In this case, the impacted employees may have qualified as exempt under the FLSA, which had a lower salary threshold, but were not exempt under New York law.  Where the state law provides for more generous compensation and computation of overtime, state law applies.  *Callender v. Panabori Food Corp.*, No. 16CV7152 (PKC) (DF), 2018 WL 4565876, at *9 (S.D.N.Y. July 11, 2018), *report and recommendation adopted,* No. 16CV7152PKCDCF, 2018 WL 3728931 (S.D.N.Y. Aug. 6, 2018).   After the events in this case, federal law was changed and the salary thresholds for qualifying for an exemption increased.  Federal guidance concerning these recent changes state that exempt employees whose salary is not increased will become eligible for overtime.  The changes to federal law do not reference the "window of correction" for inadvertent deductions as a way to retroactively classify someone as exempt.  *See* Frequently Asked Questions - Final Rule: Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees, Wage and Hour Div., U.S. Dep't Lab., https://www.dol.gov/agencies/whd/overtime/rulemaking/faqs (last visited January 25, 2025).
⁴ There is no evidence before the Court that impacted class members' overtime pay would have resulted in a higher retroactive payment than the retroactive salary payment.  Nonetheless, it is not hard to imagine scenarios when this could be the case and an employer could, after the fact, reduce costs by retroactively reclassifying an employee it had paid a steady weekly salary.  For example, this potentially could happen if an employer utilized a fluctuating workweek method of paying an employee and wanted to avoid excessive overtime costs in particularly busy periods.  See 29 U.S.C.§ 207; 29 C.F.R. § 778.114 (discussing federal fluctuating workweek method); *Wills v. RadioShack Corp.*, 981 F. Supp.2d 245, 253 (S.D.N.Y. 2013) (holding that federal law permits employers to utilize fluctuating workweek method for computing overtime pay).
⁵ To be sure, New York's Minimum Wage Order provides that overtime shall be calculated in a manner and pursuant to methods provided in and subject to the exemptions of the FLSA (with some exceptions). 12 N.Y.C.R.R. § 142-2.2.

11

the federal regulation regarding the "window of correction." 12 N.Y.C.R.R. § 142-2.10. Further, the only defense to a failure to pay overtime set forth in New York Law is a good faith defense. N.Y. Lab. Law § 663.

Moreover, in the last decade, New York has amended its wage law to focus on wage theft prevention. None of the amendments to New York's law have provided for a method for correcting the withholding of wages (or deductions). Further, New York courts have held that the withholding of a wage payment is not a "deduction" within the meaning of New York's Labor Law. *Perella Weinberg Partners LLC v. Kramer*, 153 A.D.3d 443, at *449 (N.Y. App. Div. 2017). And, the No Wage Theft Loophole Act ("NWTL Act"), which became effective August 20, 2021, amended Sections 193 and 198 of the Labor Law to state that "[t]here is no exception to liability [under those sections] for the unauthorized failure to pay wages, benefits, or wage supplements." N.Y. Lab. Law §§ 193(5), 198(3). The state legislature noted in its memorandum in support of the NWTL Act that New York law is intended to be among the "most progressive" in the nation in the area of labor rights and the prevention of wage theft. Senate Bill S858, N.Y.S. Senate, https://www.nysenate.gov/legislation/bills/2021/S858 (last visited January 29, 2025).

The FLSA explicitly allows states to regulate wages and hours and to provide more generous rights and protections to employees in this area. *Overnite Transp. Co. v. Tianti*, 926 F.2d 220, at *222 (2d Cir. 1991)(citing 29 U.S.C. § 218(a)); *see also Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 248 (2d Cir. 2011) (recognizing that state wage laws co-exist with the FLSA by permitting states to mandate greater overtime benefits than the FLSA); *see also*

---

But incorporating federal methods of computing overtime or federal exemptions from overtime is not the same as incorporating a defense to an improper deduction from pay.

Frequently Asked Questions - Final Rule: Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales, and Computer Employees, Wage and Hour Div., Dep't Lab., https://www.dol.gov/agencies/whd/overtime/rulemaking/faqs (last visited Jan. 29, 2025).  New York has made clear its law is more protective of employees than federal law in all the ways discussed above.

In sum, where New York has not explicitly or implicitly provided for a "window of correction" defense to the withholding of wages or deductions, it cannot be read to provide this defense given the law's remedial purpose and more specific regulatory regime related to wage theft. *Cf.* Administrative Employee Overtime Exemption Frequently Asked Questions, N.Y. Dep't Lab., https://dol.ny.gov/system/files/documents/2021/12/administrative-employee-overtime-exemption-frequently-asked-questions.pdf (last visited Jan. 24, 2025) (implying that the New York State Department of Labor does not apply federal exemptions related to overtime unless the criteria of the New York State exception match the criteria in the FLSA and its regulations). And, indeed, TransPerfect points to no case holding that the federal "window of correction" defense applies in a situation such as this.  The only case cited by TransPerfect that discusses New York law and the federal "window of correction" is *Shafir v. Continuum Health Care Partners, Inc.*, 12-cv-5794, 2016 WL 205435 (S.D.N.Y. Jan. 15, 2016).  That case is distinguishable because the deductions in that case were isolated and inadvertent.  Moreover, the court in *Shafir* did not analyze the applicability of the "window of correction" to New York law.  In that case, the plaintiff questioned her classification as an exempt professional under federal and New York law, arguing that the employer's policy permitting partial day deductions for absences meant that her employer did not pay her on a salary basis.  *Id.* at *2. No deductions had been

13

made to the plaintiff's pay. However, during discovery there was one employee found to have experienced inadvertent deductions in three pay periods totaling $378.59. *Id.* at *3. The employer, upon learning of the deductions, repaid the employee for the inadvertent deductions. *Id.* The Court recognized that this retroactive payment satisfied the federal "window of correction" defense. *Id*. at *6. The court went on to find that the employer did not have a practice of making improper deductions that undermined satisfaction of the salary basis test. *Id*. Thus, the court found there was no dispute of material fact that plaintiff was paid on a salary basis and granted summary judgment to the employer. *Id*. at *7. It further found that summary judgment was proper under New York law because no reasonable jury could find that class members were not paid on a salary basis and because New York's professional exemption does not impose a salary basis requirement. *Id*. Thus, *Shafir* does not assist TransPerfect.

