**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **MICHELE METCALF** and **HANNAH LAWSON**, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>        v.<br><br>**TRANSPERFECT TRANSLATIONS INTERNATIONAL, INC.,**<br><br>      Defendant. | Case No. 19-cv-10104 (ER) (KHP) |

## PLAINTIFFS' MEMORANDUM OF LAW IN
## <u>OPPOSITION TO DEFEDANT'S MOTION TO DECERTIFY THE CLASS</u>

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

    I.     All Class Members Were .................................................................................3

           Denied Overtime Pursuant To .....................................................................3

           Defendant's Unlawful Uniform Policy.........................................................3

           The Court Certified The Class Based On A Showing That ...........................3

           Liability Can Be Established Using Common Proof, Which Remains True Today.....3

    II.    Defendant Failed To Keep Adequate Records Of.........................................5

           Hours Worked, Despite Knowing Of Its Obligations Under The NYLL. .................5

    III.   Defendant Unsuccessfully Attempted ...........................................................6

           To Undermine The Court's Certification Order...........................................6

           By Manufacturing Issues During Class Discovery. ....................................6

ARGUMENT.......................................................................................................................8

    I.     Legal Standard.............................................................................................8

    II.    This Court's Decision To Certify The Class Continues To Be Justified And Proper..9

        **A.**   Class Members' FLSA Exemption...........................................................10

               Classifications Is Purely A Damages Issue, Not A Liability One.......................10

        **B.**   Damages Issues Need Not Be Subject To Generalized Classwide Proof..........14

        **C.**   Plaintiffs Will Offer Expert Discovery As Generalized Classwide Proof..........15

    III.   The Court Should Ignore ...........................................................................17

           Defendant's Attempt To Use ....................................................................17

            Plaintiffs' Counsels' Deposition Strategies As..........................................17

            The Only New Development It Can Point To Support For Decertification..............17

    IV.   There Is No Need For Subclasses. ..............................................................19

CONCLUSION...................................................................................................................19

**TABLE OF AUTHORITIES**

**Cases**                                                                                          **Page(s)**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455 (2013) ...................................................11

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) .........................................................16

*Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2010 U.S. Dist. LEXIS 144198 (D.N.J. Apr. 20, 2010) ............................................................................................................................................12

*Chen-Oster v. Goldman*, No. 10-6950, 2022 U.S. Dist. LEXIS 47922 (S.D.N.Y. Mar. 17, 2022).9, 16, 18

*Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-0840E, 2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005)........................................................................................................................................15

*Drozd v. Vlaval Constr., Inc.*, No. 09-5122, 2011 U.S. Dist. LEXIS 156415 (E.D.N.Y. Oct. 18, 2011) 16

*Edwards v. JetBlue Airways Corp.*, Index No. 33998/07, 19 Misc. 3d 345 (Sup. Ct. Feb. 15, 2008)........13

*Edwards v. JetBlue Airways Corp.*, Index No. 33998/07, 873 N.Y.S.2d 233 (Sup. Ct., Kings Cty. 2008) ............................................................................................................................................13

*Enea v. Bloomberg, L.P.*, No. 12-4656, 2014 U.S. Dist. LEXIS 35613 (S.D.N.Y. Mar. 17, 2014) ............4

*Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481 (S.D.N.Y. 2017) .........................................................16

*In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130 (S.D.N.Y. 2009) ...............................................8

*In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15- 6549, 2022 U.S. Dist. LEXIS 170649 (S.D.N.Y. Sep. 19, 2022)...........................................................................................................................8

*In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1 (E.D.N.Y. 2020) ...............11

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013).........................................................11

*Jianmin Jin v. Shanghai Original, Inc.* 990 F.3d 251 (2d Cir. 2021) ...................................................9

*Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 436-38 (S.D.N.Y. 2013).......................................11

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)...................................................................16

*Lacour v. Colgate-Palmolive Co.*, No. 16-8364, 2024 U.S. Dist. LEXIS 1227 (S.D.N.Y. Jan. 3, 2024).......8

*Lopez v. Setauket Car Wash*, No. 12-6324, 2016 U.S. Dist. LEXIS 80820 (E.D.N.Y. June 14, 2016).....9

*Martinenko v. 212 Steakhouse, Inc.*, No. 22-0518, 2024 U.S. Dist. LEXIS 207134 (S.D.N.Y. Nov. 13, 2024)....................................................................................................................................18

*Mazzei v. Money Store (Mazzei I)*, 308 F.R.D. 92 (S.D.N.Y. 2015), *aff'd, Mazzei v. Money Store (Mazzei II)*, 829 F.3d 260 (2d Cir. 2016) ..................................................................................................8

*Mendez v. Radec Corp.*, 260 F.R.D. 38 (W.D.N.Y. 2009) ..............................................................14

*Metcalf v. TransPerfect Trans. Int'l Inc.*, No. 19-10104, 2024 U.S. Dist. LEXIS 50600 (S.D.N.Y. Mar. 21, 2024)....................................................................................................................................4

*Metcalf v. TransPerfect Trans. Int'l, Inc.*, No. 24-883 (2d Cir. Jul. 19, 2024)....................................4

*Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-10104, 2022 U.S. Dist. LEXIS 207511 (S.D.N.Y. Nov. 15, 2022) ..............................................................................................................6

*Moon v. Kwon*, 248 F. Supp. 2d 201 (S.D.N.Y. 2002) ..................................................................16

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010).......................................................................15

*Paleja v. KP NY Operations LLC*, No. 21-286, 2022 U.S. App. LEXIS 3399 (2d Cir. Feb. 8, 2022).....12

*Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-9353, 2015 U.S. Dist. LEXIS 54066 (S.D.N.Y. Apr. 24, 2015)....................................................................................................................................11

*Pinovi v. FDD Enters.*, No. 13-2800, 2015 U.S. Dist. LEXIS 89154 (S.D.N.Y. July 8, 2015) ...............11

*Price v. L'Oréal USA, Inc.*, 2021 U.S. Dist. LEXIS 187099 (S.D.N.Y. Sep. 29, 2021)...............................8

