UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELE METCALF and
HANNAH LAWSON, *on behalf of
themselves and all others similarly
situated,*

                        Plaintiffs,

– against –

TRANSPERFECT TRANSLATIONS
INTERNATIONAL, INC.,

                        Defendant.

**OPINION & ORDER**

19 Civ. 10104 (ER) (KHP)

RAMOS, D.J.:

    Michele Metcalf and Hannah Lawson ("Plaintiffs") brought this class action against TransPerfect Translations International, Inc. ("TransPerfect"), alleging that TransPerfect violated various provisions of the New York Labor Law ("NYLL").

    Before the Court is the Report and Recommendation ("R&R") dated January 30, 2025, of Magistrate Judge Katharine H. Parker, to whom this matter was referred for judicial review of: (1) TransPerfect's motion for summary judgment; (2) Plaintiffs' cross-motion for partial summary judgment; and (3) Plaintiffs' motion for sanctions. *See* Doc. 410. In the R&R, Judge Parker recommended: (1) denying TransPerfect's motion for summary judgment; (2) granting Plaintiffs' cross-motion for summary judgment seeking dismissal of TransPerfect's "window of correction" defense; and (3) denying Plaintiffs' motion for sanctions. *Id.* at 17. TransPerfect filed objections to the R&R to the extent it recommended denying TransPerfect's motion for summary judgment and granting Plaintiffs' cross-motion for summary judgment. Doc. 419. For the reasons set forth below, the Court ADOPTS Judge Parker's R&R in its entirety.

I.  **BACKGROUND**

The following facts are drawn from the parties' Rule 56.1 statements, Docs. 334 and 354, supporting exhibits, and pleadings, and are undisputed unless noted otherwise.

A. **Factual Background**

Plaintiffs brought this action on behalf of themselves and approximately 110 of TransPerfect's "salaried employees being compensated at less than $1,125.00 per week" who worked more than forty hours in a workweek in its New York City office ("Class Members") between December 31, 2018 and September 30, 2019 (the "Class Period"). Doc. 354 (Plaintiffs' Statement of Undisputed Material Facts) ¶¶ 3–6.

In 2016, the New York legislature amended the NYLL and implemented incremental increases mandating when all large New York City employers[1] must pay overtime to any salaried employee. Doc. 354 ¶ 1; N.Y. Comp. Codes R. & Regs. tit. 12, 142-2.14(c)(4). That law established that employees of large employers must receive overtime, and could not be eligible for an exemption,[2] if they earned $825 or less per week on or after December 31, 2016, if they earned $975 or less per week on or after December 31, 2017, and eventually if they earned $1,125 or less per week on December 31, 2018. Doc. 354 ¶¶ 2–3; N.Y. Comp. Codes R. & Regs. tit. 12, 142-2.14(c)(4). Each of the Class Members were full-time salaried employees who earned less than $1,125 per week for at least some time during the Class Period. Doc. 354 ¶ 6. Despite having two years to enact a plan before the standards changed in December 31, 2018, TransPerfect failed to pay the Class Members for any overtime worked during the Class Period. *Id.* ¶ 4.

---

[1] This classification applies to New York City employers with eleven or more employees. Doc. 354 ¶ 1; *see* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4).

[2] Pursuant to N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4), employers are not required to pay overtime for hours worked over 40 to bona fide executive, administrative, or professional employees provided that their weekly pay meets or exceeds a certain minimum threshold.

2

Before the standards changed, many TransPerfect employees had been classified as exempt from overtime and were paid less than the requisite $1,125 per week. *See* Doc. 334 (TransPerfect's Statement of Undisputed Material Facts) ¶ 4. TransPerfect knew that the law's thresholds were changing; an internal email from October 2018 recognized that "[s]alaried employees that earn less than $58,500, as of December 31st, [would] either need to receive an increase to meet this salary or be converted to an hourly, overtime eligible employee." Doc. 353-2, Ex. 2 at 2. As TransPerfect's Senior Director of HR, Carol Chuang, testified, the company did not decide to increase all affected employees' salaries or pay them all overtime; instead, Phil Shawe, TransPerfect's co-CEO and President, would decide whether each employee would receive overtime or a salary increase based on the recommendation of that employee's department head. Doc. 354 ¶ 9; Doc. 353-1, Ex. 1 (Carol Chuang Deposition) at 93:4–6 ("The division head would have to talk to Phil as to what they wanted to do and agree on what they would do."). Chuang further testified that TransPerfect did not have a policy requiring such decisions to be made before the date the threshold increases went into effect. *See* Doc. 353-1, Ex. 1 at 34:17–20.

