UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHELE METCALF *and*
HANNAH LAWSON, *individually*
*and on behalf of all others similarly*
*situated*,

Plaintiffs,

– *against* –

TRANSPERFECT TRANSLATIONS
INTERNATIONAL INC.,

Defendant.

**OPINION & ORDER**

19-cv-10104 (ER)

RAMOS, D.J.:

Michele Metcalf and Hannah Lawson, individually and on behalf of all others similarly situated, filed this putative class action against TransPerfect Translations International Inc. ("TransPerfect"), alleging failure to pay overtime in violation of New York Labor Law ("NYLL") 12 N.Y.C.R.R. § 142-2.14 and 12 N.Y.C.R.R. § 142-2.2.

On November 6, 2023, Magistrate Judge Katharine H. Parker, to whom the case was referred for general pretrial purposes, issued a Report and Recommendation ("R&R"), recommending that a class be certified. Doc. 282. Over TransPerfect's objections to the R&R, Doc. 288, the Court adopted the R&R in its entirety on March 21, 2024, certifying a class which consists of all TransPerfect salaried employees in New York City who were paid $1,125.00 per week or less between December 31, 2018 and September 30, 2019 who did not sign arbitration agreements ("the Class"). Doc. 303 at 1-2. Approximately one year later, on March 14, 2025, after the completion of fact discovery, TransPerfect filed the instant motion to decertify the class. Doc. 435. On November 19, 2025, Judge Parker issued an R&R recommending that TransPerfect's motion be denied. Doc. 456.

Before the Court are TransPerfect's objections to the R&R and Plaintiffs' response to the objections.  Doc. 460; Doc. 462.  For the reasons stated below, the Court ADOPTS the R&R and denies TransPerfect's motion to decertify the class.

## I.    BACKGROUND

The Court discusses only those facts necessary for disposition of the instant motion, assuming familiarity with the Opinion and Order issued on July 9, 2025 (the "July 2025 Opinion"),[1] which recounts the factual background and procedural history of this litigation in detail.  Doc. 452.

### A.  Factual Background

The following facts are drawn from the parties' Rule 56.1 statements, Docs. 334 354, 360, 361, and 375, supporting exhibits, and pleadings, and are undisputed unless noted otherwise.  Plaintiffs are former TransPerfect employees who were incorrectly classified as exempt workers under the overtime provisions of the NYLL.  Doc. 360 ¶¶ 4-5.  The NYLL designates workers performing executive, administrative, or professional functions as defined therein as exempt from receiving overtime payments should their base salaries exceed a certain salary threshold.  *See* 12 N.Y.C.R.R § 142-2.14(c)(4)(i)-(ii).

The salary threshold for overtime exemption status for New York City employees working at companies with 11 or more employees increased from $975 per week to $1,125 per week on December 31, 2018.  *Id.*  Prior to this increase, the salary for Class members exceeded the requisite $975 weekly salary threshold and thus satisfied the eligibility for overtime pay exemption.  Doc. 360 ¶ 4.  However, when the salary

---

[1] In sum, the July 2025 Opinion denied TransPerfect's motion for summary judgment and granted Plaintiffs' cross-motion for summary judgment seeking dismissal of TransPerfect's "window of correction" defense. Doc. 452.  The Court adopted Judge Parker's findings that TransPerfect's failure to increase class members' salaries did not constitute a "deduction" under the Fair Labor Standards Act ("FLSA"), nor were they "inadvertent" or "isolated," given the clear intent by TransPerfect officials to knowingly continue to pay salaries to the class which fell below the statutory threshold required for overtime exemption.  Doc. 452 at 13.  Additionally, the Court found that the R&R correctly reasoned "that the retroactive salary payments did not preserve Class members' exemption status" and that the NYLL affords additional protections beyond those offered by the FLSA, which does not compel the adoption of the "window of correction" defense. *Id.* at 9, 14.