For all these reasons, TransPerfect's motion for summary judgment on its "window of correction" defense should be denied and Plaintiff's motion for summary judgment requesting dismissal of TransPerfect's "window of correction" defense should be granted.

TransPerfect moves separately for summary judgment on Plaintiffs' wage statement claim, brought pursuant to Section 195 of New York's Labor Law. This argument is premised on a finding that the "window of correction" defense applies and that, therefore, the wage statements are compliant with New York law for exempt employees. Because I recommend that TransPerfect's motion be denied on the "window of correction" defense, I also recommend that its motion for summary judgment on the Section 195 claim be denied.

2. Sanctions

Plaintiffs move for sanctions against TransPerfect for bringing what they characterize as a frivolous motion for summary judgment.

28 U.S.C. § 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Section 1927 is only applicable to attorneys or other persons authorized to practice before the courts and not against a party. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986).

Section 1927 sanctions are imposed only "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." *Johnson v. Univ. of Rochester Med. Ctr.*, 642 F.3d 121, 125 (2d Cir. 2011) (citation omitted). Prior to imposing sanctions under § 1927, a court must provide the attorney with notice and an opportunity to be heard. *Id.* at 126. To impose monetary sanctions under § 1927, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith -- that is, motivated by improper purposes such as harassment or delay." *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018) (citation omitted); *see also Oliveri*, 803 F.2d at 1273 ("an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay."). When assessing an attorney's conduct, "[t]he question is whether a reasonable attorney could have concluded that facts supporting the claim might be established, not whether such facts actually

15

had been established." *Republic of Rwanda v. Ferone*, No. 07 CIV. 7663(JSR), 2008 WL 919639, at *1 (S.D.N.Y. Apr. 1, 2008). The fact that judgment was entered against the party is "a necessary, but not a sufficient, condition for a finding of a total lack of a colorable basis." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999). But when an attorney continues to defend a complaint even after learning of facts rendering the complaint "fatal[ly] flaw[ed]," he has engaged in bad faith conduct sanctionable under Section 1927. *Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 282-83 (2d Cir. 2021).

The Court also may impose sanctions against a party and its attorneys pursuant to its inherent power. The standard for determining whether sanctions are appropriate pursuant to the Court's inherent power is the same as the one for assessing whether sanctions are appropriate against an attorney pursuant to Section 1927. *See United States v. Prevezon Holdings, Ltd.*, 305 F. Supp. 3d 468, 478 (S.D.N.Y. 2018). Specifically, there must be clear evidence that "(1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith -- that is, motivated by improper purposes such as harassment or delay." *Id.* at 479 (quoting *Eismann*, 204 F.3d 393, 396 (2d Cir. 2000)). Therefore, courts often consider motions for sanctions pursuant to Section 1927 and their inherent power together. *Id.* at 478.  Attorneys' fees can be awarded as sanctions when "the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. 2000) (internal quotations omitted).

Plaintiffs argue that TransPerfect had no factual basis to bring this motion based on the evidence that makes it clear the "window of correction" defense does not apply here and has

taken other frivolous positions in this case in discovery, unnecessarily prolonging and complicating this case.

This Court invited the instant motion because the issue of whether the retroactive payment could allow treatment of the class as exempt during the relevant period is a central issue in this case for a majority of class members and one that was potentially dispositive. Given that there are no cases analyzing the applicability of the federal "window of correction" to New York law, the issue was novel. Thus, while I recommend denying TransPerfect's motion, the Court does not view the filing of the motion as having been done in bad faith or sanctionable.

Although not entirely clear, to the extent Plaintiffs argue that TransPerfect should be sanctioned for adding to its motion a request for dismissal of the Section 195 claims, that request was merely a logical follow-on argument that, while unsuccessful, is not sanctionable.

Accordingly, I recommend denying Plaintiff's cross-motion for sanctions.

## CONCLUSION

For the reasons set forth above, I recommend denying TransPerfect's motion for summary judgment, granting Plaintiffs' cross-motion for dismissal of the "window of correction" defense, and denying Plaintiffs' motion for sanctions.

Dated: January 30, 2025                                  Respectfully Submitted,

_____
KATHARINE H. PARKER
United States Magistrate Judge

## **NOTICE**

**The parties shall have fourteen days from this date to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b) to this Report and Recommendation. If Defendant files written objections to this Report and Recommendation, Plaintiffs may respond to the objections within fourteen days after being served with a copy.  Fed. R. Civ. P.72(b)(2).  If Plaintiffs file written objections, Defendant may respond to the objections within fourteen days.**

**Objections and responses to objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the Hon. Edgardo Ramos at 40 Foley Square New York, NY 10007-1312, to the chambers of the undersigned magistrate judge, and to any opposing parties.  See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any request for an extension of time to file objections must be directed to Judge Ramos.  Failure to file timely objections will result in a waiver of those objections for purposes of appeal.  See 28 U.S.C.§ 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).**