*Romero v. H.B. Auto. Grp., Inc.*, No. 11-0386, 2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. May 1, 2012) 15

*Rowe v. Old Dominion Freight Lines, Inc.*, Nos. 21-4021, 21-8040, 2022 U.S. Dist. LEXIS 107860 (S.D.N.Y. June 16, 2022) ................................................................................................ 13, 14

*Ruggles v. WellPoint, Inc.*, 272 F.R.D. 320 (N.D.N.Y. 2011).......................................................15

*Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279 (S.D.N.Y. 2015)........................................................18

*Soto v. Crismeli Deli Grocery Inc.*, No. 19-10053, 2024 U.S. Dist. LEXIS 114785 (S.D.N.Y. June 28, 2024) ..........................................................................................................................................11

*Stinson v. City of New York*, No. 10-4228, 2014 U.S. Dist. LEXIS 133741 (S.D.N.Y. Sept. 23, 2014) ...9

*Vaccariello v. AM Satellite Radio, Inc.*, 295 F.R.D. 62 (S.D.N.Y. 2013) .....................................14

*Washington v. Schriver*, 255 F.3d 45 (2d Cir. 2001)....................................................................17

*White v. Western Beef Props., Inc.*, No. 07-2345, 2011 U.S. Dist. LEXIS 141696 (E.D.N.Y. Dec. 9, 2011) ........................................................................................................................................15

*Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245 (S.D.N.Y. 2013) ............................................11

**Statutes**

12 NYCRR § 142-2.14 ............................................................................................... 3, 15

12 NYCRR § 142-2.2 ............................................................................................. 3, 13, 14

N.Y.L.L. § 195 ................................................................................................................3

N.Y.L.L., art. 19, § 650 *et seq.* .....................................................................................3

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................................ 8, 9

Final Rule, U.S. Dep't of Labor ......................................................................................12

Opinion Letter, U.S. Dep't of Labor,  2006 WL 1488849 (May 12, 2006) ............................12

Opinion Letter, U.S. Dep't of Labor, 1991 DOLWH LEXIS 4, 1991 WL 11648489 (August 20, 1991) ........................................................................................................11

Plaintiffs Michele Metcalf and Hannah Lawson (collectively, "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant TransPerfect Translations International, Inc.'s ("Defendant" or "TransPerfect") motion to decertify the class (ECF No. 434), and respectfully request that the Court deny TransPerfect's motion in its entirety.

## INTRODUCTION

TransPerfect's motion to decertify this class is nothing more than a desperate attempt to escape accountability for the wage theft it deliberately perpetrated against over one hundred of its own New York City employees. After dragging this litigation out for years, resisting discovery at every stage, and losing its bid to avoid class certification—both before this Court and on appeal— TransPerfect now seeks another bite at the apple by repackaging arguments that have already been rejected. Its motion is not based on new facts, changes in the law, or a meaningful reevaluation of the record. Rather, it is built entirely on speculation, manufactured confusion, and a continuing refusal to acknowledge its legal obligations under the New York Labor Law ("NYLL").

This Court properly certified a class of salaried employees who earned less than $1,125 per week between December 31, 2018, and September 30, 2019 (the "Class Period")— during which TransPerfect knew it was legally obligated to provide overtime pay and yet failed to do so. That Class was certified because liability arises from a common, unlawful policy: TransPerfect's willful refusal to pay overtime wages and its failure to maintain required time records. These facts are not in dispute. TransPerfect has never denied that it failed to track hours, and has admitted that it delayed paying overtime until well after the NYLL's new requirements went into effect. The Court already concluded that common evidence, including expert testimony and representative records, will establish both liability and damages. Nothing has changed.

TransPerfect bears the "heavy burden" of justifying the "drastic" remedy of decertification. It has not come close. There has been no intervening event, no material change in the facts, and no

legal development that warrants reconsidering the Court's well-reasoned certification order. Plaintiffs, by contrast, continue to rely on the same common legal theory, the same evidentiary foundation, and the same expert analysis that supported certification in the first place. Nothing has undermined the class's cohesion or the predominance of common issues. On the contrary, discovery taken since certification has further confirmed the uniformity of TransPerfect's violations.

Instead of presenting a compelling reason to revisit that ruling, TransPerfect recycles arguments that have already been considered and rejected by this Court—namely, that differences in employees' schedules or departments preclude class treatment. But, as the Court has repeatedly made clear, these issues do not defeat certification. Additionally, in spite of the Court's finding the Class Members' potential Federal Labor Standard Act ("FLSA") exemption statuses are damages issues, TransPerfect once again attempts to repackage that issue as a liability issue.

Even more troubling is TransPerfect's reliance on Plaintiffs' counsels' deposition questions as supposed "evidence" that individual issues predominate. This argument is as novel as it is absurd. Counsel's questions are not evidence, and using deposition strategy as a basis for decertification would eviscerate the discovery process and create a chilling precedent for all class litigation. That TransPerfect is forced to stoop to this level underscores the weakness of its position.

What's more, TransPerfect's litigation behavior leading up to this motion—its refusal to produce discovery, its failure to prepare 30(b)(6) witnesses, and its misrepresentations about its internal processes—has been consistently obstructive. The record reflects a coordinated strategy to delay, confuse, exhaust resources, and try to turn a simple case into a complex one. This motion is simply another chapter in that playbook.

The motion to decertify is meritless. If the Court were to decertify the Class, it would have to be predicated on and reward TransPerfect for the very recordkeeping violations that give rise to its liability. Courts in this Circuit have long recognized that employers who fail to keep accurate time

records cannot later use that failure to undermine collective or class actions. TransPerfect's motion is a textbook example of trying to weaponize its noncompliance to avoid the consequences of its actions. TransPerfect's motion should be denied.