When December 31, 2018 arrived, TransPerfect did not increase the affected employees' salaries nor notify them that they would be eligible for overtime as a result of the changing laws. *See* Doc. 334 ¶ 22. Nor did TransPerfect begin to track the overtime hours of salaried employees who had been exempt from the statutory overtime requirements prior to that date. *Id.* ¶ 24. An internal email from December 27, 2018 indicates that the company was still "at a standstill" regarding how to navigate the changing laws. Doc. 353-4, Ex. 4 at 2. The communications also indicate doubt on behalf of TransPerfect's leadership as to how it would, or should, comply: the author of the email inquires about the "grace period" of implementing regulations in accordance with the law and says that Shawe "[didn't] seem to think any law could require a [minimum] base of 58.5K . . . ." *Id.* The email explicitly stated there was "no way [they

3

would] be able to implement anything by December 31st." *Id.* The email requested that other employees do more research on how to proceed, writing that "[i]t doesn't seem like raising everyone's salaries because of a law makes much business sense or going hourly and being a clock in clock out model is really the culture we're looking for here either." *Id.*

TransPerfect's statement of undisputed material facts indicates that "[t]he retroactive payments were delayed until September 2019 because the company had numerous impacted employees in different roles, working in different departments, under different managers and division heads, and needed time to evaluate how a change to an employee's compensation would impact the overall business and the ripple effects such change would have throughout the organization." Doc. 334 ¶ 22. In her deposition, Chuang echoed these sentiments. *See* Doc. 353-1, Ex. 1 at 33:10–12 ("[I]t did take some time to understand what would be the best approach to comply with the law."). TransPerfect cites email exchanges between its HR staff and affected employees as evidence that TransPerfect intended at all times to comply with the law and give Class Members their due salaries. *See* Doc. 334 ¶¶ 20–21 (citing Docs. 336-5, Ex. E and 336-6, Ex. F, respectively). However, those emails indicate that, as late as February 27, 2019, two months after the revisions went into effect, HR representatives were telling employees that they did not have information as to whether they were subject to the statutory changes and that "any changes would be retroactive to 12/31." *See* Doc. 336-6, Ex. F at 3. Though the representative explained to Plaintiff Lawson later that day that she would be affected by the new exempt salary minimum threshold and that HR would "be reaching out with further information in the coming weeks," *id.*, the company did not fulfill its statutory obligations until September 2019. *See, e.g.*, Doc. 334 ¶ 4. Even still, some of the employees never received a retroactive payment and TransPerfect did not reclassify them in compliance with the law, even after the Class Period. *See* Doc. 354 ¶ 25.

4

B.  **Procedural History**

Plaintiffs brought this action on August 28, 2019.  Doc. 1.  In September 2019, TransPerfect increased the salary of approximately 82[3] affected employees to $1,125 or more per week retroactive to December 31, 2018.  *See, e.g.*, Doc. 334 ¶ 4.  That said, it did not pay these employees interest on their retroactive salary payments.  Doc. 354 ¶ 22.  Further, Plaintiffs' statement of undisputed material facts indicates that some Class Members never received their retroactive payments.  *Id.* ¶ 25.

TransPerfect moved for summary judgment on September 27, 2024, seeking dismissal of all claims of Class Members who received retroactive salary payments, arguing that it fulfilled its obligations under a Fair Labor Standards Act ("FLSA") regulation allowing an employer to rectify isolated or inadvertent deductions from pay through a "window of correction."  Doc. 332; *see also* Doc. 333; 29 C.F.R. § 541.603.  That regulation states that "[i]mproper deductions that are either isolated or inadvertent will not result in loss of the exemption [from overtime obligations for executive, administrative, and professional employees] for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions."  29 C.F.R. § 541.603(c).  In addition, TransPerfect argued that Plaintiffs' wage statement claim should be dismissed because the retroactive payments preserved the overtime exemption and therefore the wage statements they provided Class Members were accurate.  Doc. 333 at 13–14.  Plaintiffs cross-moved for summary judgment on October 31, 2024, seeking dismissal of the "window of correction" defense.  Doc. 350.  Plaintiffs also moved for sanctions against TransPerfect for "overly aggressively litigating what should have been a simple wage and hour case."  Doc. 352 at 21–23.

---

[3] TransPerfect's statement of undisputed material facts indicates that TransPerfect issued retroactive salary increases to 82 salaried employees.  Doc. 334 ¶ 4.  Plaintiffs' statement of undisputed material facts indicates that TransPerfect issued such increases to 88 employees.  Doc. 354 ¶ 21.  However, Plaintiffs then acknowledge that 82 employees eventually received the retroactive salary increases in their response to TransPerfect's objections to the R&R.  *See* Doc. 430 at 18.