threshold increased on December 31, 2018, TransPerfect did not raise the salaries of these previously exempt workers to the new $1,125 weekly threshold but continued to treat the class members as exempt from overtime pay. *Id.*

One month after the filing of this lawsuit, TransPerfect retroactively increased the salaries of 82 Class members in order to satisfy the increased overtime exemption threshold in September 2019. *Id.* ¶ 22. These retroactive adjustments did not, however, include the payment of interest on the adjusted salaries during the relevant period between December 31, 2018, and September 20, 2019. *Id.*

### B. Procedural History

Plaintiffs filed their complaint on August 28, 2019. Doc. 1. On November 15, 2019, TransPerfect filed a motion to dismiss the complaint. Doc. 38. In response, Plaintiffs filed a first amended complaint on December 9, 2019. Doc. 45. On January 13, 2020, Plaintiffs filed a second amended complaint. Doc. 62. On January 27, 2020, TransPerfect filed a motion to dismiss the second amended complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Doc. 66. The motion to dismiss was denied on November 30, 2020, by Judge Alison J. Nathan, to whom this case was first assigned. Doc 83. On June 25, 2021, this case was referred to Judge Parker for general pretrial purposes. Doc. 95. On February 25, 2022, TransPerfect filed a second motion to dismiss the second amended complaint for lack of subject matter jurisdiction pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure. Doc. 132. On February 28, 2022, the motion was referred to Judge Parker for an R&R. Doc. 135.[2] On July 11, 2022, Judge Parker issued an R&R recommending that the Court deny the second motion to dismiss. Doc. 171. On September 30, 2022, the Court issued an order adopting the R&R and denying the motion to dismiss. Doc. 196. On November 29, 2022, Plaintiffs filed a third amended complaint.

---

[2] On April 11, 2022, the case was reassigned from Judge Nathan to Judge Ramos.

Doc. 211.  On April 19, 2023, Plaintiffs filed a motion to certify the class.  Doc. 216.  On

April 23, 2023, the motion to certify a class was referred to Judge Parker for an R&R.

Doc. 222.  On November 6, 2023, Judge Parker issued an R&R recommending that the

Court certify the class.  Doc. 282.  On March 21, 2024, the Court adopted the R&R,

certifying the class.  Doc. 303.  On September 27, 2024, TransPerfect moved for partial

summary judgment seeking to dismiss the third amended complaint against class

members who received retroactive salary payments in September 2019, arguing that these

retroactive salary adjustments were timely made during a federal "window of correction"

period and adequately remedied any non-compliance.  Docs. 332, 333.  Plaintiffs

subsequently cross-moved for summary judgment to dismiss the "window of correction"

defense.  Doc. 350.  On January 30, 2025, Judge Parker issued an R&R recommending

that the court deny TransPerfect's motion and grant Plaintiffs' cross-motion for dismissal

of the "window of correction" defense.  Doc. 410.  On July 9, 2025, the Court adopted

the R&R in its entirety.  Doc. 452.

On March 14, 2025, TransPerfect filed the instant motion to decertify the Class

pursuant to Federal Rule of Civil Procedure Rule 23.  Doc. 435.  On November 19, 2025,

Judge Parker issued an R&R recommending that TransPerfect's motion to decertify be

denied.  Doc. 456.  TransPerfect filed an Objection to the R&R on December 18, 2025.

Doc. 460.  Plaintiffs filed a Response to TransPerfect's Objection on January 15, 2026.

Doc. 462.

### C.  Motion for Decertification and Subsequent R&R

*1. TransPerfect's motion to decertify the class.*

TransPerfect raises four arguments in their instant motion for decertification.