## FACTUAL BACKGROUND

**I.    All Class Members Were
    Denied Overtime Pursuant To
    Defendant's Unlawful Uniform Policy.
    The Court Certified The Class Based On A Showing That
    Liability Can Be Established Using Common Proof, Which Remains True Today.**

Plaintiffs seek relief on behalf of all salaried employees who worked in TransPerfect's New York City offices during the Class Period—December 31, 2018, through September 30, 2019—and earned less than $1,125 per week. During this period, New York law unambiguously required overtime pay—1.5 times the regular hourly rate—for all hours worked beyond 40 in a workweek. See NYLL, art. 19, § 650 *et seq.*; 12 N.Y.C.R.R. §§ 142-2.2, 142-2.14. Pursuant to its unlawful uniform policy, TransPerfect intentionally failed to pay overtime for all hours worked over 40 by employees earning less than $1,125 per week during the Class Period.

In addition to unlawfully withholding overtime, TransPerfect failed to issue accurate wage statements, violating NYLL § 195(3) and triggering statutory penalties. TAC ¶¶ 21–25, ECF No. 1. The company also failed to systematically track employees' work hours, including overtime. Nevertheless, discovery confirms that Defendant's own business records are sufficient to support reliable classwide estimates of unpaid hours and resulting damages. *See* Declaration of Jeremiah Frei-Pearson ("Frei-Pearson Decl."), Ex. 1, Breshears Rpt. ¶¶ 20–25.

Using data produced in discovery, Plaintiffs' forensic accountant expert, David Breshears, CPA/CFF, determined that class members' weekly hours can be calculated to a reasonable degree of certainty. *Id.* ¶ 8. He applied a common methodology to determine liability and quantify each class member's unpaid overtime, liquidated damages, and statutory penalties, based on the metadata of a

random sample of Class Members' emails. *Id.* ¶¶ 14–22. *See also* ECF Nos. 218-19, 244, 246, 281. Because liability and damages flow directly from a uniform unlawful policy, and are derived from common proof, individual variations do not preclude classwide adjudication. *See, e.g., Enea v. Bloomberg, L.P.*, No. 12-4656, 2014 U.S. Dist. LEXIS 35613, *22 (S.D.N.Y. Mar. 17, 2014) ("[P]laintiffs' proposed measure of damages is directly linked with their theory of liability under NYLL for uncompensated overtime. . . . Some factual variation among the circumstances of the various class members is inevitable and does not defeat the predominance requirement.").

In addition to its objection to class certification, TransPerfect's filed a *Daubert* motion to have the Court exclude Mr. Breshears's report. *See* ECF Nos. 223, 229-33, 280. In support of both its class certification opposition and *Daubert* motion, TransPerfect raised the same issues of the differences in employees' schedules, job duties, managers, and departments. *See id. See also, e.g.,* ECF No. 223, *passim* (using the word "schedule" 44 times to argue against certification). Your Honor then correctly rejected both the *Daubert* motion and held that Plaintiffs had satisfied their burden to prove that liability issues could be resolved using common proof. *See* R&R at 28-30 ("Plaintiffs proffered the report of an expert . . , who explained a methodology he could use to estimate hours worked. Specifically, he proposes an evaluation of email activity of class members to determine weeks when employees worked outside of their regular schedule, which would be established through testimony or other evidence and be based on certain assumptions about working time. He also states that he can evaluate other available electronic records."); *Metcalf v. TransPerfect Trans. Int'l Inc.*, No. 19-10104, 2024 U.S. Dist. LEXIS 50600, at *23-24 (S.D.N.Y. Mar. 21, 2024) (affirming this Court's recommendation); *Metcalf v. TransPerfect Trans. Int'l, Inc.*, No. 24-883 (2d Cir. Jul. 19, 2024), ECF Nos. 5, 18 (denying TransPerfect's request for leave to file an interlocutory appeal).

## II.    Defendant Failed To Keep Adequate Records Of
## Hours Worked, Despite Knowing Of Its Obligations Under The NYLL.

TransPerfect treated Plaintiffs and all Class Members exactly the same – it refused to pay them the overtime hours they earned and it intentionally did not track their hours in the regular course of business.

TransPerfect was well aware of the impending changes to the NYLL that took effect on December 31, 2018. *See, e.g.*, Frei-Pearson Decl., Ex. 2, Chuang Dep. at 39:25-42:18, Aug. 16, 2024 ("Q. When did you start the process [of speaking to all the managers and figuring out whatever you are going to figure out about how you are going to lawfully pay workers overtime] in 2018 for the 2019 change?  A. Possibly in the fall, in the summer.  I don't recall specifically when."); *id.* at 43:20-44:6 ("Q. When did you first -- when was Mr. Shawe first informed of this change in connection with the change that took effect in the year 2019? . . . [W]as he informed in 2018?  MR. TURINSKY: Objection.  A. Yes, he had to have been.").  *Accord id.* at 137:23-139:3; 139:18-22; 141:16-18; 151:23-25; 186:13-21.  Despite this knowledge, TransPerfect refused to provide overtime pay to all Class Members.

Moreover, TransPerfect deliberately avoided maintaining records of Class Members' work hours during the critical period when the company was legally obligated to pay overtime.  Although TransPerfect had access to timekeeping systems like Workday prior to the NYLL's effective date, it instructed Class Members not to begin tracking their hours until management—specifically Mr. Shawe—determined whether to reclassify them as non-exempt or raise their salaries above the statutory threshold. *See id.*, Ex. 3 (explaining that TransPerfect would be moving to Workday to record employee hours starting on January 12, 2019); *id.*, Ex. 2, Chuang Dep. at 46:24-47:13 (describing prior systems used); *id.*, Ex. 4 (example of a September 2019 letter to employee informing them of their reclassification and instructed to now track hours in Workday); *id.*, Ex. 2, Chuang Dep. at 48:7-21 ("Q. Could TransPerfect have made the decision to switch to Workday without Mr. Shawe's approval? A.

No . . . . Q. . . . Is there anyone other than Mr. Shawe who had the power to make the decision to switch to Workday and whose approval was necessary?  A. He's the final approver."); *id.* at 49:13-17 ("Q. Can you -- is the policy and procedure of the company that Mr. Shawe has to approve of all decisions to classify as someone being entitled to overtime?  A. Yes.").  In doing so, TransPerfect knowingly prevented employees from logging hours during the months when it was already aware that they were entitled to overtime.[1]

### III.    Defendant Unsuccessfully Attempted To Undermine The Court's Certification Order By Manufacturing Issues During Class Discovery.