5

On January 30, 2025, Magistrate Judge Parker issued an R&R recommending that the Court: (1) deny TransPerfect's motion for summary judgment; (2) grant Plaintiffs' cross-motion for summary judgment seeking dismissal of TransPerfect's "window of correction" defense under the FLSA; and (3) deny Plaintiffs' motion for sanctions. *See* Doc. 410. Specifically as to TransPerfect's motion for summary judgment, Judge Parker ruled that: (1) the window of correction defense did not apply to TransPerfect's actions because that defense only applies to improper deductions, not failures to increase salaries to satisfy a statutory exemption; (2) no reasonable jury could find that TransPerfect's failure to increase salaries of the class members was "isolated or inadvertent" as required by the FLSA; and (3) even if TransPerfect's failure to provide wages were an inadvertent deduction, the NYLL does not recognize the "window of correction" defense that the FLSA does. *See* Doc. 410 at 6–14. Judge Parker also recommended that the Court grant Plaintiffs' cross-motion for summary judgment requesting dismissal of TransPerfect's "window of correction" defense on the same grounds. *Id.* at 14. TransPerfect had also moved separately for summary judgment on Plaintiffs' wage statement claim pursuant to Section 195 of the NYLL which Judge Parker recommended be denied because the motion was premised on a finding that the "window of correction" defense applies. *Id.* Finally, Judge Parker recommended that the Court deny Plaintiffs' motion for sanctions against TransPerfect because she "[did] not view the filing of the motion as having been done in bad faith or sanctionable." *Id.* at 17.

TransPerfect filed an objection to the R&R on February 13, 2025. Doc. 419. It argues first that Judge Parker erred in finding that the window of correction defense cannot be relied upon under the NYLL, and second that the retroactive payments made by TransPerfect to 82 Class Members "preserved the exemption" for them.[4] *Id.* at 8. Accordingly, TransPerfect requests that the Court reject the R&R, grant its motion for

---

[4] TransPerfect did not object to Magistrate Judge Parker's recommendation that the Court deny Plaintiffs' motion for sanctions. *See generally* Doc. 419.

6

partial summary judgment, and deny Plaintiffs' cross-motion for partial summary judgment. *Id.* Plaintiffs responded to TransPerfect's objection, arguing that the Court should adopt the R&R in its entirety. Doc. 430.

## II. LEGAL STANDARD

### A. Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Parties may raise "specific," "written" objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(1)(C); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the report and recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008). The district court will also review the report and recommendation for clear error where a party's objections are "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

### B. Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School District*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might "affect the outcome of the litigation under the

governing law." *Id.*; *see also Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

### III. DISCUSSION

#### A. Legal Applicability of the "Window of Correction" Defense Under the New York Labor Law

TransPerfect argues that Judge Parker erred in finding that the "window of correction" defense cannot be relied upon under the NYLL. *See* Doc. 419 at 13. They

argue that the NYLL incorporates the federal overtime regulations of the FLSA pursuant to which the "window of correction" defense is permitted. *Id.* at 13–14.

TransPerfect's characterization that "New York State labor regulations substantially incorporate and adopt the FLSA's overtime regulations" is correct. *See id.* at 14 (quoting *Lazaar v. Anthem Companies, Inc.*, No. 22 Civ. 3075 (JGK), 2023 WL 405016, at *3 (S.D.N.Y. Jan. 25, 2023)). However, that does not compel the conclusion that the NYLL adopts the "window of correction" defense.[5] Indeed, the FLSA explicitly allows states to adopt stronger worker protections through their own labor regulations, which New York has done, and which courts in this Circuit have recognized. *See, e.g.,* 29 U.S.C. § 218(a) (noting that nothing in the FLSA "shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter"); *Shahriar v. Smith & Wollensky Restaurant Group, Inc.*, 659 F.3d 234, 248 (2d Cir. 2011) (noting that the aforementioned statutory provision "demonstrates Congress' intent to allow state wage laws to co-exist with the FLSA by permitting explicitly, for example, states to mandate greater overtime benefits than the FLSA"); *Overnite Transportation Co. v. Tianti*, 926 F.2d 220, 221–22 (2d Cir. 1991).