Doc. 435.  First, they argue that compensating a federally exempt employee at a rate of at

least 1.5 times the state's minimum wage is a defense to liability for misclassification

under the NYLL.  *Id.* at 21-23.  They argue that an employee who is exempt under the

FLSA but not the NYLL is entitled to "overtime at a wage rate of one and one-half times

the basic minimum hourly rate" set by the state.  12 N.Y.C.R.R § 142-2.2.  TransPerfect suggests that "to determine if an FLSA exempt worker was paid overtime in accordance with 12 N.Y.C.R.R. § 142-2.2, the employee's compensation for the week in question must be divided by hours worked; if the resulting average hourly rate exceeds 1.5x of the minimum wage rate, then the employee was paid properly under the NYLL and there is no liability."  Doc. 435 at 21.  In essence, according to TransPerfect, the first step in an NYLL misclassification case is to determine whether overtime was calculated correctly for the misclassified employee, and if so, no liability attaches to the employer despite having misclassified the employee's status.  *Id.* at 21-23.   TransPerfect argues that this approach addresses "a threshold issue that implicates liability for all members of the class and is not merely a matter of individualized damages."  *Id.* at 21.  Consequently, TransPerfect contends that the classification of each class member requires an individualized inquiry into each employee, thereby making class certification inappropriate.  *Id.* at 22.

Second, TransPerfect argues that differences in employee "positions, job duties, responsibilities, and schedules" indicate that the exemption status of each class member is not a common issue subject to generalized class-wide proof.  *Id.* at 23.  Their third argument is that differences among class members in duties and positions also create substantial variation between the weekly schedules and hours worked of each employee, which are also not common issues subject to generalized class-wide proof.  *Id.* Accordingly, they maintain that predominance fails.  *Id.* at 23-26.  Finally, TransPerfect argues that breaking down the class into subclasses would be inappropriate because typicality and numerosity would not be satisfied.  *Id.* at 26-29.

*2.  The R&R's findings and rationale.*

The R&R addressed TransPerfect's first argument by noting the basic flaw in their proposed method of overtime calculation as well as the lack of relevant precedent to support such an approach.  Doc. 456 at 6-8.  In essence, the R&R reasoned that

5

TransPerfect's "interpretation would allow an employer not to pay an employee overtime while at the same time not paying enough in salary to treat the employee as exempt from overtime." *Id.* at 8. The R&R explains that:

> TransPerfect conflates the decision to classify an employee as exempt by offering them a rate above the salary threshold—an antecedent classification—with decisions about the computation of overtime for employees who are classified as non-exempt. The question of whether an employee is classified as exempt necessarily precedes the question of whether overtime needs to be calculated at all. If an employee is classified as fully exempt, there will be no calculation of the overtime rate whatsoever. An employer may not defend itself against a claim that it wrongly classified its employees as exempt by stating that it correctly calculated their overtime rate. Because TransPerfect treated the class members as exempt under New York law, a fact about which there is no dispute, concluding their rate of pay satisfied the overtime rate calculation provision of 12 N.Y.C.R.R. § 142-2.2 is a contradiction in terms because an exempt employee does not get overtime pay. This case is about the failure to pay overtime due to an antecedent misclassification, not about whether employees classified as non-exempt were paid the proper overtime rate.

Doc. 465 at 8 n.7.

In other words, TransPerfect argues that the overtime calculation for a non-exempt employee may be conducted prior to determining the employees' exemption status. Doc. 435 at 21-23. However, in order to determine the applicable overtime rate for a particular employee, the threshold issue that must first be addressed is whether the employee is exempt from overtime. Doc. 465 at 8 n.7. The need to pay overtime and the applicable rate for those overtime hours depends entirely on the answer to that question. The only way to make that determination is to establish whether their exemption status entitles them to overtime at all, and then identify the applicable overtime rate. As the R&R notes, "the issue of whether a class member is exempt under federal law relates to *damages,* not to *liability*." (emphasis added). *Id.* at 8.