TransPerfect's litigation strategy in this case has been to prolong it unnecessarily and to create issues where there are none.  *Cf. Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19-10104, 2022 U.S. Dist. LEXIS 207511, at *13 n.4 (S.D.N.Y. Nov. 15, 2022) ("[TransPerfect's] method of litigation has resulted in delay to this case and wasted judicial resources.").[2]  Its obstructive conduct during class discovery followed the same pattern and should come as no surprise—nor should its current effort to distort the discovery record before the Court.[3]

---

[1] Only a handful of Class Members were permitted to log their hours during the Class Period, and even then, TransPerfect failed to pay some of them any overtime wages—despite knowing that they had, in fact, worked overtime hours.  *See* Frei-Pearson Decl., Ex. 2, Chuang Dep. 94:15-22 (acknowledging that some employees tracked their hours).  *Compare also id.*, Ex. 5 (identifying some of the employees who tracked their hours); *id.* Ex. 6(showing that some employees never received any retroactive payments).

[2] Indeed, scorched earth litigation is a hallmark of TransPerfect and Phil Shawe.  *See, e.g.*, *TransPerfect Holdings, LLC v. Pincus*, No. 22-1477, 2024 U.S. Dist. LEXIS 98873, *16-17 (D. Del. June 4, 2024) (describing how "Shawe, his company and his associates filed numerous lawsuits" relating to an issue, noting that Shawe "acted in bad faith and vexatiously by obstructing discovery, concealing the truth, impeding the administration of justice . . . needlessly complicating and protracting these proceedings", and dismissing TransPerfect's lawsuit with prejudice) (internal citations and alterations omitted).

[3] TransPerfect's complaints regarding deposition testimony on the various job descriptions are made in bad faith.  TransPerfect intentionally produced multiple versions of some job descriptions, each with variations, which required detailed questioning to understand which descriptions were

On September 6, 2024, Plaintiffs sent TransPerfect a 30(b)(6) notice asking it to designate witnesses to testify concerning FLSA exemptions, which TransPerfect then objected to. *See Frei-Pearson Decl.*, Exs. 7-8. Then, in October 2024, TransPerfect agreed to confer about appropriate depositions once it had identified the FLSA exemptions it intended to rely on for Class Members. *See id.*, Ex. 7. TransPerfect did not identify those exemptions under November 2024. *See id.*, Ex. 8. Plaintiffs continued to engage in good faith throughout the fall, repeatedly seeking to identify an appropriate witnesses. TransPerfect refused. Then after Plaintiffs began noticing individual depositions of department heads—due to TransPerfect's refusal to cooperate—Defendant objected and accused Plaintiffs of acting inconsistently with class certification and "wasting" judicial resources. Then, in December 2025, TransPerfect abruptly reversed course and suggested 30(b)(6) depositions after all. *See id.* Ex. 9.

Even when those depositions proceeded, TransPerfect's obstruction persisted. Several of its 30(b)(6) witnesses were plainly unprepared to testify on the designated topics. *See, e.g.*, Frei-Pearson Decl., Ex. 10, Ercole Dep. 68:6-9, Jan. 31, 2025 ("Q. Okay. You don't know what time [Matthew Allen] was expected to start those eight hours of work? A. I don't know the exact hours he was expected."); *id.*, Ex. 11, Brazil Dep. 57:18-22, Jan. 17, 2025 ("Q. For Kenneth Sorrell were you familiar with his position before? A. I am familiar with that position. I just wasn't able to get the person, the manager, I wasn't able to get to talk to him."). *Cf. id.*, Ex. 12 (30(b)(6) deposition notice with topics). Many evaded questions and gave nonresponsive answers, dragging out the proceedings and undermining their purpose. *See* Frei-Pearson Decl. ¶ 3. Others gave internally inconsistent or

---

operative. *See, e.g.*, Frei-Pearson Decl., Ex. 14, Mimeles Dep. 29:5-30:18, Jan. 30, 2025 (reviewing 10 different job descriptions for the same job title). Yet for other jobs, TransPerfect failed to produce any descriptions. Frei-Pearson Decl., Ex. 15 (email explaining that TransPerfect had no job descriptions for certain titles). Moreover, Plaintiffs' questions were intended to clarify and determine how issues related to the FLSA could be resolved in the most efficient manner possible, which required Plaintiffs to determine which job descriptions were operative.

contradictory testimony, further lengthening the depositions and casting doubt on the reliability of Defendant's positions. *Compare* Frei-Pearson Decl., Ex. 2, Chuang Dep. 186:25-187:17, Aug. 16, 2024 (testifying that every single employee worked over 40 hours every week for three months while also testifying that TransPerfect did not track the hours they worked and that she had no way of knowing how many hours they worked), *with* Frei-Pearson Decl., Ex. 13, Advani Dep. 123:22-124:10, Jan. 17, 2025 (testifying that she witnessed a class member working overtime). *See also* Frei-Pearson Decl., Ex. 16, Edison Dep. 96:1-8, Jan. 9, 2025 ("Q. So, it would appear that her overtime rate is one and a half times her regular rate of pay; is that correct? A. Correct. Q. Was it your decision on what to make her overtime rate? A. No. I think the overtime rate is standard."). Many of TransPerfect's witnesses were defended by multiple attorneys, all of whom disrupted the depositions with repeated speaking objections. This pattern of delay, deflection, and misrepresentation is not new—it is the same strategy that has prolonged this case from the outset.