---

[5] TransPerfect cites a number of cases in support of its proposition that the "window of correction" defense of the FLSA can be relied upon under the NYLL. *See* Doc. 419 at 13–15. However, most do not mention the "window of correction" defense. *See, e.g., Padilla v. Sheldon Rabin, M.D., P.C.*, 176 F. Supp. 3d 290 (E.D.N.Y. 2016). Additionally, others stand for the proposition that "because the NYLL is the state analogue to the federal FLSA and it mirrors the FLSA in [certain] provisions . . . the [c]ourt's ensuing analysis [of those provisions] . . . will solely focus on federal law but applies equally to . . . claims under the FLSA and the NYLL." *Marcus v. Lominy*, No. 18 Civ. 1857 (NSR), 2022 WL 493688, at *13 (S.D.N.Y. Feb. 17, 2022). The NYLL contains no language establishing that an employer may correct isolated or inadvertent deductions as the FLSA does, unlike other portions of the NYLL which closely mirror the FLSA's provisions. Moreover, the Court finds TransPerfect's characterization of *Shafir v. Continuum Health Care Partners, Inc.*, No. 12 Civ. 5794 (KBF), 2016 WL 205435 (S.D.N.Y. Jan. 15, 2016) inapt. TransPerfect writes that the court there analyzed the "window of correction" with respect to both federal and NYLL claims. Doc. 419 at 14. However, the court only addressed the "window of correction" in the context of the FLSA and, in any event, the "window of correction" was not the issue before it. *See Shafir*, 2016 WL 205435, at *5.

New York has exercised its ability to enact stronger worker protections through its wage laws by setting, for example, a higher salary threshold for overtime exemption than the FLSA.  *Compare* N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.14(c)(4) *with* 29 C.F.R. § 541.600.  Relatedly, while New York has widely amended its wage laws to prevent wage theft, no amendment has allowed employers to retroactively correct deductions (or, in TransPerfect's case, the withholding of wages) as TransPerfect suggests.  *See, e.g.*, NYLL § 193(5) ("There is no exception to liability . . . for the unauthorized failure to pay wages, benefits, or wage supplements.").  Moreover, the NYLL sets forth explicit defenses for employers in its Minimum Wage Act, which do not include a "window of correction" that would allow employers to avoid liability for isolated or inadvertent underpayments if such errors were corrected within a set timeframe.  *See* NYLL § 663(1) (holding that if an employee is underpaid by his employer, he shall recover the amount of such underpayments, costs, reasonable attorney's fees, and prejudgment interest, and that "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law," he shall also recover "an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due").  Even still, the "good-faith" defense under that provision only relieves an employer from liability for liquidated damages.  *Id.*  No such "window of correction" defense applies there.  *Id.*

In sum, the Court agrees with Magistrate Judge Parker's view that the NYLL is intentionally more protective of employees than the federal FLSA and that it provides no "window of correction" defense.

**B. Factual Applicability of TransPerfect's Actions to the "Window of Correction" Defense**

TransPerfect further contends that Judge Parker erred in finding that the retroactive salary payments did not constitute "deductions that are either isolated or inadvertent" under the standard established in the FLSA such that the "window of

10

correction defense" could not be applied. Doc. 419 at 15. The Court disagrees. Even if the FLSA's "window of correction" defense were available under the NYLL, failure to increase salaries in compliance with statutory requirements cannot be classified as either (1) a deduction or (2) isolated or inadvertent, particularly on the facts of this case.

The FLSA states that "[a]n employer who makes improper deductions from salary shall lose the exemption [from overtime pay obligations] if the facts demonstrate that the employer did not intend to pay employees on a salary basis." 29 C.F.R. § 541.603(a). "An actual practice of making improper deductions demonstrates that the employer did not intend to pay employees on a salary basis." *Id.* In determining whether an employer engaged in an "actual practice," a court should consider, for example, "the number of improper deductions, particularly as compared to the number of employee infractions warranting discipline; the time period during which the employer made improper deductions; the number and geographic location of employees whose salary was improperly reduced; the number and geographic location of managers responsible for taking the improper deductions; and whether the employer has a clearly communicated policy permitting or prohibiting improper deductions." *Id.* "If the facts demonstrate that the employer has an actual practice of making improper deductions, the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions." 29 C.F.R. § 541.603(b). The "window of correction" defense then states that "[i]mproper deductions that are either isolated or inadvertent will not result in loss of the exemption [from overtime obligations] for any employees subject to such improper deductions, if the employer reimburses the employees for such improper deductions." 29 C.F.R. § 541.603(c).