6

The framework proposed by TransPerfect, instead looks to whether the overtime calculation would have been sufficient had the exemption status of the employee been correctly designated, even when it has not. *Id.* By working backwards, this method entirely ignores the misclassification error. *Id.* As Judge Parker correctly identifies, TransPerfect attempts—without statutory or case support—to avoid liability for misclassification by turning to the damages calculation first. *Id* at 8. The R&R notes that:

> all the cases and New York Department of Labor opinion letters upon which TransPerfect relies are inapposite, as none involve circumstances where an employer misclassified an employee as exempt under the state law by paying them less than the salary threshold needed to qualify for the exemption. Nor do any of its cited authorities construe the definition of regular rate in 12 N.Y.C.R.R. § 142-2.16 to provide a defense to liability in a misclassification situation; nor do they compute an employee's regular rate under 12 N.Y.C.R.R. § 142-2.16.

Doc. 465 at 6.

To further illustrate the flawed nature of TransPerfect's approach, the R&R discusses a hypothetical scenario which, under TransPerfect's framework, would create an unintended loophole in the law.[3] *Id.* at 6 n.4. The hypothetical highlights that TransPerfect's approach ignores the requirements of the NYLL by allowing an employer

---

[3] The hypothetical posed in the R&R states that "[o]f note, New York's minimum wage rate during the relevant period applicable in this case was $15 per hour. 12 N.Y.C.R.R. § 142-2.1(1)(i). Thus, under 12 N.Y.C.R.R. 142-2.2, employees who were exempt under federal law but non-exempt under state law during the relevant period, the minimum overtime rate was $22.50 per hour (i.e., 1.5 x $15 per hour). *See* 12 N.Y.C.R.R. § 142-2.2. If an employee regularly earned more than $900.00 in a forty-hour work week, their regular rate would exceed this particular overtime rate, since $22.50 times 40 hours is $900.00. TransPerfect appears to be arguing there is a loophole in the law that would allow it to exploit the gap between (1) the amount paid to a FLSA-exempt and NYLL-non-exempt employee whose regular rate meets or exceeds the overtime rate for a FLSA-exempt employee and (2) the state salary threshold to qualify as exempt from being paid overtime in New York. However, the Court does not read New York law as having this loophole for the reasons set forth herein. Taken at its extreme, under TransPerfect's theory, a misclassified employee who earned $905 per week would not be entitled to overtime under New York law even though that employee would be entitled to overtime under federal law insofar as the employee would not meet the then-applicable $913 federal salary threshold to qualify for an administrative exemption. Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 81 Fed. Reg. 32390-01, 32393 (May 23, 2016) (codified at 29 C.F.R. § 541.600, as amended). This is the exact opposite of the intent of the New York wage laws, which provides for higher minimum wages and exempt salary thresholds than federal law." Doc. 456 at 6 n.4.

to avoid liability for misclassifying an employee as exempt by paying them less than the minimum salary threshold, but at a rate higher than 1.5 times the state's minimum hourly wage. *Id.* In doing so, an employee could theoretically be exempt from receiving overtime under the NYLL but not exempt from receiving overtime under the FLSA, despite New York having a higher minimum salary threshold for overtime exemption than the FLSA. *Id.*

TransPerfect's second and third objections refer to differences in duties and overtime hours amongst class members. Doc. 435 at 23. The R&R correctly notes that such arguments were previously addressed at the preliminary certification stage, and that common proof continues to satisfy predominance and certification in the form of a uniform deprivation of overtime pay for class members.[4] Doc. 465 at 8-10. As a result, it was unnecessary to address the subclass arguments given the sufficient set of common proof and facts which correspond with the entirety of the class. *Id.* at 13.

## II.    LEGAL STANDARDS

### A.   Review of a Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l)(C). Parties may raise "specific," "written" objections to the report and recommendation "[w]ithin fourteen days after being served with a copy." *Id.*; Fed. R. Civ. P. 72(b)(2). A district court reviews de nova those portions of the report and recommendation to which timely and specific objections are made. 28 U.S.C. § 636(b)(l)(C); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). The district court may adopt those parts of the report and

---

[4] The R&R states that TransPerfect "merely points to information learned in discovery showing that schedules and routines of virtually every class member varied on a weekly basis such that it would be impossible to show that all class members had at least some overtime hours. This is the same argument it made when contesting class treatment in the first place." Doc. 456 at 9. In the absence of proper record-keeping, Plaintiffs are permitted to rely on an expert's email analysis to establish "a reasonable inference of hours worked." *Id.* at 9.

recommendation to which no party has timely objected, provided no clear error is apparent from the face of the record. *Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y 2008). The district court will also review the report and recommendation for clear error where a party's objections are "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition." *Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) (citations and internal quotation marks omitted).