## ARGUMENT

### I.    Legal Standard.

Although courts have broad authority under Federal Rule of Civil Procedure Rule 23, a court "may not disturb its prior findings [that that the requirements of Rule 23 are not in fact met] absent some significant intervening event or a showing of compelling reasons to reexamine the question."[4]

---

[4] The cases cited by TransPerfect support that the Court should only be revisiting class certification when there is a significant intervening event or change in circumstances that would cause the court to revisit class certification. *See In re J.P. Morgan Chase Cash Balance Litig.*, 255 F.R.D. 130, 133 (S.D.N.Y. 2009) ("[T]here must be some development or change in circumstances to merit revisiting a class certification decision."); *In re Namenda Indirect Purchaser Antitrust Litig.*, No. 15- 6549, 2022 U.S. Dist. LEXIS 170649, at *18 (S.D.N.Y. Sep. 19, 2022) (same); *Mazzei v. Money Store* (*Mazzei I*), 308 F.R.D. 92, 106 (S.D.N.Y. 2015), *aff'd*, *Mazzei v. Money Store* (*Mazzei II*), 829 F.3d 260 (2d Cir. 2016) (same); *Price v. L'Oréal USA, Inc.*, 2021 U.S. Dist. LEXIS 187099, at *10 (S.D.N.Y. Sep. 29, 2021) (discovery had shown that Plaintiffs had no means to calculate class damages); *Lacour v. Colgate-Palmolive Co.*, No. 16-8364, 2024 U.S. Dist. LEXIS 1227, at *18 (S.D.N.Y. Jan. 3, 2024) (discovery had shown that there was no generalized classwide proof available); *Lopez v. Setauket Car Wash*, No. 12-6324, 2016 U.S. Dist.

*Chen-Oster v. Goldman*, No. 10-6950, 2022 U.S. Dist. LEXIS 47922, at \*53 (S.D.N.Y. Mar. 17, 2022) (quotation marks and citations omitted). Such compelling reasons may include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Id.* (quotation marks and citations omitted); *see also Stinson v. City of New York*, No. 10-4228, 2014 U.S. Dist. LEXIS 133741, at \*2-4 (S.D.N.Y. Sept. 23, 2014) (collecting cases). "Absent a showing of a significant intervening event, or other compelling reason to reexamine the question of certification, the factual underpinnings of a court's prior certification order are deemed to be the law of the case." *Stinson*, 2014 U.S. Dist. LEXIS 133741, at \*4 (quotation marks and citation omitted).

"Decertification is an extreme step." *Chen-Oster*, 2022 U.S. Dist. LEXIS 47922, at \*53-54 (quotation marks and citations omitted); *see also Woe v. Cuomo*, 729 F.2d 96, 107 (2d Cir. 1984)). "A defendant seeking to decertify a class bears a heavy burden to prove the necessity of either the drastic step of decertification or the less draconian but still serious step of limiting the scope of the class." *Id.* at \*54 (quotation marks and citations omitted). In contrast, the plaintiffs merely "retain the burden of demonstrating that the Rule 23(b)(3) requirements are satisfied." *Id.* (quotation marks and citations omitted); *see also* Fed. R. Civ. P. 23(a), (b)(3).

## II.    **This Court's Decision To Certify The Class Continues To Be Justified And Proper.**

Judge Ramos adopted Your Honor's recommendation to grant class certification and the Second Circuit denied TransPerfect's petition for leave to appeal. *See generally Metcalf*, 2024 U.S. Dist. LEXIS 50600, at \*23-24 (affirming this Court's recommendation); *Metcalf v. TransPerfect Trans. Int'l, Inc.*, No. 24-883 (2d Cir. Jul. 19, 2024), ECF Nos. 5, 18 (denying TransPerfect's request for leave to file an interlocutory appeal). , Nonetheless, TransPerfect—without any new legal or factual

---

LEXIS 80820, at \*9 (E.D.N.Y. June 14, 2016) (decertifying after a jury found that one of the three plaintiffs could not establish liability). *But see also Jianmin Jin v. Shanghai Original, Inc.* 990 F.3d 251, 262 n.18 (2d Cir. 2021) (only addressing when a court may decertify a class *sua sponte*, and not when a defendant moves to decertify).

developments—now attempts to repackage its prior arguments in yet another effort to undermine Your Honor's well-reasoned decision to certify the class. As such, both Plaintiffs and this Court are well-acquainted with TransPerfect's arguments—and why they fail. **First**, any issues related to the Class Members' exemption status under the FLSA is a damages issue, not a liability one. **Second**, no liability issue arising from differences among Class Members justifies decertification. Defendants are well aware that Plaintiffs rely on expert analysis and representative testimony to establish liability through common, classwide proof—as already demonstrated at the certification stage.

> **A.    Class Members' FLSA Exemption**
> **Classifications Is Purely A Damages Issue, Not A Liability One.**

TransPerfect attempts to repackage its previously failed argument that individualized damages issue predominate, by characterizing its damages issues related to FLSA exemption classifications as a liability issue. *See* R&R at 27 ("Defendant further argues that individualized damages issues predominate . . . because a computation of damages depends on whether each class members qualifies [as exempt under the FLSA] . . . . These arguments are not persuasive."). Not only does TransPerfect fail to prove that FLSA exemption classifications are a liability issue, but this argument also fails because TransPerfect could have but failed to bring this issue prior to certification.

> **i.    The Case Record Does Not Support That**
> **Variations in FLSA Exemption Classifications Present a Liability Issue.**

The issue of FLSA exemption classifications is almost always a damages issue, not a liability one. *See, e.g.*, *Metcalf*, 2024 U.S. Dist. LEXIS 50600, *24 (holding issues of whether FLSA exemptions apply to class members "is squarely about damages"). TransPerfect argues that this issue is a liability one here because, TransPerfect claims, there is a question about whether the Class Members would not have been entitled to overtime wages, depending on how much they worked. *See* Def.'s Mem. at 16-18. TransPerfect cannot even make this argument unless it were also true that Plaintiffs and the

Class Members had no right to overtime for hours worked over 40—which directly contradicts both the law and the facts here.