1. *Classification as a Deduction*

As Judge Parker noted, federal law sets forth specific examples of deductions that do not jeopardize an employee's exempt status, which do not include the failure to

11

increase salary to satisfy an overtime exemption. *See* Doc. 410 at 7 (citing Fact Sheet #17G: Salary Basis Requirement and the Part 541 Exemptions Under the Fair Labor Standards Act (FLSA), Wage and Hour Division, U.S. Department of Labor https://www.dol.gov/agencies/whd/fact-sheets/17g-overtime-salary (last visited July 1, 2025)). TransPerfect does not cite authority to support its assertion that failure to increase salaries should be recognized as a deduction under the FLSA's "window of correction" defense other than referencing one New York Supreme Court case in a footnote.[6] *See* Doc. 419 at 16–17. The Court thus agrees with Judge Parker's finding that TransPerfect's failure to increase salary to satisfy an overtime exemption is not a deduction under the FLSA.

2. *Classification as Isolated or Inadvertent*

In addition, the FLSA requires that the deductions be either "isolated or inadvertent," neither of which applies to TransPerfect's failure to increase the salaries of Class Members. TransPerfect submits that the delayed salary payments were inadvertent because it did not intentionally underpay employees. Doc. 419 at 18. To support this assertion, it argues that "the evidence makes clear that [TransPerfect] intended at all times to fully pay Plaintiffs and the class members on an exempt salary basis and to comply with the law." *Id.* However, the evidence directly contradicts this assertion. First, internal communications between TransPerfect employees about how to navigate the changing laws indicate that company leadership "[didn't] seem to think any law could require a [minimum] base of 58.5K[.]" Doc. 353-4, Ex. 4 at 2. Those communications also indicated that company leaders did not believe raising everyone's salaries or providing overtime pay made "much business sense" or fostered the type of culture the

---

[6] TransPerfect cites *Quallen v. Impendi Analytics, L.L.C.*, No. 651897/2020, 2021 WL 6051429 (N.Y. Sup. Ct. N.Y. Cty. Dec. 20, 2021) in arguing that delayed salary payments are "deductions." Doc. 419 at 17 n.1. While the *Quallen* court held that "the unauthorized failure to pay wages, benefits and wage supplements has always been encompassed by the prohibitions of [NYLL] section 193," 2021 WL 6051429, at *3, that holding does not compel the conclusion that unauthorized failure to pay wages should be classified as a "deduction" under the FLSA.

company desired. *Id.* For those reasons, they considered and adopted a deliberate plan as to how to proceed, whereby Shawe and department heads would determine how each employee's wages and overtime would (or would not) be calculated. *See, e.g.*, Doc. 354 ¶ 9; Doc. 353-1, Ex. 1 at 93:4–6. Second, in emails between HR and employees, TransPerfect staff indicated uncertainty as to whether it would comply with the changing laws. For example, HR's email to Lawson indicates that any change she might receive would be retroactive if she were deemed covered by the changing laws, not that she would definitively receive her statutorily-owed pay. *See* Doc. 336-6, Ex. F at 3. Third, the fact that the retroactive salary increases were made only after the action was filed, and even still, were only made to a portion of the class, are inconsistent with the argument that TransPerfect always intended to pay its employees. *See* Doc. 334 ¶ 4. Failing to pay over a hundred employees from various departments for over nine months despite having advanced knowledge of the changes in the law does not constitute an "inadvertent" action.

Moreover, as Judge Parker aptly noted, "TransPerfect points to no law, regulation or case holding that an employer can retroactively classify an employee as exempt after nine months of the employee not qualifying for the exemption simply by giving the employee a retroactive salary increase." Doc. 410 at 11. "If this Court were to so hold, employers could potentially avoid paying more in overtime pay after the fact by paying a lesser amount in salary and retroactively designating an employee as exempt." *Id.*

Because TransPerfect's failure to increase Class Members' salaries is not a "deduction" under the FLSA and because its actions were neither "inadvertent" nor "isolated," the Court finds that Judge Parker did not err in recommending dismissal of TransPerfect's "window of correction" defense and denying its motion for summary judgment.

13

### C. Wage Statement Claim

TransPerfect also argues that if "the retroactive salary payments issued to Plaintiffs and other members of the class preserved their exemption status during the [Class Period], the wage statements were accurate and correct, and the wage statement claim must therefore be dismissed." Doc. 419 at 19. However, the Court need not reach this issue because it agrees with Magistrate Judge Parker that the retroactive salary payments did not preserve Class Members' exemption status.

## IV. CONCLUSION

The Court has carefully reviewed Judge Parker's thorough and well-reasoned R&R and finds no error, clear or otherwise. Accordingly, the Court adopts the R&R in its entirety. TransPerfect's motion for summary judgment is thus denied and Plaintiffs' cross-motion for summary judgment seeking dismissal of the "window of correction" defense is granted. The Clerk of Court is respectfully directed to terminate the motions, Docs. 332, 350, and 351.

It is SO ORDERED.

Dated: July 9, 2025
        New York, New York

EDGARDO RAMOS, U.S.D.J.