### B. Rule 23 Class Decertification

Once certification has been granted, district courts have an obligation to "ensure that a certified class satisfies Rule 23 throughout the litigation." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262 (2d Cir. 2021). If at any point the class fails to satisfy the requirements of Rule 23 after the initial certification, the court should decertify the class. *See In re KIND LLC "Healthy & All Natural" Litigation*, 627 F. Supp. 3d 269, 295 (S.D.N.Y. 2022) (decertifying the class due to a lack of common evidence of injury to the class); Fed. R. Civ. P. 23(c)(1) (noting that further proceedings after initial class certification may warrant decertification). Decertification may be justified when a "significant intervening event" or other "compelling reasons" indicate that Rule 23 is no longer satisfied, such as new information obtained in post-certification proceedings or findings made during the course of discovery. *See Betances v. Fischer*, 707 F. Supp. 3d 279, 305 (S.D.N.Y. 2023) (citing *Doe v. Karadzic*, 192 F.R.D. 133, 136-37 (S.D.N.Y. 2000)). Generally, the standard for decertification is the same as for certification as an initial matter. *See In re LIBOR-Based Financial Instruments Antitrust Litigation*, 801 F. Supp. 3d 330, 365 (S.D.N.Y. 2025).

### III.   DISCUSSION

TransPerfect's objections to the R&R are threefold. First, TransPerfect contends that the R&R bases its calculations on the wrong federal salary threshold, so the hypothetical loophole it relies upon does not actually exist. Doc. 460 at 6. Second, the

R&R misconstrues the interplay between the FLSA and the NYLL overtime frameworks in a manner that ignores the need for individualized liability determinations. *Id.* Finally, the R&R incorrectly discounts the predominance of individualized liability inquiries based on differing roles, departments, exemption status, schedules, and weekly rates. *Id.* These objections do not warrant decertification.

### A. TransPerfect overstates the significance of the loophole hypothetical in the R&R.

In response to TransPerfect's contention that an employer cannot be liable for failure to pay overtime if the employer pays an employee at a regular hourly rate of 1.5 times minimum wage, the R&R identifies a hypothetical "loophole" which TransPerfect's approach would seek to exploit. Doc. 456 at 6 n.4. Specifically, the R&R describes a situation in which TransPerfect's backwards-looking method entitles an employee to overtime based on the federal threshold, but not the state threshold. *Id.* Such a scenario runs counter to New York's wage scheme which seeks to provide a higher minimum wage and salary exemption threshold than its federal counterpart. *Id.* When describing the hypothetical loophole, the R&R uses a minimum weekly salary threshold of $913 for overtime exemption under the FLSA. *Id.* One issue with this calculation, as TransPerfect correctly points out, is that the $913 threshold was subject to a nationwide injunction and thus had not yet taken effect, so the correct threshold remained at $455 per week. *See* Doc. 460 at 9; *Fernandez v. Zoni Language Centers., Inc.*, 858 F.3d 45, 49 n.5 (2d Cir. 2017) (explaining that the $913 threshold was enjoined nationwide and that the applicable threshold, which would also apply to the class here, was $455 per week); *Stih v. Rockaway Farmers Market, Inc.*, 2023 WL 2760492, at *3 (E.D.N.Y. Apr. 3, 2023) (discussing the increase in the minimum state salary threshold for overtime exemption from $455 per week to $684 per week after January 1, 2020). TransPerfect argues that there is no loophole, therefore, when using the correct federal salary threshold of $455

that was then in place, and that this error materially skews the analysis of the R&R. *See* Doc. 460 at 9, 14.