There is a rebuttable presumption that a weekly salary covers only the first forty hours.  *See e.g., Pinovi v. FDD Enters.*, No. 13-2800, 2015 U.S. Dist. LEXIS 89154, at *11 (S.D.N.Y. July 8, 2015); *Perez v. Platinum Plaza 400 Cleaners, Inc.*, No. 12-9353, 2015 U.S. Dist. LEXIS 54066, at *6-7 (S.D.N.Y. Apr. 24, 2015); *Soto v. Crismeli Deli Grocery Inc.*, No. 19-10053, 2024 U.S. Dist. LEXIS 114785, at *16 (S.D.N.Y. June 28, 2024).  Employers need not pay their NYLL-exempt employees overtime wages for all hours worked over 40 when there is a mutual agreement with its employees receiving a fixed weekly salary and that their weekly salaries include overtime hours at the premium rate.  *See id.*  This argument requires a showing that the Class Members had a clear understanding that they were going to receive their salary regardless of how many hours that they worked.  *See id.*; *Klein v. Torrey Point Grp., LLC*, 979 F. Supp. 2d 417, 436-38, 437 n.8 (S.D.N.Y. 2013).  TransPerfect presents no evidence to suggest that this is true.  *See In re Restasis (Cyclosporine Opthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 28-29 (E.D.N.Y. 2020) (citing *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469-70 (2013); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 121-22 (2d Cir. 2013)) (holding that a defendant cannot rely on speculation or unsupported assumptions about uninjured class members to defeat class certification).  This is because no such evidence exists.

Employers cannot prove that there is a fixed weekly salary when there is evidence of employees being deducted pay for working less than 40 hours or employees receiving time-based bonuses for working over 40 hours.  *See, e.g.*, Frei-Pearson Decl., Ex. 17, Opinion Letter, U.S. Dep't of Labor, 1991 DOLWH LEXIS 4, 1991 WL 11648489, at *1 (August 20, 1991) ("Where there is no paid leave to substitute for employee absences, the employer may not make deductions from the employee's guaranteed fixed salary under the fluctuating workweek method of compensation."); *Wills v. RadioShack Corp.*, 981 F. Supp. 2d 245, 255-56 (S.D.N.Y. 2013) ("Before the DOL issued its Final

Ruling in 2011, almost every court to have addressed the issue had held that paying an employee hours-based, or time-based, bonuses and premiums—such as extra pay for holiday, weekend, or night work—offended § 778.114's requirement of a 'fixed weekly salary.'"); *Paleja v. KP NY Operations LLC*, No. 21-286, 2022 U.S. App. LEXIS 3399, at *4 n.1 (2d Cir. Feb. 8, 2022) ("Here, [the plaintiff] alleges that his 'salary . . . was subject to reduction based on the amount of work performed,' . . . meaning that he did *not* receive a guaranteed weekly salary and that the FWW method of calculating his regular rate of pay is therefore inapplicable."); Frei-Pearson Decl., Ex. 18, Final Rule, U.S. Dep't of Labor ("Adoption of the part 541 salary basis requirements and permitted pay deductions would be contrary to the Department's longstanding interpretation that salary deductions for days or hours not worked are generally incompatible with the payment of a "fixed" salary under the fluctuating workweek method."); Frei-Pearson Decl., Ex. 19, Opinion Letter, U.S. Dep't of Labor, 2006 WL 1488849, at *1 (May 12, 2006) (clarifying that deductions are inconsistent with the existence of a fixed weekly salary unless made as a disciplinary measure for employee misconduct); *Brumley v. Camin Cargo Control, Inc.*, No. 08-1798, 2010 U.S. Dist. LEXIS 144198, at *10 (D.N.J. Apr. 20, 2010) (same).

Such evidence is overwhelming present here. *See* Frei-Pearson Decl., Ex. 20 (Plaintiff Lawson being told that they would deduct her pay if she was out of paid vacation days); *id.*, Exs. 21-22 (examples of employees who were deducted pay when they took unpaid vacation days); *id.*, Ex. 23, Wass Dep. 49:14-21, Jan. 22, 2025 (offering paid time off for overtime hours worked) ("Q. So I want to go back to work schedules specifically. You had talked about employees receiving time off for any hours that they would have worked overtime; is that correct? MR. RUSSO: Objection to the form of question. You may answer. A. Correct.").

Unsurprisingly, none of TransPerfect's cases support the claim that employers need not pay additional wages for each overtime hour worked by its employees who were exempt only under the

FLSA not the NYLL.[5] Each involved employees who had already been paid a consistent rate for every hour worked—including overtime hours—that exceeded one and one-half times the basic minimum wage. TransPerfect cites a 2008 New York Department of Labor ("NY DOL") opinion, attached as its Exhibit C, and the decision in *Edwards v. JetBlue Airways Corp.*, Index No. 33998/07, 873 N.Y.S.2d 233, 233 (Sup. Ct., Kings Cty. 2008). In connection with the 2008 NY DOL Opinion, an employer's attorney sent a letter seeking confirmation that its employee's reduced overtime rate under 12 NYCRR § 142-2.2 is calculated as 1.5 times the minimum wage in New York, following the Supreme Court's ruling that the rate is determined by adding that employee's hourly rate to half the state minimum wage. *Compare Edwards v. JetBlue Airways Corp.*, Index No. 33998/07, 19 Misc. 3d 345, 351 (Sup. Ct. Feb. 15, 2008), *with* Def.'s Ex. C (responding to the employer's attorney's March 24, 2008 letter). The NY DOL then clarified that, regardless of the correct calculation, the employees' overtime rate could not be lower than their regular rate of $15.20, and that applying the reduced overtime rate "would be [considered] an illegal deduction from wages." Def.'s Ex. C, at 2. The Supreme Court then dismissed this case, as the employee had already been paid, at least, his regular rate per hour for all hours worked, including overtime. *See Edwards v. JetBlue Airways Corp.*, 873 N.Y.S.2d 233 (Sup. Ct., Kings Cty. 2008), *Edwards*, 19 Misc. 3d at 351 (the plaintiff alleged that he was always paid at least his regular rate for all overtime hours). Similarly inapposite is TransPerfect's citation to *Rowe v. Old Dominion Freight Lines, Inc.*, Nos. 21-4021, 21-8040, 2022 U.S. Dist. LEXIS 107860, at *9-10 (S.D.N.Y. June 16, 2022), where the court found no liability where an FLSA-exempt employee was always paid the same rate for both