However, TransPerfect overstates the significance of the hypothetical. The hypothetical is mentioned one time in a single footnote. *See* Doc. 456 at 6 n.4. More to the point, even if the incorrect federal salary threshold was used in the hypothetical, it remains true that TransPerfect failed to properly classify Plaintiffs in the first place, as Judge Parker correctly found. *See* Doc. 456 at 6-7.

### B. TransPerfect's proposed classification workaround ignores their misclassification error.

The Court finds that the R&R correctly determined that the cases proffered by TransPerfect in support of their proposed classification approach are inapposite. As Judge Parker observed, the cases fail to demonstrate comparable circumstances in which the employer committed a misclassification error which resulted in their failure to pay overtime or a salary exceeding the exemption threshold. Nor did any of the cases and sources relied upon discuss 12 N.Y.C.R.R. § 142-2.16, which defines the term "regular rate" referenced in N.Y.C.R.R § 142-2.2, a necessary element to TransPerfect's approach. For example, TransPerfect cites to *Rowe v. Old Dominion Freight Lines*, No. 21-cv-4021 (KMK), 2022 WL 2181619 (S.D.N.Y. June 16, 2022), as evidence that paying a rate in excess of 1.5 times minimum wage exempts an employer from liability under New York law. *Rowe,* however, is about an incorrect interpretation of 12 N.Y.C.R.R § 142-2.2, in which employees sought an overtime rate that the Court held was not commensurate with the plain meaning of the rule (employees sought an overtime rate computed as their regular rate plus 0.5 times state minimum wage). *Id.* at 4. What is not discussed in *Rowe* is the issue TransPerfect seeks to avoid: the misclassification of employees' exemption status. The employer in *Rowe* paid a salary higher than the state's minimum threshold and thus correctly classified their employees as exempt at the outset. *Id.* TransPerfect did not. As Judge Parker explains, TransPerfect's theory ignores the preliminary

11

classification step and instead looks exclusively at the sufficiency of the overtime calculation.  *See* Doc. 456 at 8 n.7.  *Rowe* does not discuss any such method and is therefore inapposite.

TransPerfect also cites to *Edwards v. Jet Blue Airways Corp.*, 21 Misc. 3d 1107(A) (Sup. Ct Kings Cnty. 2008), as an example of an employer avoiding liability by paying a federally exempt employee more than 1.5 times the state's minimum wage.  TransPerfect mischaracterizes *Edwards* in two ways.  First, TransPerfect states that *Edwards* stands for the proposition that "FLSA exempt employees have no entitlement to overtime under New York law where their regular rate exceeds 1.5 times the minimum wage."  Doc. 460 at 19.  However, *Edwards* did not hold that the employees were not entitled to overtime.  The employees were compensated for overtime hours at the same rate as their standard hours; a rate which exceeded 1.5 times minimum wage.  *Edwards*, 873 N.Y.S.2d 233 at 1.  The court adopted the Department of Labor's interpretation that the employer was permitted to pay the same overtime rate as the standard rate, so long as the standard rate exceeded 1.5 times minimum wage.  *Id.* at 5.  In doing so, the court in *Edwards* clearly states that employees *were* entitled to overtime, contrary to TransPerfect's reading of the case.

Second, *Edwards* is inapposite on the facts.  At no point did the employer in *Edwards* fail to pay a salary commensurate with the minimum state threshold, nor did the employer misclassify the exemption status of its employees or fail to pay overtime.  *See id.* at 1.  The absence of any misclassification makes *Edwards* inapposite.

TransPerfect argues that the R&R "misapplies New York law in attempting to create distinctions which are not meaningful or relevant to the issue of whether an FLSA exempt employee is entitled to overtime where they have already been compensated in an amount greater than 1.5 times the minimum wage."  Doc. 460 at 15.  Essentially, TransPerfect views their misclassification error as a "distinction" which is neither "meaningful" nor "relevant" to liability because in their view, damages have been

mitigated by the payment of an appropriate overtime rate. *Id.* In doing so, TransPerfect overlooks the fact of their non-compliance with the classification required by the NYLL, and conflates the damage calculation with liability.