---

[5] The only authority TransPerfect cites that remotely supports its position is the 2004 NY DOL opinion, attached as TransPerfect's Exhibit D. But this 21-year-old letter provides no factual context—making it impossible to tell whether it conflicts with the weight of authority on this issue or simply addressed a unique scenario, such as where employees clearly understood their weekly salary included overtime at the premium rate. If the latter were not true, then this opinion would surely be an outlier and directly contradict the overwhelming majority of cases and agency guidance by the DOL, both before and after it. *See, e.g.*, Frei-Pearson Decl., Exs. 17, 19 (1999 and 2006 opinion letters from the DOL holding the opposite).

regular and overtime hours, and that rate exceeded the reduced overtime rate set forth in 12 NYCRR § 142-2.2.  *See also Rowe*, Nos. 21-4021, ECF No. 33-1, at 2, 14 (S.D.N.Y. Jan. 24, 2022) (showing employees' overtime rates matched their hourly rates, all exceeding the reduced overtime rate in 12 NYCRR § 142-2.2); *id.*, ECF No. 33-2, at 2, 22 (same); *id.*, ECF No. 33-3, at 70-71, 84 (same); *id.*, ECF No. 33-4, at 3, 11, 32 (same); *id.*, ECF No. 33-5, at 3, 5, 11, 15 (same).

**ii.    Defendant May Not Raise An Issue That It<br>Could Have But Failed To Raise Prior To Class Certification.**

When previously arguing class certification, Defendant failed to raise the argument that FLSA exemption status is a liability issues, specifically because there is a question of whether the employees worked enough hours to be entitled to overtime.  *See generally* ECF Nos. 223, 280.  Courts are clear that a defendant waives an argument that it could have but failed to bring prior to certification.  *See, e.g.*, *Mendez v. Radec Corp.*, 260 F.R.D. 38, 45-46 (W.D.N.Y. 2009).  Nothing prevented TransPerfect from bringing this argument prior to certification, and it offers no newly discovered evidence that would justify waiting over a year subsequent to certification to make this argument.

**B.    Damages Issues Need Not Be Subject To Generalized Classwide Proof.**

As explained above, the issue of FLSA exemptions is a damages issue, not a liability one.  *See* discussion *supra*  Section II.A.  As the Court has already explained to TransPerfect numerous times, issues related to damages need not be subject to generalized classwide proof.  *See* R&R at 27 ("Defendant further argues that individualized damages issues predominate . . . because a computation of damages depends on whether each class members qualifies [as exempt under the FLSA] . . . .  These arguments are not persuasive."); *see also, e.g.*, *Vaccariello v. AM Satellite Radio, Inc.*, 295 F.R.D. 62, 73 (S.D.N.Y. 2013) ("[N]either the existence of individual defenses nor difficulties in calculating damages in and of themselves defeat the predominance requirement." (citation omitted)).  Defendant's argument fails.

14

All of TransPerfect's cited cases are inapposite, as the plaintiffs in those cases raised FLSA and NYLL claims before the NYLL amended its regulations to establish a salary threshold for overtime eligibility. *Compare* 12 NYCRR § 142-2.14 (amended in 2016 to include the minimum salary threshold), *with Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-0840E, 2005 U.S. Dist. LEXIS 30382, at *2 (W.D.N.Y. Oct. 13, 2005) (proposing a class of employees who failed to receive overtime between 1998 and the present, i.e., 2005); *Myers v. Hertz Corp.*, 624 F.3d 537, 548-51 (2d Cir. 2010) (issued prior to the NYLL's 2016 amendment); *Heredia v. Americare, Inc.*, No. 17-6219, 2018 U.S. Dist. LEXIS 86918, at *12 (S.D.N.Y. May 23, 2018) (the proposed class period for NYLL started on August 16, 2011); *Romero v. H.B. Auto. Grp., Inc.*, No. 11-0386, 2012 U.S. Dist. LEXIS 61151, at *44 (S.D.N.Y. May 1, 2012) (issued prior to the NYLL's 2016 amendment); *White v. Western Beef Props., Inc.*, No. 07-2345, 2011 U.S. Dist. LEXIS 141696, at *15-16 (E.D.N.Y. Dec. 9, 2011) (same); *Ruggles v. WellPoint, Inc.*, 272 F.R.D. 320, 341 (N.D.N.Y. 2011) (same). As such, those cases primarily involved liability issues concerning whether the plaintiffs were entitled to overtime based on their differing duties, which is not the situation here.

### C.    Plaintiffs Will Offer Expert Discovery As Generalized Classwide Proof.

TransPerfect seeks to have the Court reconsider its prior ruling that the differences in employees' schedules, job duties, managers, and departments do not preclude Plaintiffs from offering generalized, classwide proof.[6] *See* R&R at 28-30. At its core, TransPerfect's argument is that Plaintiffs will be unable to provide classwide proof because TransPerfect failed to maintain adequate and accurate records. *See* Def.'s Mem. 20-21.

---

[6] TransPerfect also contends that potential differences in FLSA exemption classifications cannot be resolved through common, classwide proof and therefore support decertification. That argument is meritless for the reasons discussed above. *See* discussion *supra* Sections I. To the extent TransPerfect attempts to tie variations in job duties to exemption status, that argument likewise fails.

If accepted, this argument would directly contradict well-established legal precedent in overtime wage cases, where the failure of an employer to maintain proper records cannot be used as a shield against liability. *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011). TransPerfect's position, in essence, is that it should not be held accountable for its failure to track employees' hours. However, courts have consistently held that when employers fail to keep required records, as mandated by law, it creates a presumption in favor of the employee. *See, e.g., id.; Drozd v. Vlaval Constr., Inc.*, No. 09-5122, 2011 U.S. Dist. LEXIS 156415, at *40 (E.D.N.Y. Oct. 18, 2011); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946); *Moon v. Kwon*, 248 F. Supp. 2d 201, 219 (S.D.N.Y. 2002). To counteract the harm caused by such recordkeeping failures, the Second Circuit has made clear that Plaintiffs may satisfy their burden under the NYLL by presenting evidence that allows for a reasonable inference of hours worked. *See Kuebel*, 643 F.3d 352. *Cf. See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) ("[T]he NYLL — unlike the FLSA — does not permit an employer to discharge this burden by undermining the reasonableness of an employee's evidence that he was underpaid . . . . The NYLL is more demanding: An employer must demonstrate that it in fact paid its employees['] wages, benefits, and supplements." (quotation marks and citations omitted)). TransPerfect's position—that Plaintiffs must reconstruct each class member's hours with exact precision—is a clear misreading of the law and would unjustly reward TransPerfect for its intentional noncompliance.