TransPerfect proposes an unjustified departure from the plain meaning of the statutes which require an antecedent classification before determining the appropriate overtime wages. *See* 12 N.Y.C.R.R. § 142-2.2.

### C. Differences in duties and hours worked are not sufficient to overcome predominance.

In their initial memorandum in opposition of the motion to certify the class, TransPerfect argued that predominance fails because duties among class members, as well as the number of hours of overtime worked by each class member, varies. *See* Doc. 223 at 22-24. TransPerfect rehashes the same previously rejected arguments here. *See* Doc. 460 at 16-17, 19-21. The Court, again, agrees with the R&R that any variation is not so large as to overcome the fact that there exists "common proof of a uniform practice that deprived class members of overtime – i.e., TransPerfect's failure to pay class members the salary threshold needed to satisfy New York's administrative exemption." Doc. 456 at 9.

TransPerfect argues that the fluctuating workweeks of its employees make it impossible to determine which class members actually worked more than 40 hours per week because work schedules among class members were bespoke and varied depending on department, supervisor, role, and individual. *See* Doc. 460 at 21-24; Doc. 435 at 25-26. This Court has already addressed this issue, finding that "TransPerfect's argument that the inability to establish whether class members *actually* worked more than 40 hours, as required for liability to attach, defeats class certification is unequally unpersuasive" and that such arguments have already been rejected by numerous courts in the Second Circuit. *See* Doc. 303 at 13-14; *Roach v. T.L. Cannon Corp.*, 2017 WL 11529679, *8 (N.D.N.Y. Sept. 27, 2017) (denying decertification of class and finding that common

13

issues going toward liability predominated over individualized issues as to whether each class member worked more than 10 hours in a day); *Fonseca v. Dircksen & Talleyrand Inc.*, 2015 WL 5813382, at *5 (S.D.N.Y. Sept. 28, 2015) ("District courts 'have routinely found that common questions predominate in wage and hour actions brought on behalf of a class of employees of the same employer challenging allegedly illegal policies and practices.'") (quoting *Murphy v. LaJaunie*, 2015 WL 4528140, at *7 (S.D.N.Y. Jul. 24, 2015) (collecting cases)).

Likewise, this Court has held that "to the extent TransPerfect argues that variation in working hours or the employees' different departments defeats commonality and predominance, this is simply not the case as a matter of law." *See* Doc. 303 at 14; *Bolanos v. Norwegian Cruise Lines Limited*, 212 F.R.D. 144, at 148 (S.D.N.Y. 2002) (holding "different . . . departments kept track of overtime using different methods, differences in departments, job duties, and even factual variations in plaintiffs' claims should not defeat class certification . . . where all plaintiffs claim they were denied overtime."); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 86 (S.D.N.Y. 2001) (differences such as "the number of hours worked, the precise work [employees] did, and the amount of pay they received concern the amount of damages," and such "individual questions with respect to damages will not defeat class certification[.]").

Consequently, with no meaningful changes uncovered in discovery or related intervening events, TransPerfect's repurposed arguments once again fail to meet the relatively high standard required for decertification. *See Laurent v. PricewaterhouseCoopers LLP*, 565 F. Supp. 3d 543, 548 (S.D.N.Y. 2021) (describing decertification as an "extreme" and "drastic" step with a "heavy burden" placed on the party seeking decertification).

## IV.    CONCLUSION

The Court has carefully reviewed Judge Parker's thorough and well-reasoned R&R and finds no substantive error, clear or otherwise.  Accordingly, the Court adopts

the R&R in its entirety.  TransPerfect's motion for decertification is thus denied.  The

Clerk of Court is respectfully directed to terminate the motion, Doc. 434.

It is SO ORDERED.

Dated:    March 30, 2026
              New York, New York

_____
EDGARDO RAMOS, U.S.D.J.