Moreover, TransPerfect fails to identify any new facts or compelling reasons that would warrant revisiting the certification decision. *See Chen-Oster*, 2022 U.S. Dist. LEXIS 47922, at *53-54. The issues TransPerfect raises are premature and theoretical, better addressed in response to Plaintiffs' merits expert disclosure—where, as discussed, TransPerfect's argument will ultimately fail. These issues do not undermine Plaintiffs' ability to use common proof to determine liability, and TransPerfect's arguments are more about creating obstacles than addressing substantive legal issues.

**III.    The Court Should Ignore
Defendant's Attempt To Use
Plaintiffs' Counsels' Deposition Strategies As
<u>The Only New Development It Can Point To Support For Decertification.</u>**

Without any new developments to justify decertification, TransPerfect repeatedly suggests—or explicitly argues—that Plaintiffs' counsels' deposition strategies, including their specific questions and general manor of conducting deposition, is the new evidence that somehow support decertification. *See, e.g.*, Def. Mem. at 19-20. Not only does TransPerfect mischaracterize those strategies, but even if its assertions were accurate (which they are not), such evidence cannot (and should not) support decertification for numerous reasons. *See* discussion *supra* Section III (explaining how TransPerfect mischaracterized what occurred during class discovery).

**First**, TransPerfect attempts to treat Plaintiffs' counsel's deposition questions as either direct evidence or as supporting an inference of facts that support decertification. *See* Def. Mem. at 19-20. Not so. "[I]t is black letter law that questions asked by counsel are not evidence." *Washington v. Schriver*, 255 F.3d 45, 61 (2d Cir. 2001).

**Second**, TransPerfect's arguments fundamentally undermine the purpose of depositions and, if accepted, would create a chilling effect on both lawyers and the practice of law. *See, e.g.*, Def. Mem. at 20 ("As plainly demonstrated by Plaintiffs' counsel's recent questioning of TPT management witnesses during their depositions, this showing cannot be made here on a classwide basis through generalized proof."). Depositions serve as a critical tool for attorneys to clarify the factual basis of claims and defenses, identify the strengths and weaknesses of a case, and refine legal theories. Lawyers rely on this process to gather essential information and strategize, and they should not fear that the questions they ask—designed to probe and clarify—will later be used against them in a manner that could harm the case.

This concern is particularly heightened in a case like this, where TransPerfect has been found to have misrepresented facts multiple times,[7] and where its witnesses have frequently offered evasive and contradictory testimony – and have sometimes gone so far as to offer testimony that is obviously untrue. *See* discussion *supra* Section III. If TransPerfect is permitted to use deposition questions as it proposes, it would send a dangerous message to class action defendants: they would be incentivized to obstruct and evade during depositions, knowing that any questions seeking clarification could later be used as grounds to decertify the class. This would undermine the fairness of the discovery process and obstruct the ability of plaintiffs to effectively present their cases.

**Third**, even if the Court were to consider counsel's questions as evidence (which it should not), it still fails to meet TransPerfect's "heavy burden" of demonstrating that "the drastic step of decertification" is warranted. *Chen-Oster*, 2022 U.S. Dist. LEXIS 47922, at *54 (quotation marks and citations omitted). TransPerfect argues that Plaintiffs' counsel's deposition strategies—specifically, the questions asked—merely suggest or infer certain facts, such as differences in the Class Members' schedules, job duties, managers, and departments, that supposedly warrant decertification. *See* Def. Mem. at 20-21. However, TransPerfect makes no argument that undermines the common issue which predominates across the class—that the Class Members were subject to an unlawful uniform policy that failed to pay overtime on all hours worked over 40 during the Class Period. *See Martinenko v. 212 Steakhouse, Inc.*, No. 22-0518, 2024 U.S. Dist. LEXIS 207134, at *9-*10 (S.D.N.Y. Nov. 13, 2024) (denying decertification motion because the defendant's allegations did not alter the fact that "common issues predominated across the Class"); *cf.* R&R at 26-27 (distinguishing *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279 (S.D.N.Y. 2015), where differences in hours worked created individualized

---

[7] *See, e.g.*, Report & Recommendation at 8, ECF No. 410 (rejecting TransPerfect's completely noncredible argument that deliberate actions were somehow "inadvertent").

questions that predominated because the proposed class was overtime eligible and claimed it was not compensated for off-the-clock time).

## IV. <u>There Is No Need For Subclasses.</u>

There is no new evidence or legal development that would justify revisiting or modifying the Court's prior certification order to create subclasses at this time.  Because all liability issues are subject to resolution through common proof, the only conceivable basis for subclassing would relate to damages, which is premature given that Plaintiffs have not yet set forth their damages calculation.  *See* discussion *supra* Sections I.  Should either party present evidence indicating that subclasses are appropriate, the Court always has discretion to create subclasses.  However, at present there is no evidence militating in favor of the creation of subclasses.

### <u>CONCLUSION</u>

For the reasons stated herein and in their submissions in support of the underlying motions, Plaintiffs request that the Court deny Defendant's motion to decertify the Class in its entirety and award any such other and further relief as the Court deems just and proper.

Dated: April 11, 2025
      White Plains, New York          Respectfully submitted,

                           **FINKELSTEIN, BLANKINSHIP,**
                           **FREI-PEARSON & GARBER, LLP**

            By:     <u>/s/ Jeremiah Frei-Pearson</u>
                     Jeremiah Frei-Pearson
                     Erin Kelley
                     One North Broadway, Suite 900
                     White Plains, New York 10601
                     (914) 298-3290
                     jfrei-pearson@fbfglaw.com
                     ekelley@fbfglaw.com

                     *Attorneys for Plaintiffs and the Class*